IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN RE: SOUTHEASTERN MILK ) | |
| ANTITRUST LITIGATION ) | |
| ) | Master File No. 2:08-MD-1000 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Judge J. Ronnie Greer |
| *Scott Dairy Farm, Inc., et al. v. Dean Foods*, ) | Magistrate Judge Dennis H. |
| *et al.*, No. 2:07-CV 208 and *Food Lion, LLC*, ) | Inman |
| *et al. v. Dean Foods Company, et al.*, ) | |
| No. 2:07-CV-188 ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This multidistrict antitrust case is before the Court on: 1) the objections of non-party Maryland & Virginia Milk Producers Cooperative Association, Inc. ("Maryland &Virginia"), [Doc. 397], to the August 5, 2009, order of the Magistrate Judge, [Doc. 373]; 2) the objection of non-parties Beshears, Noll and Meyer to the August 5 order, [Doc. 400]; 3) defendants' objection to the August 5 order, [Doc. 401]; 4) the objection of non-party Dairy Cooperative Marketing Association, Inc. ("DMA") to the August 5 order, [Doc. 403]; 5) defendants' appeal, [Doc. 436] of the Magistrate Judge's orders of August 21 denying motions to seal, [Docs. 405, 406]; and 6) the motion of the New York Times Company (the "*Times*") and National Public Radio, Inc. ("NPR") to intervene and for unsealing of judicial documents, [Doc. 408]. These pending matters have been fully briefed, the Court heard lengthy oral argument on September 10, 2009, and the matters are now ripe for disposition.

The August 5 order of the Magistrate Judge dealt with a host of motions that involve the sealing of court records: 1) plaintiffs' motion to seal defendants' motion to quash subpoena, [Doc. 326]; 2) defendants' motion to file their memorandum of law and opposition to the retailer plaintiffs'

motion for class certification under seal, [Doc. 341]; 3) defendants' motion to file their memorandum in opposition to the dairy farmer plaintiffs' motion for class certification and other documents under seal, [Doc. 345]; 4) the dairy farmer plaintiffs' motion to place under seal the defendants' objection to an order of the Magistrate Judge, [Doc. 350]; 5) defendants' motion for leave to file redacted materials in opposition to retailer plaintiffs' motion for class certification, [Doc. 354]; 6) dairy farmer plaintiffs' motion to temporarily seal their opposition to defendants' objection to the order of the Magistrate Judge denying defendants' motion to communicate a settlement offer to putative class members, [Doc. 355]; 7) the dairy farmer plaintiffs' motion to temporarily seal motion to unseal dairy farmer plaintiffs' class certification filings and to modify the protective order, [Doc. 359]; 8) the dairy farmer plaintiffs' motion to unseal their class certification filings and to modify the protective order, [Docs. 360, 361]; and 9) the defendants' motion to file under seal their reply in support of their objection to the order of the Magistrate Judge, [Doc. 362].

The Magistrate Judge's order denied documents 341, 345, 350, 354, 355, 359 and 362, granted the dairy farmer plaintiffs' motion to unseal their class certification filings, [Doc. 360] and further ordered that the defendants' reply in support of their objection to the Magistrate Judge's order, [Doc. 363] be unsealed. By subsequent order entered on August 21, 2009, [Doc. 405], the Magistrate Judge denied document 326, which had been inadvertently omitted from the scope of the August 5 order. For the reasons which follow, the Magistrate Judge's order is VACATED as to documents 341, 345, 354, 359 and 360[1] and those matters will be RE-REFERRED to the Magistrate Judge for further consideration consistent with the guidance provided by this opinion and the procedure set

---

[1] Only the portion of the dairy farmer plaintiffs' motion to unseal their class certification filings will be re-referred. The portion of the motion seeking modification of the protective order will be dealt with separately.

forth below. The motion of the *Times* and NPR for unsealing of judicial documents will also be referred to the Magistrate Judge for disposition.[2]

**I.    Background**

On April 14, 2008, a protective order, [Doc. 47], drafted and largely agreed to by the parties,[3] was signed by United States Magistrate Judge Dennis H. Inman. The protective order "governs the use and handling of documents, electronic information in any form, testimony, interrogatory responses and other information . . . produced or given by any defendant, plaintiff, or other individual or entity . . . in pre-trial proceedings in this Litigation." The stated purpose of the protective order is to protect against the "inappropriate dissemination of documents and information produced in the course of discovery, which may include competitively sensitive and confidential information about pricing, budgets, forecasts, strategic plans, cost of production, inventory and other confidential commercial information."

Pursuant to the terms of the protective order, materials produced during discovery may be designated as "confidential" by the producing party if the producing party believes, in good faith, that the material "constitutes, contains, reflects or discloses confidential, non-public research and analysis, development or commercial information, or other information for which a good faith claim of need of protection from disclosure can be made under the Federal Rules of Civil Procedure and/or other

---

[2]   The motion of the *Times* and NPR to intervene was orally granted on September 10, 2009.

[3]   Although the plaintiffs continue to take issue with the suggestion that they agreed to the protective order now in place, the record in this case reflects that a protective order very similar to the one now in place was originally entered by the United States District Court for the Middle District of Tennessee in one of the cases filed there prior to transfer to this Court by order of the Judicial Panel on Multidistrict Litigation. The protective order was the result of a joint motion for protective order filed in that court in which the parties stipulated to most of the terms of the order and subsequently litigated a small number of disagreements. Once the cases were transferred to this Court and consolidated for pretrial proceedings, the protective order was re-entered in virtually the same form as before.

applicable law . . ." The producing party may designate as "highly confidential" non-public personal information or other material of an "extremely sensitive confidential and/or proprietary" nature which it believes in good faith "would compromise and/or jeopardize the Producing Party's business interests." The protective order places certain limitations on the disclosure of "confidential" or "highly confidential" material, absent written consent of the producing party, or order of the Court.

Of particular importance to the presently pending matters are the provisions of paragraph 9 of the protective order. That paragraph deals with the filing in court of documents containing confidential or highly confidential material. Pursuant to the terms of the protective order, if a party wishes to use confidential or highly confidential material in "any papers containing or making reference to the contents of such material or information, in a pleading or document filed with the Court in this Litigation, such pleading or document . . . shall be filed under seal . . . until such time as the Court orders otherwise, or denies permission to file under seal."

The instant controversy finds its origin in the filing of motions by the dairy farmer plaintiffs and the retailer plaintiffs to seal their motions and supporting documents for class certification. [Docs. 284, 285]. The motions to seal were granted by the Magistrate Judge on May 4, 2009, [Docs. 294, 295]. Thereafter, defendants moved to seal their responses in opposition to plaintiffs' class certification motions, [Docs. 341, 345]. Then, on July 23, 2009, the dairy farmer plaintiffs filed a motion to unseal their class certification filings and to modify the protective order, [Doc. 360]. During the pendency of the matters before the Magistrate Judge, plaintiffs, defendants and certain non-party producing parties had an exchange of correspondence and communication about the continued sealing of certain of these documents. In an apparent effort to obtain court resolution of their disputes over redaction of certain confidential or highly confidential material from their

4

pleadings, the parties sent letters to the undersigned and to the Magistrate Judge, along with hundreds of pages of attached correspondence and materials.

On July 1, 2009, this Court conducted a status conference with the parties. At that conference, conducted on the record, [*see* Doc. 371, Transcript of Proceedings held on July 1, 2009], the Court admonished the parties about communicating with the Court by letters which do not become part of the official judicial record and reminded the parties that the appropriate way to seek court action is by filed pleadings. In addition, the undersigned expressed considerable dissatisfaction with the apparent practice of the parties of engaging in wholesale sealing of filed documents and his perceived abuse of the protective order.

On August 5, 2009, the Magistrate Judge denied the motions to seal and granted the motion to unseal and modify the protective order.[4] The Magistrate Judge subsequently stayed the August 5 order pending an appeal to the District Judge, [Doc. 376], and defendants filed their objection to the Magistrate Judge's order on August 19, 2009, [Doc. 401]. Objections to the order were also filed by non-party producing parties Beshears, Noll and Meyer, [Doc. 400], Maryland & Virginia, [Doc. 397], and DMA, [Docs. 402, 403], all of which produced testimony, documents or materials pursuant to subpoena during discovery in this case. In addition, motions were filed by plaintiffs on August 13, 2009, to file certain additional pleadings under seal, [Docs. 386, 387]. These motions were denied by the Magistrate Judge on August 21, 2009, [Doc. 406].

Then, on August 26, 2009, the *Times* and NPR moved for " . . . Leave to Intervene and For Unsealing Of Judicial Documents," [Doc. 408]. The motion to intervene was unopposed and was

---

[4] Plaintiffs requested modification of the protective order to allow named plaintiffs access to documents, testimony, and other information designated as highly confidential. The Magistrate Judge's order did not discuss his reasons for modifying the protective order.

orally granted on September 10, 2009. The motion of the *Times* and NPR seeks an order adopting and affirming the Magistrate Judge's August 5, 2009, order and is opposed by the defendants and the non-party producing parties, [Docs. 429, 431, 432]. The retailer plaintiffs and the dairy farmer plaintiffs support the motion of the *Times* and NPR, [Docs. 430, 433].

**II.    Legal Standard and Analysis**

    **A.    Protective Orders**

Plaintiffs have chafed under the burden of the protective order entered in this case from the inception of the litigation in this Court and have repeatedly complained about the protective order orally during hearings, despite having consented, in large part, to the entry of the order.[5] Plaintiffs have now moved to modify the protective order to allow named plaintiffs access to materials designated "highly confidential" under the protective order. Plaintiffs assert the public's right of access to court proceedings based on First Amendment principles of right of public access to court records. Although the *Times* and NPR also assert the right of public access, these organizations do not seek modification of the protective order.[6]

Protective orders are authorized by Rule 26 of the *Federal Rules of Civil Procedure*, and are used frequently in cases such as the instant one. Rule 26(c) authorizes "[a] party or person from whom discovery is sought" to move for a protective order "to protect a party or person from

---

    [5] Even if the parties have agreed to the terms of a protective order, however, the Court should not permit them "to adjudicate their own case based upon their own self-interest. This is a violation not only of Rule 26(c) but of the principles discussed in *Brown & Williamson*." *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).

    [6] Although the *Times* and NPR take no position on the portion of the Magistrate Judge's order which modified the protective order, they do "believe the protective order is too broad and unduly interferes with the public right to monitor the courts and gain access to judicial documents . . ." [Doc. 409, pg. 11].

6

annoyance, embarrassment, oppression, or undue burden or expense . . ." *Fed. R. Civ. P.* 26(c)(1). The rule specifically permits the court, under appropriate circumstances, to limit the scope of disclosure, designate persons who may be present while discovery is conducted, seal depositions and other documents and information and prohibit trade secrets and other commercially sensitive information from being revealed. *Fed. R. Civ. P.* 26(c)(1)(D),(E),(F),(G), and (H).

It is not at all unusual in this or in other courts for a protective order to be entered by agreement of the parties. The current practice is succinctly stated in Wright, Miller & Marcus' treatise on federal practice and procedure:

> Protective orders are also often obtained by agreement, particularly regarding confidential information and in litigation likely to involve a large volume of documents. Frequently these take the form of "umbrella" protective orders that authorize any person producing information to designate that which is confidential as protected under the order. One distinguished judge noted in 1981 that he was "unaware of any case in the past half-dozen years of even a modicum of complexity where an umbrella protective order *** has not been agreed to by the parties and approved by the court. Protective orders have been used so frequently that a degree of standardization is appearing."

Wright, Miller & Marcus, *Federal Practice And Procedure,* Civil 2d, § 2035. As noted by the authors of the treatise, the *Manual for Complex Litigation*, used by virtually every court handling multidistrict litigation, contains a standardized form protective order. *Id. See Manual For Complex Litigation, Fourth*, § 40.27 (2004). The use of protective orders, in fact, has become standard practice in complex cases. *See, e.g., United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (citing *Manual for Complex Litigation, Second* (1985)). Protective orders serve to facilitate and expedite discovery and are often essential to the proper functioning of civil discovery. Indeed, in the present case, all parties have benefitted from the protective order, which has allowed

7

a large volume of documents to be produced without the burden of protected litigation.

A protective order is always subject to modification or termination for good cause, *see Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 782-83 (1st Cir. 1998); *In re "Agent Orange" Products Liability Litigation*, 821 F.2d 139, 145 (2d Cir. 1987), even where the parties have consented to its entry. The modification of a protective order is left to the sound discretion of the district court. *United Nuclear*, 905 F.2d at 1427. In this case, the protective order itself anticipates and allows the parties to seek modification of the order, [Doc. 47, ¶ 14]. The party seeking modification of the protective order has the burden of establishing cause for the modification. In deciding whether to modify an existing protective order the court must "balance the potential harm to the party seeking protection against the requesting party's need for the information and the public interest served by its release." *Manual For Complex Litigation, Fourth*, § 11.432. Also important may be the disclosing party's degree of reliance on the protective order when the disclosure was made. *Id.* (citing *Meyer Goldberg, Inc. v. Fisher Foods, Inc.*, 823 F.2d 159, 163 (6th Cir. 1987)).

As noted above, the plaintiffs seek to modify the protective order to allow named plaintiffs the ability to review and access material which has been designated highly confidential. The protective order currently forbids the named plaintiffs from accessing such material. Plaintiffs argue that this limitation hinders their ability to fully inform their clients of the basis, nature and evidence supporting the claims in this case. Plaintiffs point to what they perceive to be abuse of the protective order by the defendants who, they claim, have engaged in wholesale designation of documents as highly confidential. Plaintiffs argue that when they initially agreed to the protective order, it was with the assurance that defendants would not engage in such wholesale designations. At oral argument on this matter, plaintiffs asserted that defendants had designated approximately 3.5 million

8

documents as either confidential or highly confidential.[7]

On the one hand, plaintiffs' claims that defendants have engaged in wholesale designation of documents as confidential or highly confidential, without a good faith basis for doing so, appears to have some merit and may be a sufficient reason for granting the modification request. On the other hand, non-party third parties have produced certain documents designated as highly confidential in clear reliance on the provisions of the protective order and the modification would potentially impair the business interests of those parties, who did not institute or initiate this litigation and are not involved in it. The Court is not, therefore, inclined to delete the restriction on named plaintiffs' access to highly confidential documents altogether. That does not mean, however, that named plaintiffs should not have access to at least some of the highly confidential documents and have the opportunity to review them with their counsel in order to facilitate their ability to prepare and prosecute their case.

At the Court's hearing on September 10, 2009, the Court expressed its view that some modification of the protective order was likely justified to facilitate the preparation and prosecution of this case by the plaintiffs and directed the parties to confer in an effort to reach some agreement that would accommodate the competing interests. The parties will also be afforded an opportunity to brief the matter in the event they are not able to agree on a resolution. The Court will therefore RESERVE its decision on defendants' appeal of the Magistrate Judge's order granting the requested modification of the protective order until the parties have conferred and once again bring the matter to the Court's attention by the filing of an appropriate pleading.

---

[7] Pursuant to the protective order, material designated confidential may be shared with a designated named plaintiff while material designated highly confidential may not. The Court is unaware of the number of documents designated highly confidential.

## B. Public Access to Judicial Documents

There can be no doubt that the public has both a constitutional and a common law presumptive right of access to civil proceedings and judicial records. *Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1179 (6th Cir. 1983). The public right of access, however, is not absolute. *Id.* "[E]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978); *see also Krause v. Rhodes*, 671 F.2d 212, 219 (6th Cir. 1982) ("the decision as to access is one best left to the sound discretion of the trial court"). Once documents are filed with the Court, there is a "strong presumption that they should be open to the public." *Brown & Williamson*, 710 F.2d 1177-79; *Meyer Goldberg*, 823 F.2d at 163. While sealing orders are permissible under the First Amendment, *Dow Chemical Co. v. Reinhard*, 2007 WL 3379688, *4 (E.D. Mich. 2007) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)), the "good cause" standard of Rule 26(c) does not apply; rather, the party seeking to seal must show "compelling reasons." *Meyer Goldberg*, 823 F.2d 163. Despite the Court's discretion, there are two broad exceptions to the "strong presumption" in favor of public access: "those based on the need to keep order and dignity in the courtroom and those which center on the content of the information to be disclosed to the public." *Brown & Williamson,* 710 F.2d at 1179.

Only the latter exception is at issue here. In discussing this exception, the Sixth Circuit has enumerated several interests which might justify the application of the exception: a criminal defendant's right to a fair trial, privacy rights of participants or third parties, trade secrets and national security. *Id*. (citing *Nixon*, 435 U.S. at 598). The defendants and non-party producing parties in this case rely only on their privacy rights and trade secrets and/or competitive sensitivity

10

of the materials produced. Importantly, neither harm to reputation of the producing party nor conclusory allegations of injury are sufficient to overcome the presumption in favor of public access. *Id*. at 1179-80 (citing *Joy v. North*, 692 F.2d 880, 884 (2d Cir. 1982)) ("A naked conclusory statement that [disclosure will injure a producing party] . . . falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal."). "Only the most compelling reasons can justify non-disclosure of judicial records." *In re The Knoxville News Sentinel Co., Inc*., 723 F.2d 470, 476 (6th Cir. 1983) (citing *Brown & Williamson*, 710 F.2d at 1179-80.

One other factor is important here. Third parties who were not responsible for the initiation of the litigation are protected by the terms of the protective order. As recognized by the Sixth Circuit, these individuals possess a "justifiable expectation of privacy that their names and financial records not be revealed to the public," and "[t]heir interests in privacy are sufficiently compelling to justify non-disclosure." *In re The Knoxville News-Sentinel Co.*, 723 F.2d at 477 (citing *In re Application of NBC* (*United States v. Jenrette)*, 653 F.2d 609, 620 (D.C. Cir. 1981)) (interest in avoiding injury to innocent third parties properly weighed against broadcasters' right of access). When a third party has produced material in reliance on a protective order, "only 'extraordinary circumstances' or 'compelling need' warrant the reversal of a protective order." *Id.* at 478 (citing *Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982) ("Once a confidentiality order has been entered and relied upon, it can be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification.")

There is no doubt that the use of sealed pleadings has been grossly abused in this case, as the Magistrate Judge found. The blame for that, however, rests as much with this Court as with the parties. Because of the burden placed on the Court by all the sealed pleadings filed in this case, most

11

of which have been voluminous, the Court has likely failed at this point in assuring that all sealing was fully justified and that the public's right of access was guaranteed. Said more simply, the Court should have anticipated the issues that have now arisen and put in place at an earlier stage of this litigation a more specific procedure for weighing the competing interests of the litigants, non-party producing parties and the public. The parties, on the other hand, have ignored the provisions of the local rules of this Court in their filings.

Paragraph 9 of the protective order provides that pleadings which contain or make reference to materials designated as confidential or highly confidential *shall* be sealed. Pursuant to these provisions of the protective order, the parties have sealed thousands of pages of pleadings and attachments to those pleadings. It goes without saying that not every line and every page of these pleadings was entitled to protection from public view. In making these filings, the parties have ignored the spirit of Local Rule 26.2(b) which requires the parties to file redacted versions "where only a portion thereof is to be placed under seal." Rather than filing a redacted pleading making available for public inspection all but the confidential or highly confidential material contained in the pleading, the parties have employed a broad brush approach by seeking to seal the entire pleading. The protective order must be read in the context of the local rule. And, while it must be acknowledged that the task of preparing redacted pleadings may be a burdensome one given the voluminous nature of those pleadings, that burden rightly belongs with the parties. Once the necessary redactions are made, the burden of justifying continued sealing will be placed where it belongs - on the producing party. Then, the Court can make the determination necessary by weighing all the competing interests.

This litigation involves issues of considerable importance to the public and nondisclosure

cannot be justified on the basis of the protective order alone. Except where a compelling interest of a party or a non-party producing party requires otherwise, these proceedings will be conducted in full public view. In making a determination that a document or reference in a pleading should be sealed from public view, this Court must balance the competing needs and interests of the litigants, non-party producing parties and the public and present a reasoned analysis explaining why. *See Brown & Williamson*, 710 F.2d at 1176. Because of the manner in which the parties have used the protective order to seal entire pleadings, no reasoned analysis of the Court has been possible as to whether or not particular documents or references in pleadings are properly shielded from public view. Not only that, the non-party producing parties insist that they intended to oppose unsealing but, before the time for filing such opposition expired, the Magistrate Judge's order of August 5 was entered.

As a result of all this, the various motions to seal and/or unseal the pleadings relating to the class certification motions will be re-referred to the Magistrate Judge for the type of individualized, reasoned analysis necessary. On September 22, 2009, a standing order was entered in this Court which establishes a procedure which will allow the Court to make an informed determination as to whether or not certain redactions to pleadings are appropriate and justified under the law. The pleadings related to the class certification motions will be subjected to the same procedure. Within seven (7) calendar days of this order, any party which has filed a class certification motion, response or reply shall file with the Court a redacted version of the pleading which shall be available for public review and which redacts only documents or material which have been designated as confidential or highly confidential or references to such material. Thereafter, the procedure set forth in the Court's standing order must be followed, *i.e.*, unless a party objects to the unsealing of material redacted within ten (10) business days, the entire pleading will be unsealed. Once the procedure set forth in

13

the standing order has been completed, the Magistrate Judge will then be able to determine whether or not continued sealing is justified under the law.

**III.     Conclusion**

For the reasons set forth above, the Magistrate Judge's order of August 5, 2009, [Doc. 373] is VACATED as to documents 341, 345, 354,[8] 359 and that portion of document 360 which relates to the dairy farmer plaintiffs' motion to unseal their class certification filings and those matters will be RE-REFERRED to the Magistrate Judge for further consideration consistent with the guidance provided by this opinion and the procedure set forth in the Court's standing order of September 22, 2009. The motion of the *Times* and NPR, [Doc. 408] for unsealing of judicial documents is also referred to the Magistrate Judge for disposition.

For the same reasons, the Magistrate Judge's order of August 21, 2009, [Doc. 406], is VACATED and documents 386 and 387 are likewise re-referred to the Magistrate Judge. Furthermore, because these matters are being RE-REFERRED to the Magistrate Judge, the objections of the defendants and non-parties Maryland & Virginia, Beshears, Noll, Meyer and DMA, [Docs. 397, 400, 401, 402 and 403] and the defendants' appeal of the Magistrate Judge's orders of August 21, 2009 , [Doc. 436],  are OVERRULED as MOOT.[9]

So ordered.

---

[8] Doc. 354 is a motion by defendants for leave to file redacted versions of their opposition to the retailer plaintiffs' motion for class certification. The motion has likely been rendered moot by the Court's September 22 standing order.

[9] The Magistrate Judge's order of August 5, 2009, also dealt with other matters not related to the class certification motions, *i.e.*, documents 350, 355 and 362. These documents all relate to the motion of the defendants to communicate a settlement offer to putative class members and their appeal to the Magistrate Judge's orders with respect to these motions will be dealt with in a separate order which also disposes of their appeal of the Magistrate Judge's order entered on June 18, 2009, denying their motion to communicate a settlement offer to the putative class.

14

ENTER

                                                                  s/J. RONNIE GREER
                                    UNITED STATES DISTRICT JUDGE