# EXHIBIT 2

## PARTIALLY REDACTED

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| Food Lion, LLC, and Fidel Breto, d/b/a Family Foods, on behalf of themselves and a class of all other similarly situated,<br><br>      Plaintiffs,<br>vs.<br><br>Dean Foods Company, Dairy Farmers of America, Inc., National Dairy Holdings, L.P., Dairy Marketing Services, LLC, and Southern Marketing Agency, Inc.<br><br>     Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 2:07-CV-188<br><br>**EXPERT REPORT OF PROFESSOR EINER ELHAUGE** |

_Einer Elhauge_

_____
Einer Elhauge

March 5, 2010

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Qualifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Relevant Economics and Summary of Conclusions . . . . . . . . . . . . . . . . . . . . 5
    A. Relevant Antitrust Economics . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B. Summary of Substantive Conclusions . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

## INTRODUCTION

1.    I have been retained by counsel for Food Lion, LLC, Fidel Breto, and a putative class of direct purchasers of packaged milk ("Plaintiffs") to analyze the allegations and facts in this case, and opine on whether, as a matter of antitrust economics, they constitute anticompetitive conduct and had an anticompetitive effect on the Plaintiffs.[1]    This case concerns an allegation that



---

[1]  I file this report in my capacity as an expert to the proposed class and not on behalf of Harvard University, which does not take institutional positions with respect to specific legislation, litigation, or regulatory proceedings.



## QUALIFICATIONS

5.      I am the Petrie Professor of Law at Harvard University, where I have

2

taught antitrust, contracts, corporations, and health care policy, and I write and teach mainly about economic analysis of those areas.

6.     I am the author or co-author of two textbooks published by Foundation Press on antitrust law and economics, one entitled *Global Antitrust Law & Economics* and the other *U.S. Antitrust Law & Economics*. I am also co-author on the international version of the former book called *Global Competition Law & Economics,* which is published by Hart Publishing. My recent work includes two peer-reviewed economics articles, the first a rigorous economic model of loyalty discounts, *see* Elhauge, *How Loyalty Discounts Can Perversely Discourage Discounting*, 5 JOURNAL OF COMPETITION LAW & ECONOMICS 189 (2009), and the second an article on the economics of patent holdup and royalties given competitive factors, *see* Elhauge, *Do Patent Holdup and Royalty Stacking Lead to Systematically Excessive Royalties?,* 4 JOURNAL OF COMPETITION LAW & ECONOMICS 535 (2008). I also recently completed an antitrust economic article that provides a full analysis of the proper economic approach to evaluating tying and bundled discounts entitled *Tying, Bundled Discounts, and the Death of the Single Monopoly Profit Theory,* 123 HARVARD LAW REVIEW 397 (2009). Furthermore, my antitrust article, *Why the Google Books Settlement Is Procompetitive,* has been accepted by the peer-reviewed JOURNAL OF LEGAL ANALYSIS , another antitrust article, *The Failed Resurrection of the Single Monopoly Profit Theory*, has been accepted by the peer-reviewed journal COMPETITION POLICY INTERNATIONAL, another antitrust article, *Framing the Antitrust Issues in the Google Books Settlement,* was accepted and published in the peer-reviewed journal GLOBAL COMPETITION POLICY, and another antitrust article, *Disgorgement as an Antitrust Remedy* was published in the peer-reviewed ANTITRUST LAW JOURNAL. My prior published work includes two other lengthy pieces on antitrust economics: *Why Above-Cost Price Cuts to Drive out Entrants Do Not Signal Predation or Even Market Power—and the Implications for Defining Costs*, 112 YALE LAW JOURNAL 681-827 (2003); and *Defining Better Monopolization Standards*, 56 STANFORD LAW REVIEW 253-344 (2003). I was also a co-author on Volume X of the Areeda Antitrust Treatise on tying, and I have been selected to be the editor of the upcoming *Research Handbook on the Economics of Antitrust Law*. My CV is attached as Exhibit A.

7.     I am President of Legal Economics LLC, and a Member of Advisory Boards for the Journal of Competition Law & Economics, the Social Sciences Research Network on Antitrust Law & Policy, and the Social Sciences Research Network on Telecommunications & Regulated Industries. In addition, during the

2008 presidential campaign, I served as the chairperson of the Obama campaign's antitrust advisory committee. I have taken courses in economics, antitrust, and economic analysis of law, and regularly read and use economic literature on antitrust economics, including books on industrial organization. I also regularly attend workshops on those and other topics regarding the economic analysis of law. I routinely use and teach economic analysis in my classes, including those that I regularly offer on antitrust law and economics. I was named one of the world's leading competition economists in the 2009 edition of the *International Who's Who of Competition Lawyers and Economists*.

8. I have been qualified by courts to testify at trial on antitrust economics in multiple antitrust cases. I filed expert economic reports assessing the economic effects of various agreements in oximetry markets that were challenged in *Masimo Corp. v. Tyco Health Care Group*, and testified as an economic expert both by deposition and at trial in that case.[2] I filed expert economic reports assessing the effects of various agreements on the market for trocars in *Applied Medical Resources Corp. v. Ethicon, Inc.*, and testified as an economic expert by deposition and twice at trial in that case.[3] I filed expert economic reports assessing the effects of various agreements and entry on the market for erythropoietin stimulating agents (ESAs) in *Amgen v. F. Hoffman La-Roche*, and testified by deposition and at trial in that case.[4] I also filed expert economic reports assessing issues raised by an antiturst class action regarding agreements affecting the sharps container market in *Natchitoches Parish Hospital v. Tyco*, and testified by deposition at trial in that case.[5] All four federal judges qualified me to testify as an expert in antitrust economics.

9. I have also served as an expert in antitrust economics in many other cases in a wide variety of industries, and have testified by deposition and filed expert reports or declarations many times.[6] In addition to this work in other cases, in 2002, I wrote a report to the U.S. Senate on the antitrust economics of agreements between medical

---

[2] Masimo Corp. v. Tyco Healthcare Group & Mallinckrodt, Inc.,No. CV-02-4770 (C.D. Cal. filed Aug. 2001); Masimo Corp. v. Tyco Health Care Group, No. CV 02-4770 MRP, Memorandum of Decision Re: Motions in Limine (May 28, 2004).

[3] Applied Medical Resources v. Johnson & Johnson, Ethicon, Inc., Ethicon Endo_Surgey, Inc., & Johnson & Johnson Health Care Systems, Inc., No, SAVC 03-1329-JVS (C.D. Cal.); Applied Medical Resources v. Ethicon, Inc., No. SAVC 03-1329-JVS, Tentative Minute Order Re: Motions in Limine, at 23-25.

[4] Amgen v. F. Hoffman-La Roche, Civil Action No.: 05-12237 WGY (D. Mass.).

[5] Natchitoches Parish Hospital v. Tyco,

[6] My CV, which is attached as Exhibit A, provides a comprehensive listing of my past expert work.

4

device manufacturers and group purchasing organizations (GPOs) and hospitals.[7]  I also wrote a report for the Department of Justice-Federal Trade Commission (DOJ-FTC) hearing on the proper antitrust economic analysis of these exclusionary agreements used by medical device manufacturers.[8]  Moreover, I have served as a special consultant to the Federal Trade Commission on antitrust issues, with a particular focus on antitrust issues in the health care industry.  I also submitted economic reports to Congress and the FCC on the antitrust economics of Internet Access bills and Interactive Television regulation.

10.    In preparing this report, I, my research assistants, or my staff at Legal Economics have reviewed the pleadings, discovery, depositions, data, and other relevant materials on the industry and relevant economics, and I have relied on the evidence cited below and on my general knowledge of the literature on the economic analysis of antitrust in analyzing the  facts and forming my economic conclusions.

# I. RELEVANT ECONOMICS AND SUMMARY OF CONCLUSIONS

## A. Relevant Antitrust Economics



---

[7] *See* Einer R. Elhauge, *The Exclusion of Competition for Hospital Sales Through Group Purchasing Organizations, Report to the U.S. Senate*, June 25, 2002, at 2, *available at* http://www.law.harvard.edu/faculty/elhauge/pdf/gpo_report_june_02.pdf [hereinafter Elhauge Senate Report].

[8] Einer R. Elhauge, *Antitrust Analysis of GPO Exclusionary Agreements*, Comments Regarding Hearings on Health Care and Competition Law and Policy: Statement for DOJ-FTC Hearing on GPOs (Sept. 26, 2003), *available at* http://www.law.harvard.edu/faculty/elhauge/pdf/statement_ftcdoj.pdf [hereinafter Elhauge Statement to the DOJ/FTC].

5

Case 2:08-md-01000-JRG   Document 741-3   Filed 04/02/10   Page 8 of 50   PageID #: 20456



6



7



8



9

## B. Summary of Substantive Conclusions





11



12





13





14



Case 2:08-md-01000-JRG   Document 741-3   Filed 04/02/10   Page 18 of 50   PageID #: 20466



16



17

Case 2:08-md-01000-JRG   Document 741-3   Filed 04/02/10   Page 20 of 50   PageID #: 20468



18



19



20



21





22



23



Case 2:08-md-01000-JRG   Document 741-3   Filed 04/02/10   Page 27 of 50   PageID #: 20475



25



26



27



28



29



30





Case 2:08-md-01000-JRG   Document 741-3   Filed 04/02/10   Page 34 of 50   PageID #: 20482



32





33



34



35



36



37



38



Case 2:08-md-01000-JRG   Document 741-3   Filed 04/02/10   Page 42 of 50   PageID #: 20490



40



41



42



43



44



45



Case 2:08-md-01000-JRG   Document 741-3   Filed 04/02/10   Page 49 of 50   PageID #: 20497



47