**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE  SOUTHEASTERN MILK** | ) | |
| **ANTITRUST LITIGATION** | ) | |
| | ) | **Master File No. 2:08-MD-1000** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | **Judge J. Ronnie Greer** |
| *Sweetwater Valley Farm, Inc., et al. v.* | ) | **Magistrate Judge Dennis H.** |
| *Dean Foods Co., et al., No.  2:07-CV 208.* | ) | **Inman** |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of the plaintiffs for class certification, [Doc. 286]. The motion has been extensively briefed by all parties, an evidentiary hearing is unnecessary, and the motion is ripe for disposition. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART plaintiffs' class certification motion and orders the certification of the subclasses proposed by the plaintiffs.

## I.      Background

This multidistrict antitrust litigation is brought by a group of current and former dairy farmers in the southeast United States against defendants Dean Foods Company ("Dean"), National Dairy Holdings, L.P. ("NDH"), Dairy Farmers of America, Inc. ("DFA"), Dairy Marketing Services, LLC ("DMS"), Southern Marketing Agency, Inc. ("SMA"), Mid-Am Capital LLC ("Mid-Am), James Baird ("Baird"), Gary Hanman ("Hanman") and Gerald Bos ("Bos") (collectively referred to as ("defendants"). Plaintiffs seek treble damages and injunctive relief for alleged violations of §§ 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and they assert a breach of contract claim against DFA on behalf of DFA southeast members.

In Count I, plaintiffs allege a conspiracy to monopolize and monopsonize in violation § 2

of the Sherman Act; in Count II, they allege an attempt by the defendants to monopolize and monopsonize in violation of § 2; in Count III, plaintiffs allege unlawful monopolization in violation of § 2; in Count IV, they allege unlawful monopsony by the defendants in violation of § 2; in Count V, the plaintiffs allege an unlawful conspiracy among defendants to foreclose competition and fix prices in violation of § 1; and in Count VI, plaintiffs assert a breach of contract claim against DFA. Plaintiffs define the relevant product market as the market for Class I raw milk, fluid milk used in beverage milk products for human consumption, and they define the relevant geographic market as Federal Milk Market Orders ("FMMO" or "Order") 5 and 7, located in the southeast United States.[1]

Plaintiffs seek certification under Federal Rule of Civil Procedure 23 of a class of

> All dairy farmers, whether individuals or entities, who produced Grade A milk within Orders 5 or 7 and sold Grade A milk directly or through an agent to defendants or Co-conspirators[2] in Orders 5 and/or 7 during any time from January 1, 2001 to the present. The following persons are excluded from the class: a) Defendants and b) Defendants' co-conspirators.

Within this class, plaintiffs seek the certification of two subclasses:

> a. **Independent Dairy Farmer and Independent Cooperative Member Subclass** – All independent dairy farmers and independent cooperative members (whether individuals or entities) who produced Grade A milk within Orders 5 or 7 and sold Grade A milk directly or through an agent to Defendants or Co-conspirators in Orders 5 or 7 during any time from January 1, 2001 to the present. The terms "independent dairy farmer" and "independent cooperative member" refer to Southeast dairy farmers who were not members of DFA at the

---

[1] Order 7 includes Alabama, Arkansas, Mississippi, Louisiana, and parts of Florida, Georgia, Kentucky, Missouri and Tennessee. Order 5 includes North Carolina, South Carolina, and portions of Georgia, Indiana, Kentucky, Tennessee, Virginia and West Virginia.

[2] Plaintiffs allege in their complaint that other milk marketers, milk purchasers, milk processors or other persons or entities, including DairyCom, Inc., the Kroger Company, Prairie Farms Dairy, Inc., Robert W. Allen, J. Bryant, Herman Brubaker, Greg L. Engles, Michael J. McCloskey, Allen A. Meyer and Pete Schenkel, have also conspired with the named defendants.

time of their Grade A milk sales.

> b. **DFA Member Dairy Farmer Subclass** - All DFA members (whether individuals or entities) who produced Grade A milk within Orders 5 or 7 and sold Grade A milk directly or through an agent to Defendants or Co-conspirators in Orders 5 or 7 during any time from January 1, 2001 to the present. The term "DFA member dairy farmer" refers to Southeast dairy farmers who were members of DFA at the time of their Grade A milk sales.

[Doc. 87, ¶ 115]. Plaintiffs allege that the proposed class has more than 4,500 members in the southeast, about 1, 500 of whom are in the independent dairy farmer and independent cooperative member subclass and approximately 3,000 of whom are in the proposed DFA member dairy farmer subclass.

## II.   Legal standard for class certification

Under Federal Rule of Civil Procedure 23(a), "[o]ne or more members of a class may sue . . . on behalf of all members only if:

> (1)   the class is so numerous that joinder of all members is impracticable;
> (2)   there are questions of law or fact common to the class;
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)   the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).[3]   The burden is on the plaintiffs to establish their right to class certification. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2008), citing *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003), citing *Senter v. Gen. Motors Corp*., 532 F.2d 511, 522 (6th Cir. 1976). "The class may only be certified if, after a rigorous analysis, the district court is satisfied that these prerequisites have been met." *Beattie*, 511 F.3d at 560 (internal quotations marks and citations omitted). *See also*

---

[3]   These four requirements of Rule 23(a) are typically referred to as numerosity, commonality, typicality, and adequacy of representation.

*Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 644 (6th Cir. 2006).

If plaintiffs satisfy all the prerequisites of Rule 23(a), they may maintain a class action if they also meet one of the three types of class action suits recognized in Rule 23(b). Rule 23(b), in relevant part, provides:

> **(b) Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
>
> . . . .
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(2) and (3); *see also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule

23(b)").

Here, the dairy farmer plaintiffs proceed under Rule 23(b)(2) and (3). Wright, Miller & Kane explain the factors which must be present in order for an action to fall within Rule 23(b)(2):

> There are two basic factors that must be present in order for an action to fall within this portion of Rule 23: (1) the opposing party's conduct or refusal to act must be "generally applicable" to the class and (2) final injunctive or corresponding declaratory relief must be requested for the class. The term "generally applicable" has been said to signify "that the party opposing the class does not have to act directly against each member of the class." The key is whether the party's actions would affect all persons similarly situated so that those acts apply generally to the whole class. If they do not, then Rule 23(b)(2) cannot be properly invoked.

Wright, Miller & Kane, 7AA *Federal Practice and Procedure Civil* 3d § 1775. Under Rule 23(b)(3), a failure to meet either the predominance or superiority requirements precludes certification under that portion of the Rule. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiffs' suit. *Beattie*, 511 F.3d at 560, citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of the suit in order to determine whether it may be maintained as a class action."). Furthermore, doubts about certification should be resolved in favor of the plaintiffs. *Eddleman v. Jefferson County, Ky.*, 96 F.3d 1448, 1996 WL 495013 at *3 (6th Cir. Aug. 29, 1966) (unpublished table decision). In that regard, it should also be kept in mind that a district court has discretion to modify a certification order and even to decertify the class before final judgment in light of subsequent litigation developments. Fed. R. Civ. P. 23(c)(1)(C); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006).

### III.     Analysis and discussion

A threshold issue implicit in Rule 23 is that the named plaintiffs seeking certification must propose an identifiable, unambiguous class in which they are members. *Reid v. White Motor Corp.*, 886 F.2d 1462, 1471 (6th Cir. 1989). Here, it is not reasonably suggested by defendants that plaintiffs have not proposed an identifiable and unambiguous class. Although numerous in number, the members of the class are readily identifiable based upon verifiable records which exist. In addition, plaintiffs are members of the proposed class.

#### A.     Rule 23(a) requirements

##### 1.     Numerosity (Rule 23(a)(1))

As set forth above, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Amer. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone." *Id.* The proposed class here has more than 4,500 members, including more than 1,500 members of the independent dairy farmer and independent cooperative member subclass and more than 3,000 members of the proposed DFA member dairy farmer subclass. *See Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 n.1 (6th Cir. 1997) (joinder of parties impracticable for class with over 1,100 members and "[t]o reach this conclusion is to state the obvious.") In addition, the fact that members of the proposed subclasses are spread throughout eleven states making up Orders 5 and 7 and reside in 27 separate federal judicial districts makes joinder impracticable. The defendants do not argue that numerosity does not exist. The requirements of Rule 23(a)(1) are met.

## 2.    Commonality (Rule 23(a)(2))

Rule 23(a)(2) provides that a class can be certified only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Although Rule 23(a)(2) refers to "questions" in the plural, there need be only a single issue common to all members of the class. *Sprague*, 133 F.3d at 397; *In re Am. Med. Sys., Inc*., 75 F.3d at 1080.  That single issue must, however, be one whose resolution will advance the litigation by affecting a significant number of the proposed class. *Sprague*, 133 F.3d at 397.  Some "factual differences among Plaintiffs' claims do not defeat the commonality requirements." *In re Am. Med. Sys., Inc*., 75 F.3d at 1080.  The threshold of commonality is not high and is  relatively easy to meet, however. *Linkous v. Medtronic*, 1985 WL 2602 (E.D. Pa. 1985).

Plaintiffs allege that there are numerous questions of law and fact common to the members of the proposed class. [*See* Memorandum, Doc. 287, at p. 26 (setting forth 13 alleged common questions)].  Among those questions are questions of whether or not defendants have engaged in a conspiracy to "fix, stabilize, maintain, and/or artificially lower the price paid to southeast dairy farmers for fluid Grade A milk," and whether defendants have conspired to monopolize and/or monopsonize and/or restrain trade of fluid Grade A milk marketed and purchased in the southeast, as well as questions as to whether or not some or all of the defendants exercise monopoly or monopsony power in the relevant market and have abused and/or misused such power, in violation of §§ 1 and 2 of the Sherman Act.

While acknowledging that the Court is not to inquire into the merits of the class representatives' underlying claims, defendants do argue, and plaintiffs acknowledge,  that this Court should "probe behind the pleadings" to conduct the required rigorous analysis, citing *Hyland v.*

*Homeservices of America, Inc.*, 2008 WL 4858202 at *3 (W.D. Ky. Nov. 7, 2008) and *Armstrong v. Whirlpool Corp.*, 2007 WL 676694 at *1 (M.D. Tenn. March 1, 2007). Defendants further invite the Court to address substantive elements, *i.e.* factual allegations, of the plaintiffs' claims. Defendants then commit numerous pages of their brief to an examination of the competing evidence in the case. The Court will decline the defendants' invitation to resolve competing factual issues in deciding this motion for class certification. Although the Court has thoroughly considered the plaintiffs' allegations and the proof they proffer on their claims, as well as the defendants' exhaustive responses as to the merits of plaintiffs' claims, conducting the rigorous analysis required does not call for this Court to determine whether plaintiffs will be successful or prevail on the merits of their claims. *Daffin*, 458 F.3d at 553.

The Court finds that the claims of the plaintiffs satisfy the commonality requirement of Rule 23(a)(2).[4] In general, conspiracy claims deal with common legal and factual questions about the existence, scope, and effect of the alleged conspiracy, *In re Workers' Comp.*, 130 F.R.D. 99, 105 (D. Minn. 1990); *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 322 (5th Cir. 1978), and the same is true of claims of breach of form contracts. *See Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, No. 1:08-cv-605, 2008 U.S. Dist. LEXIS 107425 at * 32 (N.D. Ohio February 10, 2008).

### 3.     Typicality (Rule 23(a)(3))

As noted above, a court will not certify a putative class under Rule 23 unless "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

---

[4]     A finding of commonality under Rule 23(a)(2) is not the same thing as a finding that these questions predominate. *In re Tectronics Pacing Systems, Inc.*, 164 F.R.D. 222, 230 (S.D. Ohio 1995).

Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is considered "typical" if it arises from the same course of conduct that gives rise to the claims of the other class members, or if it is based on the same legal theory. *In re Workers' Comp.*, 130 F.R.D. at 105. In determining whether typicality exists, the court determines only "whether a sufficient relationship exists between the injury to the named plaintiff[s] and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Beattie*, 511 F.3d at 561 (citations omitted).

Courts liberally construe the typicality requirement. *See, e.g., Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 164 (C.D. Cal. 2002). Typicality is ordinarily established in the antitrust context when the named plaintiffs and all class members allege the same antitrust violations by defendants. *Id.*; *In re Playmobil Antitrust Litig.*, 35 F.Supp.2d 231, 241 (E.D. N.Y. 1998). The named plaintiffs' claims are typical in an antitrust case in that they must prove a conspiracy, its effectuation, and damages therefrom, the very same elements absent class members must prove to recover. *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007); *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 691 (D. Minn. 1995).

It is unclear from defendants' filings whether they contest that typicality exists in this case. In any event, it does, at least as to the antitrust claims. The class representatives antitrust claims are typical of the claims of the entire class. Here, plaintiffs have alleged that each member of the class was injured by defendants' "abuse of market power, conspiracy to depress the price of milk, and by conduct in furtherance of these [alleged] illegal acts." Plaintiffs' antitrust claims arise out of the same course of conduct, they are based on the same legal theory and, if proven, they impact all members of the entire class. Thus, plaintiffs' allegations are sufficient to satisfy the

typicality requirement of Rule 23(a)(3).[5]

### 4. Adequacy of representation and appointment of class counsel (Rule 23(a)(4))

The final requirement of Rule 23(a) is that the representative parties must "fairly and adequately represent the interests of the class." Fed. R.Civ. P. 23(a)(4). "It is axiomatic that a putative representative cannot adequately protect the class if the representative's interests are antagonistic or in conflict with the objectives of those being represented." 7A Wright, Miller & Kane, *Federal Practice and Procedure Civil* 3d § 1768. "The adequacy of representation requirement overlaps with the typicality requirement" because a class representative has no incentive to pursue the claims of the other class members absent typical claims. *In re Amer. Med. Sys., Inc.*, 75 F.3d at 1083. Whenever named plaintiffs have interests that are actually or potentially antagonistic to the interests and objectives of other class members, the concern is that the named plaintiffs cannot "vigorously prosecute" the interests and objectives of the class. *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Defendants assert that "substantial inter-and-intra-class conflicts by both class counsel and individual named plaintiffs preclude certification of the proposed classes," and they vigorously argue that the demands of Rule 23(a)(4) are not met in this case. Plaintiffs, on the other hand, argue that the named plaintiffs will "vigorously prosecute the interests of the class" and "have a strong interest in establishing defendants' liability." Plaintiffs point out that most or all of the

---

[5]  The Court does not address the typicality requirement of Rule 23(a) for the breach of contract claims because, as discussed below, the Court will not certify a class as to those claims. The Court notes however, that the Sixth Circuit has described the requirement "as goes the claims of the named plaintiffs so go the claims of the class," *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000), something that does not exist with respect to the breach of contract claims. Although the requirement of typicality under Rule 23(a) parallels the predominance requirement of Rule 23(b)(3), the requirement of Rule 23(b)(3) is more stringent. *In re Am. Med. Sys.*, 75 F.3d at 1084.

named plaintiffs make their livelihood selling raw milk, have strong ties to the community of dairy farmers, hold important positions in associations of dairy farmers, have assisted counsel to date with the lawsuit, and have shown a keen interest in the case.

### i.        Named plaintiffs

Defendants argue that a "fundamental and irremediable conflict of interest exists" between DFA members and non-DFA members in this case. The reason for this, according to defendants, is that much of the alleged wrongdoing would in fact benefit those members of the proposed class who are DFA members at the expense of the non-DFA members of the proposed class. This is especially true, as defendants see it, with respect to the allegations of "monopoly power" and "market dominance" which, if true, would clearly inure to the benefit of DFA member farmers.

Plaintiffs respond to defendants' argument by asserting that this alleged conflict is "a manufactured hypothetical" that is contrary to the evidence developed to date in the case. They argue that the claim that DFA farmers benefit from the alleged wrongdoing is not credible. They also assert that the DFA member farmer representatives dispute the assertion that the alleged wrongdoing is beneficial and that it is improper to deny class certification because of a potential conflict that may not be actual.

This aspect of this case has been troubling to the Court from the outset. On the one hand, DFA is a cooperative made up of dairy farmer members. To the extent that DFA has engaged in the wrongdoing alleged in plaintiffs' complaint, it would appear on the surface that most, if not all, of DFA member dairy farmers have in fact benefitted from DFA wrongdoing. As noted by the Court in its May 20, 2008 order, it would appear that "DFA members would, by recovering

damages, benefit from the alleged wrongdoing of their own cooperative." On the other hand, the sum of plaintiffs' claims against DFA are that DFA has abdicated its responsibilities as a cooperative organized for the benefit of its members and has in fact conspired with other defendants, resulting in its own members being paid lower prices.

The case primarily relied on by the defendants, *Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000), appears to be closely on point, as defendants suggest. In *Pickett*, the plaintiffs, producers of "fed cattle" sold to Iowa Beef Producers, sued alleging violations of the Packers and Stockyards Act. On appeal from the district court order granting class certification, the Eleventh Circuit reversed, because the class certified included "those who claim harm from the very same acts from which other members of the class have benefitted." *Id*. at 1280. Under these circumstances, the Eleventh Circuit found that plaintiffs, whose interests opposed those of other class members, "could not possibly provide adequate representation to a class" including those who benefitted from the acts alleged to have caused harm to the named plaintiffs. *Id*. at 1280-1281. Plaintiffs distinguish *Pickett* on the basis that plaintiffs in *Pickett **admitted*** that some class members benefitted from the alleged wrongful acts while DFA members in this case allege that they have ***all*** been harmed as a result of the alleged wrongful conduct.

This is admittedly a close question and plaintiffs' effort to distinguish *Pickett* may simply be a distinction without a real difference. However, given that doubt should be resolved generally in favor of the plaintiffs, and given the Court's authority to modify or decertify the class at any time prior to judgment, the Court finds the requirements of Rule 23(a)(4) to have been met. It is true, as plaintiffs allege, that defendants have not presented testimony from any DFA member or other witness indicating DFA members have in fact benefitted from the alleged wrongful conduct

in this case. It thus appears that defendants' argument at this point is a somewhat hypothetical, although plausible, theory, and that the Court should not deny certification on this basis. It may well be that, at some later point in this litigation, the evidence may establish that defendants' claims that some members of DFA have in fact benefitted from the alleged wrongful conduct can be established on the merits. If so, it is likely that the Court would be required to find that the interests of the class representatives are antagonistic to those of certain members of the class, requiring decertification or modification of any class which includes DFA members. That eventuality will be left, however for a later day. [6]

### ii.     Class counsel

Defendants' claims related to class counsel in this case are intertwined with their arguments that certain of the proposed class members' interests are antagonistic to each other. Because the class members who have a conflict must act through class counsel, defendants argue that dual representation of parties with conflicting interests renders proposed class counsel inadequate and prevents certification. Because the Court has found defendants' argument with respect to a potential conflict among class members to be inadequate at this time to prevent certification, the same logic applies to class counsel. Class counsel in this case are experienced in antitrust and class action litigation, they have the resources to prosecute this case and they have, to date, aggressively and vigorously prosecuted the case.

### B.     Rule 23(b) requirements

As set forth above, plaintiffs who meet the four prerequisites of Rule 23(a) must also

---

[6]  Lest it appear that the Court has ignored other arguments of conflicts among class members, the Court has considered those argued conflicts and has found them without merit. The Court has chosen to deal with the most significant of the conflict issues in the body of its memorandum opinion.

satisfy at least one provision of Rule 23(b).  Plaintiffs argue that they have met the requirements of both Rule 23(b)(2) and Rule 23(b)(3).  Not surprisingly, defendants dispute both contentions.

### 1. Injunctive or declaratory relief

Plaintiffs seek significant injunctive and declaratory relief in their complaint. More specifically, they seek a declaration that full supply agreements between Dean, NDH and DFA are null and void, an injunction preventing defendants from entering into full supply agreements and an order requiring Dean, NDH, DFA and Mid-Am to divest fluid Grade A milk bottling plants, what plaintiffs refer to as "structural relief."  Plaintiffs claim that such declaratory and injunctive relief is necessary to restore the competitive nature of the market for raw milk and will benefit all dairy farmers.  They cite several district court decisions certifying antitrust class actions under Rule 23(b)(2) under similar circumstances.  The defendants do not seem to contest plaintiffs' contention that they meet the requirements of Rule 23(b)(2) and spend the bulk of their brief related to Rule 23(b) dealing with whether or not plaintiffs can meet the requirements of Rule 23(b)(3).

As set forth above, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).  The Advisory Committee's notes explain that this subdivision "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Fed. R. Civ. P. 23(b)(2), Advisory Committee's note.  At least one of the cases cited by plaintiffs appears to be contrary to the Advisory Committee note.  *See In re Visa Check/ Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 88 (E.D. N.Y. 2000) (damages claim does not prevent certification under Rule 23(b)(2) when injunctive relief is a significant component of overall relief).

There is a significant difference between class actions based on Rule 23(b)(2) and those based on Rule 23(b)(3). Class actions under Rule 23(b)(2) are referred to as "mandatory" classes due to the fact that they do not require a court to provide individual members of the class with notice and opportunity to "opt out" of the class action. These procedural protections are considered unnecessary under Rule 23(b)(2). *Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002), citing *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155-56 (11th Cir. 1983); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 256 (3d Cir. 1975) ("the very nature of a (b)(2) class is that it is homogenous without any conflicting interest between the members of the class."). Rule 23(b)(3) is referred to as an "opt out" class due to the special requirements set forth in Rule 23(c)(2) that all members of the class be provided reasonable notice and an opportunity to decline to participate in the action. *Id.* Because Rule 23(b)(2) classes do not have the same opt out privileges as Rule 23(b)(3) classes, the decision to afford class treatment under 23(b)(2) is subject to close scrutiny. *Id.,* citing *In re Telectronics Pacing Sys., Inc.,* 221 F.3d 870, 881 (6th Cir. 2000) (stating that certification of a mandatory class under Rule 23(b)(2) "must be carefully scrutinized" because it lacks the protections of a Rule 23(b)(3) class).

Finally, predominance concerns arise in the context of Rule 23(b)(2) because "the underlying premise of (b)(2) certification-that the class members suffer from a common injury that can be addressed by class wide relief-begins to break down when the class seeks to recover... other forms of monetary damages to be allocated based on individual injuries." *Id*., quoting *Eubanks v. Billington*, 110 F.3d 87, 95 (D.C. Cir. 1997)). It thus becomes a critical question under Rule 23(b)(2) whether injunctive relief predominates. *Coleman*, 296 F.3d at 448.

While it is apparent that the plaintiffs seek significant injunctive and

declaratory relief here, the Court cannot find that the claims for injunctive relief predominate over the claims for compensatory damages. Thus, the Court concludes that it would not be proper to certify the class only under Rule 23(b)(2); however, the claims for injunctive relief can be certified under Rule 23(b)(2) because, as set forth below, the class can also be certified under Rule 23(b)(3). *See Olden v. LaFarge Corp.*, 383 F.3d 495 (6th Cir. 2004).

### 2. Rule 23(b)(3) requirements

### A. Predominance

"A claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001). Common questions need only predominate; they need not be dispositive of the litigation. *In re Potash Antitrust Litig.*, 159 F.R.D. at 693. The existence of individual issues, therefore, do not defeat class certification. *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D. N.J. 2003).

Generally, a mere allegation of price fixing will not satisfy the predominance requirement of Rule 23(b)(3). Courts have fairly consistently found, however, that common issues regarding the existence and scope of the conspiracy predominate over other questions affecting only individual members in antitrust price fixing cases. *In re Resins Foundry Antitrust Litig.*, 242 F.R.D. at 408, citing *In re Catfish Antitrust Litig.*, 826 F.Supp.1019, 1039 (N.D. Miss. 1993); *In re Infant Formula Antitrust Litig.*, 1992 WL 503465 at * 6 (N.D. Fla., 1992).

### i. The antitrust claims

Plaintiffs' price fixing allegations are precisely the kind of claims for which class action treatment is appropriate. Courts have held that the "existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D. N.Y. 1996); *In re Potash Antitrust Litig.*, 159 F.R.D. at 693. In addition, plaintiffs argue that the impact of the alleged conspiracy, antitrust damages and fraudulent concealment are class wide issues.

Not surprisingly, defendants argue that common issues do not predominate with respect to plaintiffs' antitrust claims. Focusing on the plaintiffs' allegations concerning the full supply agreements at issue in this case, defendants argue that plaintiffs are focusing on the "effects" of these agreements and not on conventional price fixing among horizontal competitors. In fact, defendants argue that what plaintiffs characterize as horizontal price fixing, illegal per se, is in reality simply a series of agreements and actions among the defendants which have the effect of depressing prices to dairy farmers.[7] Defendants also argue that there is a lack of predominance regarding plaintiffs' foreclosure and monopolization/monopsonization claims. Their arguments here focus on plaintiffs' allegation that dairy farmers have been "required" to market their milk through DFA or a DFA controlled entity and that plaintiffs cannot show by common proof that no dairy farmer belongs to DFA voluntarily. Defendants raise the same issue with respect to dairy farmers who do not belong to DFA and they raise, once again, the argument that certain dairy farmers who

---

[7] The defendants may have the stronger argument here on the merits, but the proof appears to be conflicting and ultimately a matter for the trier of fact.

are members of the proposed class have actually benefitted from the alleged wrongdoing. Finally, defendants attack the report of Dr. Beyer, plaintiffs' expert, as having offered no meaningful method for proving predominant liability or damages issues by common proof.

It appears to the Court that once again the defendants are asking the Court to resolve certain of the issues in this litigation on the merits. A class certification motion is not the appropriate vehicle for accomplishing that. While the Court must rigorously examine the allegations of the plaintiffs in evaluating a class certification motion, the plaintiffs are not required, at this stage of the litigation, to establish that they can succeed on the merits. Plaintiffs allege a horizontal price fixing conspiracy to violate antitrust laws. It is well established that "[p]rice-fixing is illegal *per se* under the Sherman Act, 15 U.S.C. § 1, " *In re Potash Antitrust Litig.*, 159 F.R.D. at 694, citing *Citizen Pub. Co. v. United States*, 394 U.S. 131 (1969). Plaintiffs' allegations of a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class wide basis through common proof. Whether plaintiffs will be able to actually prove the existence of such an agreement remains to be seen. The same is true with respect to plaintiffs' monopolization/monopsonization claims. Furthermore, defendants' arguments based on Dr. Beyer's report are not suited to determination on a class certification motion. In deciding this motion, the Court will credit Dr. Beyer's report and that report, standing alone, is sufficient to establish that, on the antitrust issues, liability and damages can be established on a class-wide basis. As noted previously, if plaintiffs cannot survive a *Daubert* motion as to Dr. Beyer's report or if they cannot establish genuine issues of material fact with respect to many of these claims, the Court has, as noted above, the option of decertifying or modifying the class at a later time.

For the reasons set forth above, the Court finds that, with respect to the

antitrust issues raised by the plaintiffs' complaint, common issues do in fact predominate as to the defendants' liability-*i.e.*, the existence, scope and extent of the alleged conspiracy, and the predominance requirement is met.[8]

### ii.    The breach of contract claim against DFA

Plaintiffs also argue that common questions of law and fact predominate with respect to the breach of contract claim as it relates to the allegation that DFA has breached its obligation to the DFA subclass members.  More specifically, plaintiffs allege that DFA breached certain provisions of standardized, form provisions of its bylaws and member agreement that are common to all members of the proposed subclass.[9]  They allege that these provisions of the bylaws and member agreements are identical as to all of the DFA subclass members and, as such, are

---

[8]   The Court is not unmindful of the argument made by defendants that, on the issue of foreclosure, the "individual stories" of some of the named plaintiffs illustrate that they have had other options for the sale of their milk.  This proof, however, would not necessarily disprove the existence of a conspiracy to foreclose access.  Such proof might establish that the alleged conspiracy has been less than completely successful.

[9]   Plaintiffs' breach of contract claims appear to focus on claims that DFA has participated in "sweetheart" deals, made "secret" payments to insiders, wasted money on unnecessary expenses, and the like. Paragraph 176 of the amended complaint sets out the specific nature of the breach[es] alleged:

> 176.    DFA materially breached its obligations to Plaintiffs and class members under the Member Agreement and DFA Bylaws by:
>
>> a.        entering into transactions and engaging in conduct that disadvantaged the
>> Southeast DFA member dairy farmers and were not beneficial to
>> Southeast DFA member dairy farmers' interest;
>>
>> b.        engaging in unlawful acts or activities; and
>>
>> c.        causing Southeast DFA member dairy frarmers to pay expenses for the
>> marketing of their Grade A milk that were not ordinary and necessary.

particularly well suited to class certification.  Furthermore, they argue that Kansas law will be uniformly applied to all class members in interpretation of the contracts.  They likewise argue that common proof will be used to establish damages on a class wide basis.

Defendants, on the other hand, point to individualized differences between members of the DFA subclass.  More specifically, they argue that members of the class have been members of DFA for differing periods of time and thus an individualized determination will have to be made as to whether or not the DFA member was a party to a contract at the time of the alleged breach.  They also argue that certain defenses such as waiver and estoppel may be asserted against certain members of the class, but not others.  Because of these individual determinations that will be required, defendants argue that the breach of contract claim cannot be maintained as a class action.

Once again, the issue presented with respect to the breach of contract claim is a difficult and close question, despite plaintiffs' characterization of defendants' arguments as "two minor issues that have no merit."  The parties do not dispute that Kansas law applies to the breach of contract claim.  Under Kansas law, the elements of a breach of contract action are (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to plaintiff caused by the breach.  *Comm. & Ind. Ins. Co. v. J & M Contracting, Inc*., 197 P.3d 906, 2008 WL 5455081 (Kan. App. Dec. 31, 2008) (unpublished table disposition); *see also City of Andover v. Southwestern Bell Tel. LP*, 37 Kan. App. 2d 358, 362, 153 P.3d 561, 565 (Kan. App. 2007).  "The existence of a promise or agreement is the essence of a contract, and is an essential element of a claim for breach."  *Duncan v. Janosik, Inc*.,

203 P.3d 88, 2009 WL 743579 (Kan. App., March 13, 2009) (unpublished table disposition).

As noted above, the existence of a contract at the time of the alleged breach is at the heart of a breach of contract action. Plaintiffs do not seem to dispute that some of the proposed class members may not have been DFA members at the time of the alleged breach; rather, they suggest that by common proof they will attempt to prove that the alleged conduct on the part of DFA constituted a breach of the standardized, form contract with all DFA members. It does not appear, however, that such proof would be sufficient to establish a breach of contract as to each member of the proposed subclass,[10] and plaintiffs' argument that these individual differences among plaintiffs relate only to damages is unpersuasive.[11]

Rather than relating only to damages, the individualized determination that must be made here goes to the heart of plaintiffs' breach of contract claims. Because each individual member of the proposed class must show that he or she was a party to the contract at the time of the alleged breach, the breach of contract claim is not susceptible to class action treatment and common issues do not predominate with respect to the DFA member plaintiffs' breach of

---

[10] The Court acknowledges that "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis," and that common issues "need not be dispositive of the litigation." *In re Potash Antitrust Litig.*, 159 F.R.D. at 693. (internal citations omitted) (emphasis added). In this case, however, it appears that the Court would ultimately be required to determine on an individual basis the question of whether a particular DFA member had a contract in existence at the relevant time, a question which would "overwhelm the common questions and render the class action meaningless." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. at 517.

[11] Plaintiffs cite to testimony in the record that DFA and DFA members have entered into a "common form contract" and that the first element of a breach of contract claim, "has been established as to all class members." Plaintiffs ignore, however, the question of whether each individual contract was in effect at the time of the alleged breach.

contract claim.[12]   Proof by plaintiffs that the complained of conduct constituted a breach of DFA's

form member contract would not prove a breach of contract as to all DFA members.   The

requirements of Rule 23(b)(3) are not met with respect to the breach of contract claim.

### B.   Superiority

Rule 23(b)(3) also requires the Court to find that "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In considering whether a class action is the superior method to employ, a court should consider:

(A)   the class members' interests in individually controlling the
prosecution or defense of separate actions;

(B)   the extent and nature of any litigation concerning the
controversy already begun by or against class members;

(C)   the desirability  or  undesirability of concentrating the
litigation of the claims in the particular forum; and

(D)   the likely difficulties in managing a class action

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiffs contend that a class action is superior to other available methods for

adjudicating this controversy, and the Court agrees.   Proceeding with the antitrust claims in this

multidistrict litigation as a class action, rather than as separate individual trials, will provide

significant economies in time, effort and expense for both the litigants and the Court.   Defendants

---

[12]   It is unclear from plaintiffs' amended complaint whether they allege that it is the conduct of DFA
in total which amounts to a breach of contract or whether each of the individual acts complained of constitutes
a separate breach of contract by DFA, i.e. whether there is one breach of contract or many different breaches
alleged.  Either way, the practical difficulty for plaintiffs to prove their breach of conduct claim by common
proof  is obvious.  If they claim that it is DFA's conduct in total which constitutes a breach of contract, then
the case could be made only as to those who were DFA members before the first wrongful act was committed
and remained a member to the present.  On the other hand, if plaintiffs argue that each individual wrongful
act was a breach of contract, then their claim is dependent on who was a DFA member at that particular time.
By way of example, as defendants argue, if the bonus payment to Allen Meyer in December, 2001, was a
breach of DFA members' contracts, it would only be so as to members whose contract was in existence in
December, 2001.  The same is true of each of the other separate acts of the alleged wrongful conduct.

apparently do not disagree. *See In re Potash Antitrust Litig.*, 159 F.R.D. at 699; *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 325-26; *In re Carbon Black Antitrust Litig.*, 2005 WL 102966 at * 22. This litigation is complex, its prosecution is costly, and the members with smaller damages claims likely have fewer resources with which to fund individual litigation.

## IV.    Conclusion

For the foregoing reasons, the motion of plaintiffs for class certification, [Doc. 286], is GRANTED IN PART and DENIED IN PART. The Court will certify the class and two subclasses[13] proposed by the dairy farmer plaintiffs with respect to all of the plaintiffs' claims except for the breach of contract claim against DFA by its dairy farmer members and the motion, in that respect, is DENIED. Within ten (10) days from the entry of this order, plaintiffs' counsel shall submit to the Court a proposed order, with accompanying memorandum, for complying with Rule 23(c)(2) and (d), to the extent applicable. Defendants may file a response within the time provided by the rules.

At any time before final judgment, the Court shall modify this certification order or decertify the class should subsequent circumstances warrant such action.

So ordered.

ENTER:


                                        s/J. RONNIE GREER
                                        UNITED STATES DISTRICT JUDGE

---

[13]    The Court has considered whether the certification of the subclasses proposed by plaintiffs is necessary in view of the Court's decision that the breach of conduct claims on behalf of DFA members are not suitable for class certification; however, the Court has chosen to certify the class and subclass as defined by plaintiffs primarily because of the argument of the defendants that DFA members have actually benefitted from the alleged illegal conduct. The Court continues to be troubled by that possible flaw in the named plaintiffs' claims. Assuming that plaintiffs can prove the alleged conspiracy, they may ultimately be able to prove that DFA members have been victims of that conspiracy, in which case it might be appropriate for the Court to modify or decertify the DFA subclass.