UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


IN RE:        SOUTHEASTERN MILK              Master File No. 2:08-MD-1000
              ANTITRUST LITIGATION

THIS DOCUMENT RELATES TO:                )   Judge J. Ronnie Greer
*Scott Dairy Farm, Inc., et al. v. Dean Foods,*     )   Magistrate Judge Dennis H.
*et al.*, No. 2:07-CV 208 and/or *Food Lion, LLC*     )   Inman
*et al. v. Dean Foods Company, et al.*,       )
No. 2:07-CV-188                          )


## <u>MEMORANDUM</u>

The parties to this suit have retained eleven experts, all economists save for one law

professor.  Without exception, each of these experts is the object of a so-called *Daubert*

motion filed by one or more of the opposing parties.  This memorandum is filed as a

preamble to the individual orders that are filed with respect to each *Daubert* motion, and it

is incorporated by reference into each such order.

Federal Rule of Evidence 702 controls the admissibility of expert testimony in federal

court:

> If scientific, technical, or other specialized knowledge will assist the
> trier of fact to understand the evidence or to determine a fact in issue,
> a witness qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon sufficient facts or
> data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods
> reliably to the facts of the case.

In *Daubert v. Merrill Dow Pharm., Inc*., 509 U.S. 579 (1993), the Supreme Court

discussed at length the requirements of Rule 702 as it then existed. There is no need to

discuss the *Daubert* trilogy[1] since the current version of Rule 702 is the codification of the *Daubert* principles. Nevertheless, one aspect of the *Daubert* opinion bears mentioning: although noting that the trial court has the responsibility of ensuring that an expert's proposed testimony rests "on a reliable foundation and is relevant,"i.e., the "gatekeeping rule," *id*., 597, Rule 702 nevertheless manifests a *liberal* approach in determining the admissibility of expert opinions, *id*. , 588. Often overlooked in the *Daubert* opinion is the Court's reminder that our adversary system of justice presumes that the jury is capable of understanding the evidence; understanding and heeding the judge's instructions; and then separating the evidentiary wheat from the chaff: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*., 596.

> A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996).

Advisory Committee Notes, 2000 Amendments.

The committee notes to the 2000 amendments also pointed out that "[t]his amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert," which is precisely what has occurred in this case.

In many "*Daubert* hearings," the party opposing admissibility of an expert's testimony

---

[1] *Daubert*, 509 U.S. 579 (1993); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *Khumo Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

essentially asks the court to *weigh* or evaluate the expert's opinion under the pretense of fulfilling its *Daubert* gatekeeping role. In many of the motions, arguments couched in terms of sufficiency of the data, or reliability of methodology, in reality were assertions that this court should reject certain data - facts, of course - in favor of others. The court may not resolve factual disputes in performing a *Daubert* analysis. From that, it follows that if the resolution of a *Daubert* issue involves a mixed question of fact and law, the expert's opinion should be admitted into evidence.

There is ample reason to conclude that many, if not most, of the experts retained in this case have emphasized some facts that support the conclusions sought by those who hired them, and minimized facts which did not support those conclusions. But so doing does not necessarily mean that this court should summarily exclude their opinions. An economist, like any other expert, brings his expertise to bear in deciding what facts or circumstances are more important to his analysis.

Although no motion explicitly so acknowledges, it is apparent that most of the motions are based on nothing more than a disagreement between competing experts. In the case of many expert disciplines, diametrically opposing opinions of experts have resulted in a great deal of justifiable judicial (and public) cynicism. But that natural reaction should be tempered in this case. For one thing, this case would be completely beyond the understanding of the ordinary lay person without the assistance of economists to explain the economic causes and effects of particular actions; it is a classic example of Rule 702's "specialized knowledge" that will assist the trier of fact. For another, those "causes and

effects" in the realm of economics are not nearly as clear-cut as they are in other disciplines, such as chemistry or engineering; there is room for disagreement among the experts. With one exception, this court could not conclude that the expert failed to rely upon sufficient data, or utilized unreliable methodology in forming his opinion(s). To have done so would have required the court to usurp the fact-finders' prerogative by evaluating the quality of the expert's opinion prior to the trial. *Daubert* - and thus Rule 702 - were intended to weed out "junk science" and the "professor Irwin Coreys"[2] from the courtroom; Rule 702 was not intended as a device for the judge to substitute his opinion for that of the jury.

Lastly, the fact that an expert opinion has been deemed admissible under Rule 702 does not necessarily mean that it will be adequate to support (or defeat, as the case may be) a motion for summary judgment. *Daubert,* 509 U.S. at 596; *Jahn v. Equine Services*, 233 F.3d 382, 387 (6th Cir. 2000). Many of the motions filed in this case are based on an argument that the opposing economist has used an incorrect legal standard in formulating his opinions. In this case, however, it would be inappropriate to determine the correct "legal standard" - e.g., the parameters of the relevant geographic market - and thus convert a *Daubert* motion into an ersatz motion for summary judgment. The "legal standards" argued by one side or the other are not so well-defined or beyond reasonable argument that those issues should be effectively decided by a *Daubert* order. The experts are not disqualified from offering testimony on the basis of a fundamental dispute over the law in this rather

---

[2]Well into his 90's, Professor Corey is still the World's Foremost Authority.

arcane area. Rather, in the context of summary judgment, the district judge will decide the legal standards which control this case and utilize those expert opinions which are applicable in light of that determination. Similarly, the jury will be instructed on the law by Judge Greer, and will utilize the expert opinions whose factual underpinnings comport with his instructions.

SO ORDERED:

_____s/ Dennis H. Inman_____
United States Magistrate Judge