IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE SOUTHEASTERN MILK ANTITRUST LITIGATION | ) ) ) ) | Master File No. 2:08-MD-1000 |
| THIS DOCUMENT RELATES TO: | ) ) ) | Judge J. Ronnie Greer Magistrate Judge Dennis H. Inman |
| *Sweetwater Valley Farm, Inc., et al. v. Dean Foods, et al.*, No. 2:07-CV-208 | ) ) ) ) |  |

**DAIRY FARMER PLAINTIFFS' EMERGENCY MOTION TO RECTIFY
DEFENDANTS' MISLEADING, UNSEALED FILING THAT PREJUDICES
THE COURT'S CERTIFIED CLASS AND FOR SANCTIONS**

Three days ago, on Friday April 1, Defendants and their Counsel moved to decertify the class. The motion was not filed under seal (as they have sought the Court to require of virtually all filings in this case) and it contains misleading information and reflects conduct that appears to be prohibited by the ethical rules governing our profession and by case law. That information and conduct appears clearly designed to solicit class members to opt out of the class. Defendants' and their Counsels' actions warrant monetary and remedial sanctions, including unsealing the summary judgment record, and putting those materials on Plaintiffs' class action website. Simply put, Defendants cannot have it both ways. They cannot be permitted to place their misleading arguments on the public record while at the same time denying class members access to the facts because of the Protective Order. The Protective Order should not be used as both a sword and a shield to the prejudice of class members. Having placed their arguments on the record, the time has come to shed light on Defendants' unlawful activities.

*First*, Defendants' motion for decertification is a thinly disguised, misleading and coercive solicitation of class members to opt out of the class. Defendants asked the Court to inject two arguments into the class notice – that any judgment against the cooperatives ultimately must be paid by the cooperative's class members, and that the requested injunctive relief would harm class members – and this Court previously recognized these very points as "coercive" and "a blatant attempt on the part of DFA and SMA to encourage their members to opt out of the litigation." (01/19/11 Order, Dkt. 1255, at 6.) As Plaintiffs' counsel argued a number of times, these claims by Defendants are false: DFA has over $1 billion dollars in assets that it keeps from its members[1] and at least part of the injunctive relief, which of course would be subject to this Court's review and implementation in any event, has already been initiated by Dean's cancellation of DFA full supply agreements. By filing these arguments on the public record, which Defendants previously acknowledged "would almost assuredly have the same effect as the Defendants actually communicating their message directly to the putative class members" (05/21/09 Motion to Seal Proposed Settlement Offers, Dkt. 311, at 1), Defendants are trying to poison the class that will soon be in receipt of the Court's notice.

*Second*, in an equally blatant and brazen flouting of this Court's Order, as well as the Tennessee Rules of Professional Conduct, Defendants appear to have engaged in professional misconduct by contacting represented class members (Class Counsel's clients) about the merits of this case. In its class notice Order, the Court specifically rejected Defendants' request to exclude members of DFA's regional councils from the class. Defendants' counsel nevertheless

---

[1] This information was discussed in open Court at the November 9, 2010, hearing on class notice. Counsel for Plaintiffs put Plaintiff's Exhibit 1965 on the Court's ELMO and read pages 63-66 from the deposition transcript of DFA's Senior Vice President for Accounting, Joel Clark. The transcript for the November 9 hearing is not yet available. (*See also* Expert Report of Carl Herbein, at 8 (listing over $2 billion in DFA assets).)

contacted at least two members of DFA's Southeast Area Council, David Hutsell, and Nathan Roth, as well as another class member, Will Gilmer, about providing affidavits for Defendants' pending motion for decertification. Defendants' Counsel's actions appear to violate the Tennessee Rule of Professional Conduct 4.2 forbidding contact with a party that Counsel knows to be represented.

## I. Defendants' Misleading and Coercive Filing on the Public Record Interfers with the Court's Class Notice Ruling and Procedure

### A. The Court has the Authority and the Duty to Remedy Misleading or Coercive Statements to Class Members

Courts have the authority, and the duty, to strictly monitor the class certification process, and the Federal Rules of Civil Procedure grant the Court great authority to fashion a remedy for abuse of the process. *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981); *Manual for Complex Litigation* § 21.12 (4th ed. 2004). The Court's vigilance is particularly important during the class notice phase, because the initial class notice "has the critical function of apprising class members of 'accurate and impartial information regarding the status, purposes and effects of the class action,'" and to "protect against a misleading or one sided presentation of the facts." (01/19/11 Order, Dkt. 1255, at 2 (quoting *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985)). In other words, "[i]t is the duty of the Court to insure that individual decisions to opt out are independent and free from coercion." (01/19/11 Order, Dkt. 1255, at 5.) Thus, the Court has the authority and the duty to remedy any misleading or coercive statements made to the class members, such as those in Defendants' motion for decertification. *Kleiner*, 751 F.2d at 1202-03.

### B. Defendants' Motion Is A Misleading and Coercive Solicitation for Class Members to Opt Out

During class notice briefing, Defendants asked that the Court "inform" the class members that "if this action is successful, not only will those farmers recover as plaintiffs, but they may also have to pay the judgment as defendants" (10/01/10 Opp. to Pltf's Mot. to Approve Class Notice Plan, Dkt. 1044, at 2), and that, "were Plaintiffs successful in obtaining any of the injunctive relief pursued in their Complaint, dairy farmer class members of DFA and SMA could be negatively impacted by the results" (*Id.* at 12). The Court emphatically rejected Defendants' request for such an "extraordinary communication" as "inappropriate," "a blatant attempt on the part of DFA and SMA to encourage their members to opt out of the litigation," and "run[ning] afoul of the clear directives to this Court that it should ensure a class notice with impartial information, free of misleading and coercive statements." (01/19/11 Order, Dkt. 1255, at 4-7.)

Undaunted, Defendants took another route to get their arguments to the class members by filing the pending motion for decertification. Defendants repeat and expand those same arguments on the pubic record (to the class) that the Court chastised them for making barely two months ago.[2] Defendants knew that their motion would reach their true target audience: class members who will soon be deciding whether to participate in the suit or to opt out of the class. In a similar situation, Defendants acknowledged that:

> [G]iven the media coverage of this case in the Southeastern United States, and particularly in publications attentive to matters affecting the dairy industry, filing an unsealed Notice of Proposed Communication with Putative Class Members, which Notice would contain the actual communication proposed by the Defendants, ***would almost assuredly have the same effect as the Defendants actually communicating their message directly to the putative class members***.

---

[2] In *Brown v. Colegio de Abogados de Puerto Rico*, the district court found defendants in contempt, in part, for indirectly providing class members with an opt out form that the Court had specifically held defendants could not provide directly. 2011 WL 497952, at *3-4 (D. P.R. Feb. 9, 2011).

(05/21/09 Defs' Motion to Seal Proposed Settlement Offers, Dkt. 311, at 1.)[3] The Court should remedy such misleading and coercive solicitations to opt out. *Manual for Complex Litigation* § 21.33 (4d ed. 2004); *see also Kleiner*, 751 F.2d at 1209-10 (sanctioning party and counsel with knowledge of conduct for improperly soliciting opt outs); *United Mine Workers of Am. Welfare & Retirement Fund of 1950 v. Huge*, 517 F.2d 1275, 1291 n.83 (D.C. Cir. 1975) (noting that misleading or coercive communications are prohibited whether direct or indirect); *Brown v. Colegio de Abogados de Puerto Rico*, 2011 WL 497951, at *3-4.

Defendants' brief and accompanying affidavits are also misleading because they suggest, falsely, that the affiants are representative of farmers who are DFA members. Indeed, their brief begins with the noble sounding, "Plaintiffs claim they speak for DFA's farmer members and represent their interests. The Court should understand that those farmers have a very different view." In fact, of those eight "farmers" who supplied affidavits, one is the Chairman of DFA's Southeast Area Council, one serves on DFA's Southeast Area Council, and five are DFA board members.[4] Thus, despite Defendants' lofty rhetoric, its farmers mostly consist of DFA management regurgitating class certification arguments that this Court and the Sixth Circuit have already considered and rejected.

Moreover, it has been the DFA officers and directors who have been, at best, incapable of protecting the members' interest, or, at worst, reaping exorbitant salaries, bonuses, and profits for

---

[3] Defendants previously fought to keep any mention of the full-supply agreements, or their terms, out of the public record. Now, with the opt-out period just beginning, Defendants are happy to discuss in great detail, their one sided view of their full supply agreements, as well as place on the public record significant details about the business of each diary farmer from whom Defendants solicited affidavits. Defendants have previously opposed, vigorously and excessively, placing any of this information on the public record.

[4] Although neither Defendants nor Gerald Heatwole disclose that fact, Heatwole is also a DFA board member. *See* DFA Board of Directors, http://www.dfamilk.com/our-cooperative/leadership/board-of-directors, (Apr. 4, 2011).

themselves and their co-conspirators at the class members' expense: "former and current board members may have participated in the very decisions that are at issue here." (01/19/11 Order, Dkt. 1255, at 12 n.5.) For example, former DFA board members or Southeast Area Council members were directly involved in the following payments:

- Hanman made $31,600,000 in the nine years he ran DFA;

- A DFA joint venture paid Bos $1,000,000 in special "bonuses" requested by Hanman and approved by Pete Schenkel;

- Former Board member, SEAC member, and SMA President Buckey Jones received $185,000 in improper payments; and

- Sonia Fabian, former DFA COO, received $257,000 bonus from Defendant Baird's company VFC.

Defendants argue that "DFA members would be seriously harmed … if DFA were forced … to stop making investments in bottling plants …." (Defs' Br., at 1 (quoting Roth Decl. ¶ 11).) Defendants' argument should be balanced by the fact that DFA joint ventures have been used to enrich Defendants' insiders by tens of millions of dollars:

- Allen Meyer made three short-term investments in DFA bottling joint ventures and made $77,000,000;

- Tracy Noll's three year investment in DFA bottling joint ventures paid him over $26,000,000;

- Both Meyer and Noll helped Hanman funnel a $1,000,000 payment to Herman Brubaker;

- Clete Beshear's three year investment in a DFA joint venture paid him $80,000,000;

- Robert Allen's two year investment in a DFA joint venture paid him $22,000,000; and

- Pete Schenkel earned, on a two-year investment of $6.9 million, a return of $100,000,000.

When presented with this information, the fact that DFA board members and other insiders want to continue investing in joint ventures likely takes on a very different meaning to a DFA class member deciding whether to opt out. Indeed, as Defendants recently argued, DFA's current board members – over half of the affiants for DFA's current motion – "set the policies of DFA and SMA at issue in this litigation," (10/01/10 Defs' Opp. to Class Notice Plan, Dkt. 1044, at 21), and are responsible for formulating the litigation strategy *against the DFA class members.* (01/19/11 Order, Dkt. 1255, at 14.) For Defendants to present these four individuals, and other DFA policymakers, as "farmers [who] have come forward to express their views because they do not wish to see themselves or their fellow DFA members injured by relief that … would be injurious to DFA and its members" (Mot. at 12-13), defies credulity.

## II. Defendants' Counsel Appear to have Violated this Court's Rules of Professional Conduct by Contacting a Represented Party About the Subject of this Litigation

Defendants' counsel appear to have violated this Court's Rules of Professional Conduct. In its Order regarding class notice, the Court stated that "the rules governing communications apply as though each class member is a client of the class counsel," and appointed Robert Abrams as class counsel. (01/19/11 Order, Dkt. 1255, at 14, 22.) Defendants have acknowledged that, once the class is certified, neither they nor their counsel can discuss the litigation with class members: "Defendants' attorneys, and defendants acting in collaboration with their attorneys, may only communicate through class counsel with class members on matters regarding the litigation." (10/01/10 Defs' Opp. to Class Notice Plan, Dkt. 1044, at 21 (quoting *Manual for Complex Litigation* §21.33 (4th ed. 2004).)

Defendants asked the Court to exclude certain members of DFA's leadership from the class definition, including "farmers who serve on the Boards and Councils (at the national,

regional, and local levels)." (10/01/10 Defs' Opp. to Class Notice Plan, Dkt. 1044, at 20.) The Court specifically rejected Defendants' request: "no good reason appears why … members of DFA's southeast area council should be excluded from the class." (01/19/11 Order, Dkt. 1255, Dkt. 1255, at 15.)

Despite the Court's clear ruling that Defendants' counsel must treat class members as represented parties, and Defendants' previous recognition of that rule, Defendants' counsel solicited three class members, David Hutsell, and Nathan Roth, whose only connection to DFA management is to serve on the Southeast Area Council, to provide affidavits for their motion. (Def. Br., at Exs 6, 7, & 9.) Moreover, Defendants also contacted a DFA class member, Will Gillmer, who has no connection to DFA management, and asked him to provide an affidavit as well.

Defendants' counsel's contacts with Hutsell, Roth, and Gillmer violated the Court's Rules of Professional Conduct. Rule 4.2 prohibits a lawyer from contacting a represented party about the case without permission from that party's counsel:

> **RULE 4.2: COMMUNICATION WITH A PERSON REPRESENTED BY COUNSEL**
>
> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Tenn. R. Professional Conduct 4.2 (2011). Courts routinely hold that, after certification, any communication with a class member violates the Model Code of Professional Responsibility Rule 7-104, and the Model Rules of Professional Conduct 4.2, on which Tennessee Rule 4.2 is based. Model Rules of Professional Conduct 4.2 (2006) (prohibiting contact with a represented party regarding the subject matter of the representation absent consent of the other attorney);

Model Code of Professional Responsibility, DR 7-104 (1980) (prohibiting contact with a represented person regarding the subject matter of the representation).[5]

In a recent filing before the Sixth Circuit, Defendants claimed they submitted to that court affidavits from non-class members "to avoid any debate about whether Defendants were improperly communicating with actual class members following the certification ruling." (Ex. A, Defs' Supplemental Petition, at 9n.4) There is no debate now. *First*, courts recognize that, after certification under Rule 23, class members must be treated as represented parties.[6] *Second*, this Court informed Defendants that class members must be treated as represented parties in its Order on class notice: "the rules governing communications apply as though each class member is a client of the class counsel." (01/19/11 Order, Dkt. 1255, at 14, 22.) Defendants' counsel ignored this Court's Order.

### III. Conclusion

Defendants' and their counsels' actions warrant monetary and remedial sanctions, including unsealing the summary judgment record and putting those materials on Plaintiffs' class

---

[5] *Accord*, *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1206–1207 holding that Model Rule of Professional Conduct 4.2 prohibits defense counsel from discussing the litigation with class members as of the date of class certification); *Montgomery v. Aetna Plywood, Inc.*, 1996 WL 189347 (N.D. Ill. 1996), at *3 ("Once a class action has been certified … ethical prohibitions against counsel for one party directly communicating with the other party are in force.").

[6] See Manual for Complex Litigation 4th § (2004) (Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel"); *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978) ("A certification under Rule 23(c) makes the class the attorney's client for all practical purposes."); Impervious *Paint Industries, Inc. v. Ashland Oil*, 508 F. Supp. 720, 723 (W.D. Ky. 1981) (after certification but prior to expiration of the opt-out period, "defendants' counsel must treat plaintiff class members as represented by counsel, and must conduct themselves in accordance with both sections of DR 7-104.").

action website, and ordering a corrective mailing (paid for by Defendants) to be included within the class notice.

Dated: April 4, 2011

Respectfully submitted,

/s/Robert G. Abrams

| | |
|---|---|
| Thomas C. Jessee, Esq. | Robert G. Abrams, Esq. |
| 412 East Unaka Ave. | Robert J. Brookhiser, Esq. |
| Johnson City, TN 37601 | Gregory J. Commins, Jr., Esq. |
| jjlaw@jesseeandjessee.com | Terry L. Sullivan, Esq. |
| *Liaison Counsel for Dairy Farmer Class* | Baker & Hostetler LLP |
| | 1050 Connecticut Ave., NW, Suite 1100 |
| | Washington, DC 20036 |
| | rabrams@bakerlaw.com |
| | rbrookhiser@bakerlaw.com |
| | gcommins@bakerlaw.com |
| | tsullivan@bakerlaw.com |
| | *Lead Counsel for Dairy Farmer Class* |

## CERTIFICATE OF SERVICE

      I certify that on the 4th day of April, 2011, a true and correct copy of ***Dairy Farmer Plaintiffs' Emergency Motion to Rectify Defendants' Misleading, Unsealed Filing that Prejudices the Court's Certified Class and for Sanctions*** was served by operation of the electronic filing system of the U.S. District Court for the Eastern District of Tennessee upon all counsel who have consented to receive notice of filings in the matters styled *In re Southeastern Milk Antitrust Litigation*, MDL No. 1899.

                                          /s/ William T. DeVinney
                                              William T. DeVinney