**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE SOUTHEASTERN MILK ANTITRUST LITIGATION** | ) | **Master File No. 2:08-MD-1000** |
| **THIS DOCUMENT RELATES TO:** | ) | **Judge J. Ronnie Greer** |
| ***Sweetwater Valley Farm, Inc., et al. v. Dean Foods, et al.*, No. 2:07-CV-208** | ) | |

**DAIRY FARMER PLAINTIFFS' EXPEDITED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DEAN FOODS COMPANY**

Dairy Farmer Plaintiffs request that the Court grant preliminary approval under Federal Rule of Civil Procedure 23(e) of the proposed settlement agreement ("Settlement Agreement") reached between Plaintiffs and Defendant Dean Foods Company ("Dean"). The terms of the agreement are memorialized in the Settlement Agreement, which is attached as Exhibit A to the accompanying memorandum in support of Plaintiffs' motion. Plaintiffs also request that the Court approve the proposed form of the Notice of Proposed Settlement ("Notice") to be sent by U.S. Mail to the Class Members and the proposed Summary Notice of Proposed Settlement ("Summary Notice") to be published to the Class Members. The proposed Notice and Summary Notice are attached as Exhibits B and Exhibit C, respectively, to the accompanying memorandum in support of Plaintiffs' motion.

Plaintiffs move for preliminary approval of the Settlement Agreement because, as required by Federal Rule of Civil Procedure 23(e), the settlement is fair, reasonable, and adequate to the Class

Members. Therefore, pursuant to Paragraph 2.1 of the Settlement Agreement, Plaintiffs move for entry of a Preliminary Approval Order providing that, inter alia:

1. the Settlement is preliminarily approved and is sufficiently fair, reasonable and adequate to authorize dissemination of notice of the settlement to the Class Members;

2. the form and content of the Notice and Summary Notice are approved;

3. the proposed dissemination of the Notice and Summary Notice constitutes the best notice practicable under the circumstances, is due and sufficient notice and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States;

4. no additional opt-out period is warranted or required by Rule 23(e)(4) of the Federal Rules of Civil Procedure;

5. any person who timely requested exclusion from the Class may apply to the Court to be reinstated to the Class by setting forth the reasons for seeking reinstatement in a document filed through the Court's ECF system at least fourteen (14) days prior to the Fairness Hearing;

6. any Class Member who objects to the settlement must do so in writing no less than fourteen (14) days prior to the Fairness Hearing;

7. any Class Member who wishes to be eligible for a payment as a result of the Settlement shall file a claim form provided with the Notice no less than fourteen (14) days prior to the Fairness Hearing;

8. Class Counsel shall file with the Court, and serve upon counsel of record, the necessary papers to show compliance with the Notice Plan and the Court's Order as well as any other materials Class Counsel wishes the Court to consider at least seven (7) days prior to the Fairness Hearing;

9. any Class Member who seeks to appear and be heard at the Fairness Hearing shall provide notice to the Clerk of the Court and to Counsel of record at least fourteen (14) business days prior to the Fairness Hearing;

10. the Fairness Hearing concerning the proposed settlement will occur on [**date**] at [**time**] at [**location**];

11. all claims against Dean are severed and all proceedings against Dean except those proceedings provided for or required by the Settlement Agreement are stayed;

12. the Settlement Fund as set forth in the Settlement Agreement is a "Qualified Settlement

Fund" pursuant to Treas. Reg. §1.468B-1, and Class Counsel and their designees are authorized to use up to $50,000 of the Settlement Fund to give notice of the Settlement to Class Members and for settlement administration costs, up to $10,000 of the Settlement Fund for escrow agent costs, and such amount of the Settlement Fund as is required to pay taxes on income earned on the Settlement Fund, with prior notice to Defendants;

13. Rust Consulting, Inc. is appointed as Claims Administrator for purposes of notice and administration of the settlement with Dean, and JPMorgan Chase Bank, National Association shall serve as the escrow agent in connection with the Settlement Fund described in Paragraph 7.1 of the Settlement Agreement, and

14. Plaintiffs and members of the Class are preliminarily enjoined from the initiation, commencement or prosecution of any Released Claim by any of the Releasing Parties.

In light of upcoming pretrial and trial deadlines, Plaintiffs request that this motion be decided on an expedited basis.

Dated: July 12, 2011

Respectfully submitted,

/s/Robert G. Abrams

Robert G. Abrams, Esq.
Robert J. Brookhiser, Esq.
Gregory J. Commins, Jr., Esq.
Terry L. Sullivan, Esq.
Baker & Hostetler LLP
1050 Connecticut Ave., NW, Suite 1100
Washington, DC 20036
rabrams@bakerlaw.com
rbrookhiser@bakerlaw.com
gcommins@bakerlaw.com
tsullivan@bakerlaw.com
*Lead Counsel for Dairy Farmer Class*

Thomas C. Jessee, Esq.
Jessee & Jessee
412 East Unaka Ave.
Johnson City, TN 37601
jjlaw@jesseeandjessee.com
*Liaison Counsel for Dairy Farmer Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**GREENEVILLE DIVISION**

| | |
|---|---|
| **IN RE SOUTHEASTERN MILK ANTITRUST LITIGATION** ) | **Master File No. 2:08-MD-1000** |
| **THIS DOCUMENT RELATES TO:** ) | **Judge J. Ronnie Greer** |
| ***Sweetwater Valley Farm, Inc., et al. v. Dean Foods, et al.,* No. 2:07-CV-208** ) | |

**MEMORANDUM IN SUPPORT OF DAIRY FARMER PLAINTIFFS' EXPEDITED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEAN FOODS COMPANY**

Pursuant to Federal Rule of Civil Procedure 23, Dairy Farmer Plaintiffs respectfully request that the Court grant preliminary approval of the proposed settlement between Plaintiffs and Dean Foods Company ("Dean"). The Settlement Agreement, attached as Exhibit A, would provide an excellent result for Southeast dairy farmers and should receive the Court's preliminary approval so that the Class Members have an opportunity to evaluate the Agreement.

## I. INTRODUCTION

After four years of hard-fought litigation, years of mediation, and arm's-length negotiations occurring over several months, Plaintiffs and Dean have reached a proposed settlement to resolve all of the Class Members' claims against Dean in this litigation. In exchange for release of those claims, Dean will make settlement payments totaling up to one hundred forty million dollars ($140,000,000) over the next four years.[1]

This substantial settlement represents a fair and reasonable resolution of Class Members' claims and warrants the Court's preliminary approval so that it may be presented to the Class. The Court's preliminary approval does not constitute final approval of the Settlement Agreement, but merely authorizes Class Counsel to present the offer to the Class and begins the process for evaluation by the Class and the Court for final approval. *See* Fed. R. Evid. 23(e); *Manual for Complex Litigation* (MCL 4th), § 21.633 (4th ed. 2004). Thus, Plaintiffs move for entry of a Preliminary Approval Order providing that, *inter alia*:

1. the settlement is preliminarily approved and is sufficiently fair, reasonable and adequate to authorize dissemination of notice of the settlement to the Class Members;

---

1 The Settlement Agreement provides that Dean will make an initial payment of $60,000,000 within five business day of the Court's entry of preliminary approval of the settlement offer and subsequently will pay $20,000,000 within five business days of each of the first, second, third, and fourth anniversaries of entry of the Judgment dismissing the Action.

2. the form and content of the Notice of Proposed Settlement ("Notice") and Summary Notice of Proposed Settlement ("Summary Notice") are approved;

3. the Notice and Summary Notice constitute the best notice practicable under the circumstances, are due and sufficient notice and comply fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States;

4. no additional opt-out period is warranted or required by Rule 23(e)(4) of the Federal Rules of Civil Procedure;

5. any person who timely requested exclusion from the Class may apply to the Court to be reinstated to the Class by setting forth the reasons for seeking reinstatement in a document filed through the Court's ECF system at least fourteen (14) days prior to the Fairness Hearing;

6. any Class Member who objects to the settlement must do so in writing no less than fourteen (14) days prior to the Fairness Hearing;

7. any Class Member who wishes to be eligible for a payment as a result of the Settlement shall file a claim no less than fourteen (14) days prior to the Fairness Hearing;

8. Class Counsel shall file with the Court, and serve upon counsel of record, the necessary papers to show compliance with the Notice Plan and the Court's Order as well as any other materials Class Counsel wishes the Court to consider at least seven (7) days prior to the Fairness Hearing;

9. any Class Member who seeks to appear and be heard at the Fairness Hearing shall provide notice to the Clerk of the Court and to Counsel of record at least fourteen (14) business days prior to the Fairness Hearing;

10. the Fairness Hearing concerning the proposed settlement will occur on [**date**] at [**time**] at [**location**];

11. all claims against Dean are severed and all proceedings against Dean except those proceedings provided for or required by the Settlement Agreement are stayed;

12. the Settlement Fund as set forth in the Settlement Agreement is a "Qualified Settlement Fund" pursuant to Treas. Reg. §1.468B-1, and Class Counsel and their designees are authorized to use up to $50,000 of the Settlement Fund to give notice of the Settlement to Class Members and for settlement administration costs, up to $10,000 of the Settlement Fund for escrow agent costs, and such amount of the Settlement Fund as is required to pay taxes on income earned on the Settlement Fund, with prior notice to Defendants;

13. Rust Consulting, Inc. is appointed as Claims Administrator for purposes of notice and

administration of the settlement with Dean, and and JPMorgan Chase Bank, National Association shall serve as the escrow agent in in connection with the Settlement Fund described in Paragraph 7.1 of the Settlement Agreement; and

14. Plaintiffs and members of the Class are preliminarily enjoined from the initiation, commencement or prosecution of any Released Claim by any of the Releasing Parties.

## II. BACKGROUND

### A. Description of the Litigation

Plaintiffs brought a class action alleging that Defendants, including Dean, unlawfully conspired and refused to compete for the purchase of raw Grade A milk produced, marketed, and processed in the Southeast, restricted farmers' access to raw Grade A milk bottling plants in the Southeast, eliminated and stifled competition from cooperatives and Grade A milk bottlers; monopsonized and monopolized raw Grade A milk and milk marketing services in the Southeast, and engaged in other unlawful activities designed to artificially and anti-competitively fix, stabilize, and depress the prices paid for raw Grade A milk purchased from Plaintiffs. Plaintiffs contend that Defendants' actions violated Sections 1 and 2 of the Sherman Act. *See* 15 U.S.C. §§ 1 & 2. Defendants – including Dean – deny that they violated the Sherman Act as alleged by Plaintiffs.

The initial complaints in this matter were filed on July 5, 2007. Since then, the parties engaged in approximately four years of intensive litigation. Voluminous written discovery requests were served on the parties and third parties. Millions of pages of documents were produced and reviewed. More than 150 depositions were taken by the parties. Dozens of motions to compel and other similar discovery disputes were litigated before the Magistrate Judge and the Court.

Class certification was equally hard fought. Plaintiffs moved for class certification on May 1, 2009 supported by a lengthy, fact-extensive memorandum and the opinions of three experts. Defendants opposed class certification with exhaustive briefing and expert opinion. Following the Court's

certification of the class on September 7, 2010, the parties litigated virtually all aspects of the content and form of class notice. In addition, Defendants have twice moved to decertify the class, and asked the Sixth Circuit to take an interlocutory appeal of the class certification order.

The intensity of litigation has increased as the trial approaches. Defendants filed six summary judgment motions supported by extensive statements of fact. Plaintiffs opposed each motion with equally extensive briefs and statements of fact. The parties subsequently filed eight wide-ranging *Daubert* motions, and four additional objections to the Magistrate's rulings on those motions. The parties prepared and exchanged trial exhibits lists (totaling more than 5,000 exhibits) and deposition designations (covering more than 100 depositions). More recently, nearly 70 motions *in limine* were submitted to the Court, and two days of oral arguments heard on certain motions. In short, the parties have vigorously contested every aspect of this litigation for four years as reflected by the nearly 1,600 entries on the Court's docket.

**B. The Proposed Settlement**

Plaintiffs and Dean have agreed that Dean will pay up to $140,000,000 over approximately four years.[1] (*See* Ex. A, Settlement Agreement ¶ 7.1.) Dean will make an initial payment of $60,000,000 into an escrow account within five business day of the date of this Court's preliminary approval order, and then will pay up to $20,000,000 each year for four years within five business days of the anniversary of the Court's final approval of the settlement and entry of judgment and dismissal of all claims as to Dean.

1 The Settlement Agreement provides that the $140,000,000 settlement amount shall be reduced *pro rata* for those Class Members who timely and validly requested exclusion from the Class as of the Exclusion Date or such other deadline as the Court may set for opting out. The reduction with respect to each timely and valid Class Member opt-out will be based on the percentage of that opt-out's Class sales relative to total Class sales; provided however that such reduction shall not apply if the opt-out is permitted to opt back in by Order of the Court. (*See* Ex. A, Settlement Agreement ¶ 9.1.)

(*See id*.) These deferred payments are supported by a line of credit (*See id*.)

In return, Class Members will release Dean from any and all claims that were or could have been asserted arising out of or relating in any way to any conduct alleged in this case. (*See id.* ¶¶ 6.1 & 6.2.) The Settlement Agreement, however, does not release any Class Member's claim against the remaining Defendants in this case, nor does it release the claims of Class Members who timely and validly requested exclusion from the Class as of June 17, 2011, unless they are allowed to opt back in by order of the Court. (*See id.* ¶¶ 1.2 & 9.2.)

In order to resolve the greatest number of potential claims, the Settlement Agreement permits Class Members who previously opted out of the Class to apply to the Court for reinstatement to the Class. (*See id.* ¶¶ 4.3 & 9.1.) Because the initial opt out period expired less than a month ago, the Settlement Agreement does not provide a second opt-out period for Class Members.

The Settlement Agreement provides this Court jurisdiction over the implementation, enforcement, and performance of the Settlement. (*See id.* ¶ 13.2.) As reflected in the proposed Notice (*see* Ex. B), Plaintiffs propose that Settlement proceeds be distributed proportionally among Class Members who file claims.

## III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE SETTLEMENT AGREEMENT

### A. Legal Standard for Granting Preliminary Approval

"Being a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys. Inc., Accufix A Trial "J" Leads Prods. Liability Litig.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001). This is particularly true in large, complex cases, and "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216,

1224 (6th Cir. 1981); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.").

The Court's preliminary approval "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted). In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that Class Members should be given notice of the settlement. *See* MCL 4th § 13.14, at 173. ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing."). The Court should also ensure that the Settlement Agreement is the product of arm's-length negotiation between counsel, and not subject to any collusion or undue influence by the Named Plaintiffs.

In evaluating the fairness of the settlement for final approval, the range of fairness is determined by "[s]everal factors [which] guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. General Motors Corp.*, 497 F. 3d 615, 631 (6th Cir. 2007). When assessing the parties' legal dispute, the Court should "not … decide whether one side is right or even whether one side has the better of these arguments.... The question rather is whether the parties are using settlement to resolve a legitimate legal and factual legal dispute."

*Id.* at 632.

Based on these factors, the settlement falls well within the range of fairness warranting preliminary approval, and the long history of litigation belies any suggestion of collusion or undue influence to settle.

**B. The Proposed Settlement Should Be Preliminarily Approved So That Class Members Can Decide Whether to Accept It**

**1. The Settlement Agreement Resulted from Vigorous, Arm's Length Negotiations Between Experienced, Capable Counsel**

Vigorous arm's-length negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e), and settlements resulting from such negotiations are entitled to deference from the Court. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 375 (S.D. Ohio 2006) ("The Court gives significant weight to the belief of experienced counsel that the settlement is in the best interest of the class … [where] the settlement was non-collusive and [was] reached through arms-length negotiation."). Such deference is especially appropriate after the parties have engaged in lengthy and thorough fact-finding through extensive discovery. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 73 (D. Mass. 2005).

The settlement agreement here was reached after the completion of extended, extensive discovery conducted by able counsel for both parties. The Class was represented by counsel with extensive experience both prosecuting and defending complex antitrust class actions, who had gained a deep understanding of the facts and legal issues of the case during the four years of litigation. Defendants were similarly represented by talented and knowledgeable counsel with significant experience defending complex cases. These facts weigh in favor of preliminary approval. *See, e.g.*, *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 526 (finding that extensive discovery conducted by counsel

weighed in favor of approving settlement).

Moreover, the proposed settlement resulted from intensive, arm's-length negotiations. This settlement arose only after extended negotiations and within a mediation process that has been ongoing for several years. The parties' mediation was aided and closely monitored by mediator W.J. Michael Cody. Nothing in the course of the negotiations or in the substance of the proposed settlement presents any reason to doubt its fairness. This also weighs in favor of preliminary approval. *See id*. at 530 (fact that settlement arose after the "Plaintiff … and Defendants [engaged] in a mediation process that consumed almost one year" supported approval).

### 2. The Proposed Settlement Is Within the Range of Possible Approval By the Court as Fair, Reasonable, and Adequate

In deciding whether to grant preliminary approval, the Court must decide whether the settlement falls into the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to Class Members and a hearing scheduled to consider final settlement approval. *See* MCL 4th § 13.14; *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 530. "The determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather, in any case, there is a range of reasonableness with respect to a settlement." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 373.

A recovery of up to $140,000,000 million from Dean would be an excellent result for the Class. As an initial matter, it constitutes a substantial amount in absolute terms, even for an antitrust litigation. *See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. at 64 (approving $75 million settlement as a significant recovery for Plaintiffs). That figure also represents a significant percentage of the damages claimed by Plaintiffs against all Defendants. Dr. Gordon Rausser opined that the Class has sustained

approximately $600 million in damages, so the settlement against Dean would allow Class Members to recover approximately 25% of the total amount of damages claimed on behalf of the Class.[2] Such a recovery is well within the range approved by other courts. *See id*. (noting that settlements obtaining 26% recovery are reasonable); *Menkes v. Stolt-Nielsen S.A.*, 2010 U.S. Dist. LEXIS 94184, at *63-66 (D. Conn. Sept. 10, 2010) (preliminarily approving settlement that represented approximately eight percent of the maximum recoverable damages for all class members). Indeed, even if the settlement were a smaller percentage of total damages, "courts have determined that a settlement can be approved even if the benefits amount to a small percentage of the recovery sought . . . And, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Lazy Oil, Co. v. Witco Corp*., 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (internal quotation omitted). Moreover, the settlement against Dean allows Class Members further recovery against other Defendants.

In any case, at this point the Court need not answer the ultimate question of whether the Settlement is fair, reasonable and adequate. The Court is only being asked to permit notice of the terms of the settlement to be sent to the Class Members, and to schedule a hearing, pursuant to Federal Rule of Civil Procedure 23(e), to consider any views expressed by Class Members, the fairness of the settlement, the plan of allocation, and Class Counsel's request for an award of fees and expenses. *See* 5 James Wm. Moore, *Moore's Federal Practice* 23.85 [3], at 23-353 to 23-354 (3d ed. 1999). It would be difficult to imagine that Class Members should not be informed of a potential $140,000,000 settlement.

---

[2] In evaluating the settlement in terms of the overall claimed damages in an antitrust suit, it is not necessary for the Court to consider the possibility of treble damages. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 955 (9th Cir. 2009).

### 3. The Settlement Is Particularly Beneficial Given the Expense, Uncertainty, and Risks of Taking the Case to Trial

The settlement is particularly favorable to the Class Members given the risks of taking antitrust cases to trial. Without entering into a settlement, "[t]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 523. Antitrust cases are notoriuosly difficult to prosecute: "[s]uffice it to say, courts have found that antitrust actions generally present complex, novel issues, and that plaintiffs can rarely guarantee recovery at trial." *Columbus Drywall and Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 523 (noting risks inherent in taking an antitrust case to trial); *In re Relafen Antitrust Litig.*, 231 F.R.D. at 73 (same). Indeed, antitrust litigation necessarily involves complicated economic issues that, at "trial would undoubtedly become a battle of the experts, with esoteric economic principles applied to" a complex market. *Id.* Due to that complexity, "[a]cceptance of expert testimony is always far from certain, no matter how qualified the expert." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. at 373.

This case would be no less complex or risky to try. Only last month the Court expressed concern that Plaintiffs may have difficulty proving the relevant geographic market, and the Court's determination that Defendants' alleged acts are not per se unlawful may put Plaintiffs to the burden of proving a rule of reason case. Against this background, the proposed settlement should be presented to the Class Members for their evaluation. In addition, even if Plaintiffs were to prevail against Dean at trial, Class Members could wait years for the parties to exhaust their appeals. *See Leonhardt v. Arvinmeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008) (noting that benefits of settlement in complex litigation include avoiding the delay and uncertainty of any appeals). The settlement, however, provides more immediate


Case 2:08-md-01000-JRG Document 1603 Filed 07/12/11 Page 14 of 20 PageID #: 37527

relief.

Thus, the inherent risks in taking an antitrust case to trial against Dean, as well as the delay caused by the inevitable subsequent appeal, strongly favor approval of the settlement. Although Plaintiffs are confident about their case, "[e]xperience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 523. In light of those risks, the settlement is well within the range of being fair, reasonable and adequate and should be preliminarily approved.

**IV. THE PROPOSED NOTICES SHOULD BE APPROVED BY THE COURT**

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B); *see* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* ("*Newberg*") § 8.2.

The content of the proposed Notices satisfies Rule 23, which requires that settlement notices "'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *UAW*, 497 F.3d at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975) (internal quotation marks omitted)). The proposed Notices accordingly inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms and effects upon Class Members, (3) that complete information is available from the court files, and (4) that any Class Member may appear and be heard at the Fairness Hearing. *See, e.g., In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (upholding notice that "described the terms of the settlement, the

reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections"); *see also Newberg* § 11.53 at 162-65 (explaining requirements of class settlement notices, and collecting authorities).

Plaintiffs also propose that the Notices be provided to the Class Members in a manner similar to the Court-approved dissemination of notice of class certification. The Notice will be sent by U.S. Mail to 7,388 addresses of potential class members that Plaintiffs identified in Defendant and third-party records obtained during discovery, plus any potential class members identified since that mailing. This dissemination of the Notice by U.S. Mail satisfies Rule 23, as the Court previously recognized. (*See* 1/19/11 Order at 20, Dkt No. 1255 (explaining that "notice to class members whose addresses are known by United States mail is the "best notice practicable," *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174-77 (1974), and defendants have not suggested any alternative method of notice.").) In addition, the Summary Notice will be published following preliminary approval in the first available issue of *Hoard's Dairyman*, a dairy farm trade magazine with a circulation of more than 68,000.[2] This dissemination of notice by publication satisfies Rule 23 because, as the Court's Order on notice recognized, supplemental notice in "publications widely disseminated to dairy farmers is the 'best notice practicable' apparent under the circumstances of this case." (1/19/11 Order at 20, Dkt No. 1255) (citing *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 536 (3d Cir. 2004).) With the Court's permission, the Notices – as well as this motion – would also be posted on the class action website maintained by Rust and

[2] Although the Court's class notice plan included publication in two dairy publications, Plaintiffs respectfully submit that supplemental publication of this proposed settlement in *Hoard's* is sufficient to satisfy Rule 23 and Due Process requirements given the extensive number of addressees that will receive direct notice by U.S. Mail, the broad circulation of *Hoard's*, the existence of a class action website, the anticipated coverage of this settlement by other media, and the substantial cost of publishing notice in additional publications.

referenced in the Notices.

## V. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notices, and deadlines for requesting permission to opt back in to the Class, objecting to the settlement and submitting claims. After consultation with Dean, Plaintiffs propose the following schedule:

| | |
|---|---|
| Notice to Class by U.S. Mail | 10 days after entry of the Order granting Preliminary Approval |
| Summary Notice published | As soon as practicable given publication deadlines |
| Last day for potential Class Members to request permission to opt back in to the Class | 14 days before Fairness Hearing |
| Last day for Class Members to object to the Settlement | 14 days before Fairness Hearing |
| Last day for Class Members to return claims forms (including those potential members seeking permission to opt back in) | 14 days before Fairness Hearing |
| Class Counsel file motion for final approval and response to any objections filed | 7 days before Fairness Hearing |
| Fairness Hearing | A date at the Court's convenience, approximately 75 days after entry of the Preliminary Approval Order |

## VI. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the proposed settlement be preliminarily approved as provided herein.

Dated: July 12, 2011

Respectfully submitted,

/s/Robert G. Abrams

Robert G. Abrams, Esq.
Robert J. Brookhiser, Esq.
Gregory J. Commins, Jr., Esq.
Terry L. Sullivan, Esq.
Baker & Hostetler LLP
1050 Connecticut Ave., NW, Suite 1100
Washington, DC 20036
rabrams@bakerlaw.com
rbrookhiser@bakerlaw.com
gcommins@bakerlaw.com
tsullivan@bakerlaw.com
*Lead Counsel for Dairy Farmer Class*

Thomas C. Jessee, Esq.
412 East Unaka Ave.
Johnson City, TN 37601
jjlaw@jesseeandjessee.com
*Liaison Counsel for Dairy Farmer Class*

## CERTIFICATE OF SERVICE

I certify that on the 12th day of July, 2011, a true and correct copy of ***Dairy Farmer Plaintiffs' Motion for Expediated Preliminary Approval of Proposed Settlement with Dean Foods Company*** was served by operation of the electronic filing system of the U.S. District Court for the Eastern District of Tennessee upon all counsel who have consented to receive notice of filings in the matters styled *In re Southeastern Milk Antitrust Litigation*, MDL No. 1899.

/s/ Danyll W. Foix
Danyll W. Foix