# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE: SOUTHEASTERN MILK | ) | |
| ANTITRUST LITIGATION | ) | |
| | ) | **Master File No. 2:08-MD-1000** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | **Judge J. Ronnie Greer** |
| *Sweetwater Valley Farm, Inc., et al. v.* | ) | |
| *Dean Foods Co., et al., No.  2:07-CV 208.* | ) | |
| | ) | |

## MEMORANDUM OPINION AND  ORDER

This matter is before the Court on the "Defendants' Motion to Decertify Class," [Doc. 1283]. Plaintiffs have responded, [Doc. 1404], Defendants have replied, [Doc. 1476], and the Court has heard oral argument on the motion.  In addition, certain defendants have filed a supplemental brief in further support of the motion, [Doc. 1661], and plaintiffs have responded, [Doc. 1679]. Defendants seek an order decertifying the "DFA Member Dairy Farmer" subclass and that part of the "Independent Dairy Farmer and Independent Cooperative Member" subclass to the extent it contains dairy farmers who are members of SMA's member cooperatives.  For the reasons which follow, the motion will be GRANTED IN PART and DENIED IN PART.

The plaintiffs do not dispute the authority of the Court to modify or decertify a class "in light of subsequent developments in the litigation."  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006).  See also Federal Rule of Civil Procedure 23(c)(1)(C), Advisory Cmte. note (2003).  The Court's duty with respect to class certification does not end with initial certification; "'as long as the court retains jurisdiction

over the case it must continue carefully to scrutinize the adequacy of class representation and withdraw certification if such representation is not furnished.'" *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997) (quoting *Grigsby v. North Mississippi Med. Ctr., Inc.*, 586 F.2d 457, 462 (5th Cir. 1978)). Indeed, it would be error for the Court to fail to do so whenever it becomes clear that named plaintiffs are not appropriate representatives of the class. *Barney*, 110 F.3d at 1213.[1]

Defendants now argue in support of their motion, first, that the named plaintiffs no longer are typical or adequate to represent the more than 2,000 DFA members who are part of the "DFA Member Dairy Farmer" subclass and, second, that DFA members have "fundamentally different and conflicting interests at stake in this litigation from independent dairy farmers and other cooperative members." More specifically, defendants argue that plaintiffs prior claims that the named plaintiffs can adequately protect DFA member class members has lost its factual basis and that the conflicts which exist between DFA members who are part of the class and the non-DFA members of the class are no longer hypothetical, but very real. The Court will address each of these contentions in turn.

## I.      Adequacy of the Named Class Representatives

When the lawsuits which have now been consolidated in this action were originally filed, separate suits were filed in the Middle District of Tennessee on behalf of DFA members and independent dairy farmers. In the DFA member complaint, six of the nine named plaintiffs were DFA members and the other three had previously been members. When the amended consolidated complaint was filed in this Court, only four of the seventeen named plaintiffs were DFA members-

---

[1]  The Sixth Circuit also implicitly acknowledged the authority of the district court to "revisit" the class certification decision in its order denying defendants' petition for permission to appeal this Court's class certification order. *See In re: Southeastern Milk Antitrust Litigation*, No. 10-0504 (6th Cir. March 11, 2011).

James and Eva Baisley, d/b/a Baisley Farms and William C. Frazier and Branson C. McCain, d/b/a McCain Dairy.  The Baisley's were the only named plaintiffs who marketed their milk through a DFA supply agreement.

It is not disputed that DFA members are the single largest related group of farmers in the class.  From the outset, DFA has argued that this handful of DFA related named plaintiffs could not adequately protect the interests of DFA members of the class, especially in view of the conflict of interest alleged by DFA (discussed further below).  Nevertheless, the Court, construing the Rule 23(a)(4) requirements liberally in favor of plaintiffs, previously found, although reluctantly, that the named plaintiffs could vigorously protect the claims of the entire class.

But things have now changed, say the defendants.  On February 25, 2010, six months before the Court's order certifying the class, James and Eva Baisley, using what appears to be a form notice, terminated their marketing agreement with DFA effective March 31, 2010. [2]  The Baisley notice gives no explanation for their action, although it can be safely assumed that the Baisleys no longer saw any benefits to them from DFA membership or from their marketing agreement with DFA.  Plaintiffs acknowledge that the status of the Baisleys has changed in relation to DFA but argue that does not change their status as adequate class representatives, citing several cases for the proposition that the end of a relationship between a class representative and defendant does not mean that these representatives cannot still adequately represent those who have a continuing relationship. The two cases cited by plaintiffs, though, are different in a significant respect.

In *United States Fidelity & Guaranty Co. v. Lord*, 585 F.2d 860 (8th Cir. 1978), a plaintiff

---

[2]  It is not clear to the Court, based on the exhibits filed, whether the Baisleys also "resigned [their] membership in DFA" as claimed by defendants.  Plaintiffs, however, acknowledge the Baisley's action as a resignation from DFA.

who was a former employee was a proper class representative in a Title VII class action on behalf of all present, past and future female employees because their interests were co-extensive. *Id.* at 874. In the view of the Eighth Circuit, to hold otherwise would encourage an employer to discharge the employees suspected of being most likely to initiate a class action suit. Likewise, in *Zeffiro v. First Pennsylvania Banking & Trust Co.*, 96 F. R. D. 567 (E.D. Pa. 1983), the court found a former debenture holder to be an adequate class representative for past and current debenture holders even though current debenture holders had a stake in the future financial position of the company. The court found that there was "no evidence of a real disagreement among the debenture holders with respect to th[e] propriety of maintaining the suit" and no argument that an award of damages would benefit both. *Id.* at 571.

These cases are distinguishable because there was no proof offered to establish that the interests of named plaintiffs and the class members were significantly different or that their interests were antagonistic. Here, the only class representatives who shared common interests with a large portion of the class at the time of certification, *i.e.*, who market their milk through DFA supply agreements, were the Baisleys. Not only has that changed, the Baisleys have resigned from DFA membership altogether. Whether that poses such a conflict that the Baisleys can no longer represent the interests of DFA class members depends largely on whether their interests are in fact antagonistic, a matter discussed more fully below.

Before addressing the issue further, the Court notes a bothersome fact about this whole dispute. Although the Court and the parties have referred to a "change" in the status of the Baisleys since class certification, that is not entirely accurate. In reality, the status of the Baisleys is the same now as it was when the Court's class certification order was entered in September, 2010. What has

4

changed is that the Court now is aware of the change in status, which occurred in March, 2010. No apparent reason for the failure of the Baisleys or their counsel to apprise the Court of the change in status immediately can be gleaned from the record. And while Plaintiffs have suggested that Defendants failed to bring the matter to the Court's attention, it was clearly the responsibility of the Plaintiffs, the Baisleys, to do so. Their failure to do so has led to the current situation and prevented the Court from considering the impact, if any, of their termination of their supply agreement with DFA before ruling on the initial class certification motion. Nevertheless, Plaintiffs' failure has no real impact on disposition of this motion.

Plaintiffs also argue that Messrs. Frazier and McCain are adequate representatives of the DFA class members, regardless of the status of the Baisleys, because the outcome of the case is important to them since "their livelihood is dependent on selling raw milk." Frazier and McCain jointly own McCain Dairy, which has been a DFA member (or a member of one of its predecessors) since 1974. McCain Dairy does not, however, sell its raw milk through a DFA marketing agreement. Plaintiffs contend this makes no difference and that Frazier and McCain have a strong interest in "obtaining compensatory damages and injunctive relief." [3] That is precisely the problem from DFA's point of view since injunctive relief preventing DFA and other Defendants from entering into full supply agreements is something at the very heart of plaintiffs' claims.

Plaintiffs waste a lot of effort and energy arguing that the Baisleys and/or Frazier and McCain are adequate to represent DFA class members. And yet there is a flaw in their argument. As the Court understands Plaintiffs' argument, it is that the alleged illegal conduct of the Defendants

---

[3] The parties disagree profoundly about the actual role of Frazier and McCain in the prosecution of plaintiffs' claims. In the end, this makes no difference in the outcome of the motion.

harms ***all*** southeast dairy farmers, whether members of DFA or another cooperative or independent. If they are correct, any southeast dairy farmer, even a single one, could adequately represent the ***entire*** class. Despite that, plaintiffs appear to concede, as a general matter, that DFA class members do have some interests that differ from the interests of other class members. Whether those differences are so significant that DFA class members' interests cannot be adequately represented by these dairy farmer plaintiffs then becomes the determinative question.[4] That question will be discussed in the next section. If the answer is yes, then there is a conflict of interest among class members requiring the Court to decertify the DFA Dairy Farmer subclass, regardless of whether any of the named plaintiffs have supply agreements with DFA.

## II.     Interclass Conflict of Interest

As noted in the Court's prior order, whether named class representatives can adequately protect interests of the class members depends in part on whether there is interclass antagonism or conflict. From the outset, this aspect of this case has troubled the Court. The Court has previously found the question to be a close one but resolved the doubt in favor of the plaintiffs, given the Court's authority to later modify or decertify the class prior to judgment, [Doc. 934, pp. 11-12]. "To the extent that DFA has engaged in the wrongdoing alleged in plaintiffs' complaint, it would appear

---

[4] The plaintiffs appear to acknowledge that such a conflict exists if the proof at trial establishes that the full supply agreements benefitted DFA members and creates antagonistic interests between DFA and non-DFA class members. They suggest, however, that this is a jury question. In the context of class certification, the Court disagrees. They further suggest that such antagonistic interests can be remedied by the Court after trial by determining whether to implement, or not implement, the requested injunctive relief. Again, the Court disagrees. Such an approach requires the Court to fulfill the role of representing the DFA class members' interests rather than placing the burden where it actually belongs-with the class representatives. Plaintiffs' position illustrates the nature of the conflict which DFA claims. First of all, whether the full supply agreements benefit some DFA members is not likely to be a question put specifically to the jury. Secondly, if plaintiffs prevail on their antitrust claims, the named plaintiffs, all of whom have already taken the position that the supply agreements are anti-competitive and should be enjoined, will not be in the best position to advocate with respect to injunctive relief on behalf of affected DFA members of the class.

6

on the surface that most, if not all, of DFA member dairy farmers have in fact benefitted from DFA wrongdoing." [*Id*. at 11]. The Court found DFA's argument "somewhat hypothetical" at the time and noted that "defendants have not presented testimony from any DFA member or other witness indicating DFA members have in fact benefitted from the alleged wrongful conduct in this case." [*Id*. at 12-13]. The Court specifically held that such evidence would likely require the Court to find that the interests of the class representatives are antagonistic to those of DFA members of the class, requiring decertification or modification of the class.

DFA claims such evidence now exists and that it is "wholly improper for the more than 2,000 DFA members whose rights are at stake in this litigation to be represented by 15 farmers who *all share no interest in maintaining DFA's supply agreements and interests in bottling plants*" and only one of whom has any interest in ensuring that DFA is not responsible for paying a judgment, [Doc. 1284, p. 9]. Attached to defendants' motion is the expert declaration of Joseph Kalt, Ph.D.[5] and the declarations of eight dairy farmer members of DFA. Defendants accurately summarize the background of the dairy farmer declarants at page 12 of their brief in support of this motion, [Doc. 1284, p. 12]:

> ☐ George Rohrer, a dairy farmer for over 35 years who operates a farm in the Shenandoah Valley of Virginia. Mr. Rohrer has been elected by his peers to serve their interests on DFA's Southeast Area Council ("SEAC") and, for the past three years, the Board of Directors. *See* Ex. 2 (Rohrer Decl.) ¶¶ 1-3.

> ☐ Ryan Anglin, a dairy farmer since 1972 who operates a farm in Bentonville, Arkansas. Mr. Anglin was elected by fellow dairy farmers in the Ozarks region to serve their interests on

---

[5] Plaintiffs have separately moved to strike the Kalt declaration. That motion will be denied by separate order. The declaration of Dr. Kalt had very little bearing on the Court's determination of the instant motion, however.

SEAC and on the Board of Directors. *See* Ex. 3 (Anglin Decl.) ¶¶ 1-2, 9.

☐      Randy Mooney, a dairy farmer since 1981 who operates a 200-head farm in Rogersville, Missouri. Mr. Mooney has been elected by his fellow DFA members in Missouri to represent their views on SEAC, and was elected to the Board of Directors where he now serves as Chairman. *See* Ex. 4 (Mooney Decl.) ¶¶ 1, 4.

☐      James "Mickey" Childers, a dairy farmer since 1966 who operates a farm in Morgan County, Alabama. Mr. Childers was elected by his neighbors to serve their interests on SEAC, where he is Chairman, and also on the Board of Directors. *See* Ex. 5 (Childers Decl.) ¶¶ 1, 9.

☐      Gerald Heatwole, a dairy farmer since 1973 who operates two farms in the Shenandoah Valley. Mr. Heatwole has been elected repeatedly by other Shenandoah Valley DFA members to represent their interests on SEAC. *See* Ex. 6 (Heatwole Decl.) ¶¶ 1-2, 4.

☐      Will Gilmer, a third-generation dairy farmer in the business since 2001, who has operated his family's farm in Lamar County Alabama since 2005. *See* Ex. 7 (Gilmer Decl.) ¶ 1.

☐      David Hutsell, a farmer since 1979 who operates a dairy farm in Wright County, Missouri. For the past three years, Mr. Hutsell has been elected by his peers in Wright County to serve their interests on SEAC. *See* Ex. 8 (Hutsell Decl.) ¶¶ 1-2.

☐      Nathan Roth, a dairy farmer who has operated his own farm in South-Central Missouri since 1981. Mr. Rohrer has been elected by his neighbors to serve them in a variety of elected offices, including on SEAC, as District Chairman and a Delegate. *See* Ex. 9 (Roth Decl.) ¶ 1.

According to these affidavits, plaintiffs' success in this lawsuit would adversely affect

southeast member dairy farmers in numerous ways:

•      The DFA supply agreements at issue in this case have guaranteed farmers a stable, secure and needed market for their raw milk, something especially essential to staying in business, especially for farmers in surplus areas and small farmers; Ex. 2, ¶¶ 2, 6; Ex. 3, Ex. 5, ¶ 5; Ex. 6, ¶¶¶ 4, 6, 7; Ex. 7, ¶¶¶¶ 5, 7, 9, 10; Ex. 8, ¶¶¶ 5, 6,

8; Ex. 9, ¶¶¶ 4, 5 6.

- Coop members see a huge benefit from coop full supply agreements with milk bottlers; Ex. 2, ¶ 4.

- Elimination of full supply agreements would place DFA at a competitive disadvantage because other coops would have the freedom to use full supply agreements, raising the DFA cooperative's cost and lowering prices to farmers; Ex. 2, ¶ 5; Ex. 3, ¶ 7;; Ex. 5, ¶ 4; Ex. 6, ¶ 7; Ex. 8, ¶ 7.

- That lower prices is an acceptable trade-off for guaranteed market access; Ex. 2, ¶ 7; Ex. 7, ¶ 10; Ex. 8, ¶ 6; Ex. 9, ¶ 8.

- That full supply agreements could be terminated by the members, through their elected representatives, if a majority of the members were convinced that the agreements were a "bad thing;" Ex. 2, ¶ 8; 6; Ex. 5, ¶ 9; Ex. 6, ¶ 8; Ex. 7, ¶ 12; Ex. 9, ¶ 8.

- Owning interests in processing plants assures a secure market and is very profitable for DFA, providing the members with financial diversification and security; Ex. 2, ¶ 9; Ex. 3, ¶ 10; Ex. 6, ¶ 10; Ex. 8, ¶ 9; Ex. 9, ¶ 9.

- Any judgment would ultimately be paid by DFA members by deducting the money from patronage checks, from equity accounts with DFA, or the sale of cooperative (i.e. member) owed assets; Ex. 2, ¶ 10; Ex. 3, ¶ 11; Ex. 5, ¶ 7; Ex. 7, ¶ 14; Ex. 9, ¶ 10.

- Full supply agreements reduce DFA members hauling costs by allowing them to combine their milk with that of other farmers for hauling; Ex. 3, ¶ 6; Ex. 5, ¶ 5; Ex. 6, ¶ 5; Ex. 7, ¶ 8.

Plaintiffs respond to this motion in several ways. First, they argue that the declarations are insufficient, referring to them as "eleventh-hour declarations" of "hand-picked DFA insiders" which offer no new evidence; second, that Defendants simply speculate about the existence of a conflict, raising the same arguments they have in the past, and that there is no evidence that full supply agreements benefit DFA members; and, third, that Defendants repeated arguments that a judgment against DFA would ultimately be paid by DFA members does not support decertification.

9

On this third point, the Court largely agrees with Plaintiffs. The Court has considered and previously rejected Defendants' argument on this point because to do otherwise would mean that a cooperative could never be sued by its members. *See Hampton Hardware, Inc. v. Cotter & Company*, 156 F.D.R. 630 (N.D. Tex. 1994). One aspect of the Plaintiffs' argument that does need to be addressed, however. Plaintiffs have always argued that the fact that DFA members might be personally exposed to a potential future judgment does not create a conflict of interest because the argument is premised on the "inability of non-cooperative defendants to satisfy it." Plaintiffs have argued several times previously, as they do now, that "Defendants are jointly and severally liable for any damages and one or more Defendants, such as Dean Foods and the individual Defendants who were significantly enriched through DFA funds, would more likely be able to satisfy any judgment."

Although the Court has never been terribly impressed with the sincerity of the plaintiffs' claim that they likely would collect any judgment from non-DFA Defendants, that argument has now lost its steam. Plaintiffs have now settled with Dean, SMA and James Baird, leaving only DFA and DFA related entities as defendants (DMS, Mid-Am Capital, and NDH, in which DFA owned a major interest) [6] and a single individual defendant, DFA's former CEO. Any judgment recovered now would clearly have to be collected from DFA sources. And while this does not cause the Court to change its previously held view that members of a cooperative should not be absolutely barred from pursuing a class action on behalf of members against the cooperative, this does cause the Court some pause where the only class representative DFA member who marketed milk under a DFA

---

[6] NDH apparently no longer has any assets and its liabilities, including for any judgment in this case, are now owned by DFA.

supply agreement has now resigned from DFA and is now a factor, although not by itself determinative, in the Court's decision.

In addition, another of Plaintiffs' arguments similarly now lacks merit. Plaintiffs argue that, even if DFA is ultimately responsible for a judgment, it can be paid without affecting class members mailbox checks. Plaintiffs point out that DFA's joint ventures currently have more than $1 billion in cash/value undistributed gains which, they argue, do not "belong" to DFA members. They also point to testimony that DFA has funded joint ventures from "capital resources" rather than out of the equity funds of its members. These arguments miss the mark, however, because DFA is a member owned cooperative which, if liquidated, would see its assets paid to its members, regardless of whether they are entitled to immediate distribution. So, while Plaintiffs are technically correct when they say DFA members have no guarantee of ever seeing this money, they overlook the fact that DFA members ultimately jointly own all of DFA's assets.

With respect to the other arguments raised by Plaintiffs, the Court will deal first with the characterizations employed by plaintiffs regarding the eight farmer declarations attached to DFA's motion. As noted above, Plaintiffs characterize the declarants as "hand-picked DFA insiders" who do not speak for DFA farmer members. They suggest that the declarants are not simply "farmers" who have submitted declarations but members of DFA's governing bodies who have set the policies and implemented the very practices at issue here and, in one case, personally participated in "illegal" secret payments which are alleged to be acts in furtherance of the alleged conspiracy.[7] They further

_____

[7] One of the declarations was signed by Randy Mooney, who operates a 200-head dairy farm in Rogersville, Missouri and was chairman of DFA's Southeast Area Council for many years. Plaintiffs allege that Mooney approved "$180,000 in illegal secret payments to Bucky Jones, a DFA board member and former SMA president." The Court has not considered the Mooney declaration.

note that many "are not even class members."[8]

The Court rejects the Plaintiffs' characterization of these declarants. First of all, the declarations establish that each is a DFA member, each personally operates a dairy farm, and some have for many years, and each, whether in the class or not, has circumstances similar to DFA member class members. Secondly, each of those who hold leadership positions does so by election of his peers, including DFA members of the class. So any insinuation that these declarants are not "real" farmers or that their interests are in some way different from those of typical DFA members is rejected. Furthermore, with the exception noted in footnote 7, none has been accused by plaintiffs of participating personally in illegal acts.[9] It actually appears to the Court that these declarants, based on their circumstances, more accurately reflect the views of DFA members operating under DFA supply agreements than any of named plaintiffs, including the Baisleys, Frazier and McCain.

The Court now turns to the dispositive question: Is there proof that the interests of the nominal plaintiffs are in conflict with, or antagonistic to, the interests of the DFA members of the class? In other words, are DFA members of the class entitled to class representatives who share their interests when making decisions about whether to invalidate business practices and seek a money judgment from the cooperative? On the current state of the record, the Court concludes that the answer to both questions is "yes."

The Court will initially consider an argument by Plaintiffs that this motion should not be

_____

[8] Only three of the eight are within the class defined by the Court; others are DFA member dairy farmers who live outside the geographic region of the class.

[9] The Court also notes that the fact that most of the declarants are not class members is of little consequence. In fact, plaintiffs have filed a motion accusing defendants' counsel of unprofessional conduct for improper contacts with the three class member declarants, *see* Doc. 1324. Defendants have understandably turned to non-class members for the offered evidence.

decided until the proof is heard at trial and, if there is proof at trial that there is an antagonistic relationship between class Plaintiffs and DFA members of the class, the Court has "the authority to review class certification at that time, and importantly, has the authority to implement or not implement, the injunctive relief that the Court believes is necessary." If the Court understands Plaintiffs' argument, it is that a showing of conflict of interest or antagonism between class representatives and DFA members of the class should result, not in decertification or modification of the class, but in denial of requested injunctive relief. In other words, class plaintiffs now appear willing to sacrifice relief that non-DFA class members might be entitled to and have considered the "lynchpin" of their claims to attempt to cure the conflict of interest and avoid decertification. They offer no authority whatsoever for their argument and it, in fact, calls into question whether the named plaintiffs are adequately representing the interests of *any* class member. This response on the part of class representatives simply underscores the nature of the conflict seen by DFA.

In their supplemental filing, Defendants also suggest that a recent Sixth Circuit case requires the Court to resolve the matter now. Although the Court would not be inclined to delay the matter until the conclusion of trial, that is a somewhat attractive proposition. The record, however, is now complete and no good purpose would be served by delaying the inevitable. And, the case cited by Defendants does lend support to the Defendants' position. In *Randalman v. Fidelity National Title Ins. Co.*, – – F.3d – – , 2011 WL 1833198 (6th Cir. 2011) (decided May 16, 2011), the Sixth Circuit affirmed an order decertifying the class prior to trial and found "flawed" an approach similar to the one advocated by plaintiffs here, *e.g.*, waiting until after the trial to determine, based on the jury verdict, the actual make-up of the class. Although a variation of that approach, the approach pursued by plaintiffs is likewise flawed–*i.e.*, leaving the class intact until trial is complete and then tailoring

13

the relief, depending on the jury verdict, in an attempt to avoid the conflict among class members. That is simply not the proper approach.

This Court has previously noted that the Eleventh Circuit decision in *Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000) is closely analogous to the situation in the present case. In *Pickett*, the plaintiffs, producers of "fed cattle" sold to Iowa Beef Producers, sued alleging violations of the Packers and Stockyards Act. On appeal from the district court order granting class certification, the Eleventh Circuit reversed because the class certified included "those who claim harm from the very same acts from which other members of the class have benefitted." *Id.* at 1280. Under these circumstances, the Eleventh Circuit found that plaintiffs, whose interests oppose those of other class members, "could not possibly provide adequate representation to a class" including those who benefitted from the acts alleged to have caused harm to the named plaintiffs. *Id.* at 1280-81. *See also Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181 (11th Cir. 2003). In sum, under *Pickett*, "a class cannot be certified when its members have opposing interests or when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." *Pickett*, 209 F.3d at 1280. Thus, either of these circumstances is sufficient to defeat class certification.

Defendants have also called the Court's attention to two other cases that apply the same principles. In *In re Party City Securities Litig.*, 189 F.R.D. 91 (D. N.J. 1999) named plaintiffs sought to represent both current and former shareholders of the defendant company. That case is instructive because the proposed class contained individuals who had an interest in maintaining the "continued commercial viability and financial success of the defendant cooperation" and individuals who had no such on-going interest but had "one focus: maximizing their recovery from the

14

defendant corporation." *Id.* at 108. The Third Circuit has also taken a similar position in *In Re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001), acknowledging the inherent conflict between two groups of plaintiffs, one of which owns a stake in the defendant and has an interest in its continued financial success and another of which is only concerned with the size of the recovery. "[T]here will often be a significant conflict between the interest of the [two groups], particularly in cases where the class's expected damages are very large." *Id.* at 244.

Plaintiffs argue here that the evidence shows that the challenged conduct adversely impacts all class members, citing the deposition testimony of various industry witnesses, DFA employees and expert opinions. They continue to distinguish *Pickett* on the basis that "[i]n that case it was *undisputed* that some class members in fact benefitted from the challenged conduct at issue" and the parties agreed that the basis for the conflict actually existed, [Doc. 1404, p. 17]. This Court has previously referred to Plaintiffs' effort to distinguish *Pickett* as possibly a "distinction without a real difference." The Court is now convinced that is the case. In fact, the existence of the conflict in *Pickett* was established in exactly the manner DFA has now established in this case–through the affidavits of dairy farmers who believe that they and most other dairy farmers actually benefit from the challenged conduct. And the Eleventh Circuit rejected the precise argument made by Plaintiffs here, that is, that defendants' "practices ha[d] a downward effect on prices for fed cattle," *Pickett*, 209 F.3d at 1279, and despite expert analysis that the conduct had affected all members of the proposed class.

As Defendants have observed, this Court previously noted the lack of evidence in the record at the time of initial class certification from which the Court could find that DFA members of the class reap benefits from the challenged conduct. Such evidence has now been provided in the form

of dairy farmer declarations. As in *Pickett*, and these declarations present a rather compelling case that the guaranteed market for milk assured by DFA supply agreements and the financial benefits to DFA member dairy farmers from DFA investments and joint ventures is beneficial to a large number of DFA member dairy farmers. Far from being biased declarations from DFA insiders, these declarations establish the views of the individual dairy farmer declarants and also indicate the views of a much larger group of farmers because these individuals are elected to represent them in DFA leadership positions.

For the reasons set forth herein, the motion of DFA to decertify the "DFA Member Dairy Farmer Subclass" will therefore be GRANTED. To the extent the motion seeks decertification of any part of the "Independent Dairy Farmer And Independent Cooperative Subclass," the motion will be DENIED.[10]

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE

---

[10] There are two primary reasons for denying the SMA motion to certify. First, DFA's motion differs on the merits from the SMA motion and, in view of the second reason, the Court will not discuss those merit differences. Secondly, the dairy farmer plaintiffs have entered into a settlement with SMA and Baird to which the Court has now been asked to give preliminary approval, [see Doc. 1676], and SMA and Baird have agreed not to support the motion to decertify further.