# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: SOUTHEASTERN MILK | ) | |
| ANTITRUST LITIGATION | ) | |
| | ) | **Master File No. 2:08-MD-1000** |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | **Judge J. Ronnie Greer** |
| *Sweetwater Farms, Inc., et al. v. Dean Foods,* | ) | |
| *et al., No. 2:07-CV 208* | ) | |

## MEMORANDUM OPINION

Plaintiffs ask the Court to reconsider and reverse its July 28, 2011 order decertifying the DFA subclass, [Doc. 1705; order at Doc. 1681]. The defendants have responded, [Doc. 1718], and plaintiffs have replied, [Doc. 1719]. The matter is ripe for disposition. For the reasons which follow, the motion has been DENIED. (See Order, Doc. 1728, entered August 19, 2011).

The Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders. The Court's power to reconsider exists, however, under federal common law, *see, e.g. City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001). Also, Federal Rule of Civil Procedure 54(b) provides additional support for such a motion. Rule 54(b) provides that an order which adjudicates fewer than all the claims and does not end the action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469-70 (4th Cir. 1991) (approving of Rule 54(b) as a proper procedural vehicle for bringing motions to reconsider interlocutory orders).

Motions to reconsider, however, are used sparingly and in rare circumstances. While the

Court can always review its prior rulings before the termination of a case, it is not required to do so and "should not do so in the vast majority of instances, especially where such motions "'merely restyle or rehash the initial issues.'" *White v. Hitachi Ltd.*, No. 3:04-CV-20, 2008 WL 782565, *1 (E.D. Tenn. March 20, 2008) (quoting *In re August, 1993 Regular Grand Jury*, 854 F.Supp. 1403, 1407 (S.D. Ind. 1994). The Sixth Circuit has held that a motion to reconsider is traditionally limited to three circumstances: "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Labors Health and Welfare Fund*, 89 Fed. App'x. 949, 959 (6th Cir. 2004) (unpublished).

Plaintiffs assert two general grounds in support of their motion for the Court to reconsider and reverse its prior order. First, they argue that "there is no evidentiary basis for the Court's conclusion that there is an interclass conflict and lack of adequate representative," and, secondly, that decertification of the entire subclass is overbroad, arguing that the Court should allow a class representative to be substituted who does adequately represent the interests of DFA members or make its prior ruling applicable only to current DFA members. It thus appears that plaintiffs do not argue that there is an intervening change in controlling law or new evidence available but only that the Court was in error in its prior ruling and should reconsider to correct that error. While plaintiffs do not clearly set out the underlying basis for their claims in their original motion, they refer to the Court's "clear error" several times in their reply memorandum.

As an initial matter, the Court will address a broad argument advanced by plaintiffs that the Court overstepped its authority by addressing the question of whether DFA's conduct is beneficial to a large number of DFA member dairy farmers "on the merits." [Doc. 1705 at 1, fn. 1]. Plaintiffs modified their argument somewhat at oral argument on Dean's motion to vacate the preliminary order

of approval of its settlement agreement with plaintiffs, arguing that while some "merits" examination is required with respect to class certification issues, the Court went too far in this case by deciding questions of credibility. Plaintiffs cite no authority for their modified argument.

It is hardly subject to dispute that some merits analysis must be conducted to complete the rigorous analysis required of a district court to satisfy itself that the prerequisites of Rule 23 have been met, *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007), although an inquiry as to the merits of plaintiffs' claims is not required. *Id.* (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)). While it is true that courts "should not conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action," *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006), that does not mean the court should not examine the merits as necessary to determine issues related to Rule 23's requirements for class certification. In other words, plaintiffs are not required to show any likelihood of success on the merits of their underlying claims before a class can be certified; they are, however, required to establish their right to class certification. *Beattie*, 511 F.3d at 560.

Nothing, therefore, prevents this Court from considering the merits of issues relevant to one of Rule 23 certification requirements. *See Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) ("nothing in the 1996 amendments to Rule 23, or the opinion in *Eisen*, prevents the district court from looking [to the merits of a case] to conduct the inquiries identified in that rule and exercise the discretion it confers"). Any doubt about that was resolved, as defendants argue, by the Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*:

> We recognized in *Falcon* that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question," 457 U.S., at 160, 102 S. Ct. 2364, and that certification is proper only if "the trial court is satisfied, after a

3

rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *id.*, at 161, 102 S. Ct. 2364. "'Frequently that "rigorous analysis" will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. "'[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Falcon, supra,* at 160. . . Nor is there anything unusual about that consequence: The necessity of touching aspects of the merits in order to resolve preliminary matters, e.g., jurisdiction and venue, is a familiar feature of litigation.

131 S. Ct. 2541, 2551-52 (2011).

Plaintiffs have argued that the question of whether DFA supply agreements, investments and joint ventures benefit the members of DFA is a jury question--in fact, the ultimate question for the jury. When pressed at oral argument about how that specific question would ever be submitted to, or decided by, the jury, plaintiffs struggled for a response, simply arguing that the question **could** be submitted to the jury as a special interrogatory which **might** be helpful to the Court in fashioning injunctive relief. That argument is completely unpersuasive here, especially in the face of plaintiffs' concession that DFA's full supply agreements, investments in joint ventures, and other conduct alleged to be acts in furtherance of the alleged conspiracy, could all be perfectly legal in and of themselves and yet further an unlawful conspiracy in restraint of trade. Said differently, the conduct at issue could benefit DFA members and yet be part of an unlawful conspiracy.

In sum, the merits inquiry conducted by the Court in deciding the decertification motion, after full development of the record, was no more than necessary to conduct the inquiry required by Rule 23. The Court did not render judgment on the merits of plaintiffs' underlying antitrust claims even though those claims are "enmeshed" with the class certification issues.[1]

---

[1] Plaintiffs also acknowledged at oral argument that they have previously conceded, in the summary judgment context, that genuine issues of material fact exist on the question of whether DFA members benefit

4

In support of their general claim that there is "no evidentiary basis" for the Court's holding, plaintiffs advance several more specific arguments: (1) the farmer declarations offered in support of the motion to decertify do not show that DFA farmers have benefitted from DFA's conduct; (2) the declarations do not address all of the challenged conduct; (3) the declarations do not show that full supply agreements benefit DFA members; (4) the declarations are speculative and unrepresentative; (5) the evidence is "overwhelming" that full supply agreements injure DFA members; and (6) the current class representatives are adequate.

Since the Court's order decertifying the DFA subclass was not based on the inadequacy of Craig Frazier and Branson McCain of McCain Dairy as class representatives but rather on the finding of a conflict of interest between the independent dairy farmer subclass and the DFA member subclass such that they could not be certified as one class represented by the same counsel, the Court will not further address that issue. In addition, the Court has already dealt in large part with plaintiffs' argument, which they repeat here, that the declarations of the dairy farmers submitted in support of the motion are simply personal opinions of ".001% of the class" which are not representative of the majority of DFA member dairy farmers. The Court will briefly address, however, plaintiffs' arguments that the declarations do not address all of the challenged conduct of defendants and that "the overwhelming majority of DFA members . . . affirmatively elected to remain in the class in order to pursue their claims against Defendants."

Plaintiffs argue that the declarations "do not address the critical issue of whether Defendants

from supply agreements or joint venture investments. Some resolution of this factual dispute by the Court is required before the Court can decide the certification issue under Rule 23-i.e., is there a conflict of interest between independent dairy farmers and DFA members precluding certification of one class represented by the same counsel? As indicated in the Court's prior order, it would not be proper for the Court to await a jury determination of the liability issues before deciding the certification issues.

challenged conduct benefits DFA members" but instead focus on only one aspect of the challenged conduct-- the full supply agreements.[2] They support this argument by citing case law holding that "the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only looking at it as a whole. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 330 U.S. 690 (1962)" (internal quotation marks omitted). They correctly state the rule, as this Court has previously acknowledged in ruling on defendants' motions to dismiss and for summary judgment. The rule, however, has no application in this context. The question here is not whether defendants' conduct, as a whole, constitutes an illegal conspiracy or whether the benefits claimed by DFA farmers "from DFA's full supply agreements outweigh the loss of revenue they suffered from artificially suppressed prices for their raw milk facilitated by those agreements."[3] It is rather whether the interests of the independent farmer subclass differ from those of the DFA subclass to the extent that a conflict of interest exists between the two. It is not necessary for the Court to find that each of the alleged constituent parts of the alleged conspiracy benefit the DFA members before a conflict of interest can exist.

Plaintiffs also argue that the personal opinions of the dairy farmer declarants cannot "override the desires of the overwhelming majority of DFA members who, knowing the allegations of the case,

---

[2] Plaintiffs are factually incorrect. The declarations not only address the supply agreements but also DFA's investments and joint ventures, conduct also alleged to be acts in furtherance of the alleged illegal conspiracy.

[3] Plaintiffs' argument that the declarations do not "show that the benefits [the DFA farmers] receive from DFA's full supply agreements outweigh the loss of revenue they suffered from artificially suppressed prices for their raw milk facilitated by those agreements" is somewhat odd. Plaintiffs have argued from the start that all farmers in the southeast, including all DFA members, had been harmed by defendants' conduct. In reality, they simply argue that defendants' conduct has resulted in a reduction in the mailbox price received by all farmers for their raw milk. Even if that is accepted as true, they ignore that DFA members may have received corresponding value in some other way based on that farmer's proportional ownership interest in DFA.

6

affirmatively elected to remain in the class in order to pursue their claim against Defendants." This argument misses the point for several reasons. First, class certification cannot be achieved or maintained by majority vote. Second, a decision not to opt out of the class is not equivalent to a decision to opt in. And, third, as plaintiffs have grudgingly acknowledged, there is no incentive for a DFA farmer to opt out of the class certified. The effect of the opt out would simply be that DFA farmers would lose out on any monetary settlement or judgment and yet still be subject to any injunctive relief ordered by the Court.[4]

Finally, plaintiffs cite an overwhelming "host of evidence in the record" that DFA member dairy farmers to not benefit from full supply agreements but are actually harmed by them. The evidence cited includes:

•    The fact that Defendants' officers acknowledged that full supply agreements did *not* benefit DFA members in the southeast.

•    The fact that Defendants cannot identify *any* contemporaneous - - or even after-the-fact- evidence analyzing the "benefit" of full supply agreements.

•    The fact that Defendants' experts did not provide any quantitative analysis showing that full supply agreements benefitted DFA members.

•    The fact that DFA's obligation to supply the raw milk requirements of processors in the southeast significantly exceeds the supply of southeast DFA members to supply, requiring DFA to import supplemental milk and to subsidize the transportation of that milk into the southeast at the expense of southeast farmers.

•    The fact that after DFA's full supply agreement with eight southeast Dean plants was cancelled effective January 1, 2010, there is no evidence of any harm to class members.

•    The fact that Jim Hahn, DFA's southeast area COO, in response to questions at a November 10, DFA meeting, announced that DFA had moved away from some of its full supply agreements

_____

[4]  As DFA argues, any monetary award paid to DFA members would represent a windfall to them (potentially at the expense of independent dairy farmers). Furthermore, to the extent DFA members believe that the injunctive relief sought would harm them, opting out does not provide them an avenue to address that concern.

because they were not beneficial to southeast members due to having to supply milk.

These "facts" simply establish the conflicting nature of the evidence on whether or not members benefit or not and, in many cases, do not show actual harm rather than benefit. For instance, the fact that some DFA officers acknowledged that full supply agreements did not benefit DFA members in the southeast, without more, proves very little; that defendants do not identify any contemporaneous analysis of the benefits does not prove that they do not exist. Likewise, that DFA's experts do not provide a quantitative analysis showing the benefits does not prove that they do not exist. That there is no evidence of harm from the cancellation of DFA's full supply agreements with eight southeast Dean plants effective January 1, 2010, does not prove that it does not exist, would not have existed in the past, or that DFA might not have found some other place to sell its members' milk. Finally, Jim Hahn's statement establishes only that some full supply agreements may not be beneficial to southeast members.

As a final matter, plaintiffs argue that the Court's decertification order is overbroad and that the Court's rationale applies, at best, only to those DFA members who might "benefit" from full supply agreements. They more specifically argue that there is no basis to exclude former DFA members of the class and that the Court should allow those former DFA members to remain in the class. Their position on this issue lacks merit for the reason pointed out by DFA in its response, i.e., that DFA members continue to have interest in DFA even after their membership in DFA is terminated. The conflict of interest identified by the Court applies to both current and former DFA members.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE