IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN RE: SOUTHEASTERN MILK ) | |
| ANTITRUST LITIGATION ) | |
| ) | Master File No. 2:08-MD-1000 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Judge J. Ronnie Greer |
| *Sweetwater Valley Farm, Inc., et al. v.* ) | |
| *Dean Foods Co., et al.,* No. 2:07-CV 208. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the "DFA plaintiffs' Motion To Re-Certify The DFA Litigation Subclass And Appoint DFA Subclass Counsel And Representatives," [Doc. 1787]. Defendants Dairy Farmers of America, Inc. ("DFA"), Dairy Marketing Services, LLC ("DMS"), Mid-Am Capital ("Mid-Am"), National Dairy Holdings, LP ("NDH"), and Gary Hanman have responded in opposition, [Doc. 1793], and DFA plaintiffs have replied, [Doc. 1816]. The Court heard oral argument on the motion on April 17, 2012, and the matter is now ripe for disposition. For the reasons which follow, the motion will be granted.

### I. Background

On September 7, 2010, the Court granted in part plaintiffs' motion for class certification and certified a class consisting of two subclasses, [Doc. 934]. One of the two subclasses within the class certified was a DFA member dairy farmer subclass ("DFA subclass"). [*Id*.]. On August 25, 2011, the Court decertified the DFA subclass because of a conflict between the subclasses such that the same counsel could not continue to represent both the DFA subclass and the independent dairy farmer subclass, [Doc. 1681].

The Court then appointed Gary E. Brewer, Esq., as interim counsel for the DFA subclass, [Doc. 1752], and Payne Dairy was added as another representative of the putative DFA subclass, [Doc. 1758]. Thereafter, the Court recertified the DFA subclass for purposes of completing a settlement with Dean Foods, Southern Marketing Agency and James Baird and appointed Brewer as counsel for the settlement subclass, [Doc. 1782]. DFA plaintiffs now seek recertification of the DFA subclass, for litigation against the remaining defendants, previously certified on September 7, 2010, arguing that the conflict previously identified by the Court leading to the decertification has now been cured by the appointment of separate counsel. The remaining defendants, i.e. the non-settling defendants, oppose the motion.

## II. Analysis

The arguments made by DFA plaintiffs for recertification of the DFA subclass are simple and straightforward. They now argue that the Court initially certified the DFA litigation class on the basis that all of the requirements of Rule 23 were satisfied and that the sole basis for the subsequent decertification of the DFA litigation subclass was the Court's conclusion that Rule 23(a)(4) was no longer satisfied. Because the interclass conflict identified by the Court has now been cured by appointment of separate counsel, DFA plaintiffs seek recertification. More specifically, they argue that the Court's decertification decision based on Rule 23(a)(4) did not change the Court's findings with respect to all other Rule 23 requirements and that those findings remain the "law of the case" absent changed circumstances. As a result, they argue that it is not now necessary for the Court to revisit any of its prior analysis with respect to all Rule 23 requirements except for that of Rule 23(a)(4).

Defendants argue that intra-class conflicts of interest preclude recertification of the DFA

2

subclass because some members claim to have been harmed by the same conduct that benefited other members of the class. Defendants once again cite the case of *Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000) as a case closely analogous to the present one. They argue that many DFA members benefit from the very agreements which DFA plaintiff representatives attack. They further argue that the appointment of separate counsel does not cure the conflict that exists within the proposed DFA member class and that the DFA class representatives have not provided their own common proof of impact and damages but rather have relied on the damages evidence of the independent subclass which does not distinguish between independents and the dairy farmers in the proposed DFA subclass.

DFA plaintiffs predictably reply that there is no intra-class conflict, only one invented by the defendants by exaggerating the injunctive relief sought. They further argue that defendants' reliance on *Pickett* and other similar cases is misplaced because defendants cannot demonstrate actual differences of impact on members of the DFA subclass. Plaintiffs point to what they refer to as a "fundamental fact that whatever the outcome of the litigation, there will not be winners and losers in the DFA subclass because, by the very nature of DFA, every member will be equally affected."

Most of the arguments now made by the defendants in opposition to the recertification of the DFA subclass have been previously made and were considered by the Court in prior opinions. Defendants have argued from the beginning of this litigation that plaintiffs' claim for injunctive relief creates a conflict which precludes certification in that certain of DFA members benefit from the conduct and agreements which are the subject of the sought after injunctive relief while others, including the class representatives, come to a different conclusion. The most that can be said about these matters at this point is that plaintiffs and defendants continue to make competing claims in the

3

litigation and these competing claims will not ultimately be resolved until after a trial of the case. Should the plaintiffs prevail at a trial of this case, the issue of injunctive relief will then be one for the Court and the Court, after hearing all of the evidence during what promises to be a lengthy trial, will attempt to fashion injunctive relief in such a way that it will benefit the greatest number of the stakeholders in this litigation. It may be that some of the arguments now put forth by defendants will ultimately cause the Court to deny certain injunctive relief sought by the plaintiffs or to grant that relief in a form much different than sought by plaintiffs. Those are matters which simply cannot be decided at this point.

As the Court noted in its September 7, 2010 order, the question raised by the defendants and plaintiffs' effort to distinguish *Pickett* and similar cases presents a very close question. As the Court noted in that order, however, doubt should generally be resolved in favor of the plaintiffs, especially given the Court's authority to modify or decertify the class at any time prior to judgment, even after trial, if the Court finds the requirements of Rule 23(a)(4) are no longer met. To the extent such a conflict exists, that conflict, for purposes of Rule 23(a)(4), has now been resolved by having separate counsel represent the two subclasses.

With respect to the sought after injunctive relief, some members of DFA obviously claim benefits from the challenged conduct while other members of DFA, including class representatives, see no benefit. The simple fact remains, however, that plaintiffs have offered substantial proof that the alleged conspiracy has injured all members of the independent farmer subclass and the DFA farmer subclass. In his expert report, Dr. Gordon Rausser states the opinion that "Defendants' actions to fix and suppress the prices paid to dairy farmers in the Orders 5 and 7 . . . [have] reduce[d] prices that all members of the class received for their milk below competitive levels." According

4

to Dr. Rausser,

> This happened in at least the following ways *First*, the prices farmers received for their milk were artificially reduced via the mechanism of reduced announced over order premiums. *Second*, the prices farmers received were artificially reduced by the reduction in the uniform minimum blend prices as a result of flooding. *Third*, the prices farmers received were also reduced by the substantial added costs attributable to the acquisition and transportation of excess quantities of raw milk from outside Orders 5 and 7. *Fourth*, the prices that DFA farmers received were further reduced by substantial rebates and side payments made to Dean, NDH and other processors. Finally, I have analyzed the prices paid by farmers throughout Orders 5 and 7. That analysis indicates that the conspiracy reduced actual prices to everyone.

Expert Report of Gordon Rausser, Ph.D, March 5, 2010 at 175-76. So far as this Court can tell, defendants' experts have not specifically taken issue with the conclusion reached by Dr. Rausser.

If plaintiffs can prove at trial that all members of the DFA subclass have been equally harmed by illegal acts committed by the defendants, the requirements of Rule 23(a)(4) are met. On the other hand, if plaintiffs cannot prove that at trial, the Court is well aware of its continuing obligation to ensure that class certification requirements are met and will not hesitate to decertifiy the subclass once again. The Court is also well aware of the dispute among the experts about the damages framework used by the plaintiffs and the conflicting opinions of the respective experts. It may well be that plaintiffs are unable to offer proof across both subclasses with respect to damages from the alleged illegal conduct; however, the resolution of that factual dispute is one for later resolution by the fact finder.

The Court needs to make one further point. The Court is very mindful of the fact that it has certified the DFA subclass for purposes of settlement with Dean, SMA and Baird and that it did so ultimately upon the agreement of all parties to those settlement agreements that the appointment of

5

separate counsel had cured the conflict of interest which manifested itself. Defendants, while conceding that no conflict of interest manifested itself when the only matter at stake was collecting money from Dean or other defendants, argue that those interests are burdened with great tension when one considers the injunctive relief issues which are at stake here but were not part of the prior settlements. As noted above, that is a matter the Court can deal with, if necessary, after a verdict for plaintiffs in the case. In any event, DFA members who claim benefit from the agreements and conduct which may be the subject of injunctive relief will find themselves in the same perilous position whether they are members of a subclass which is part of this litigation or not given that the independent subclass seeks the same injunctive relief and injunctive relief granted to them would have an impact on DFA's members.

### III. Conclusion

For the foregoing reasons, the motion of DFA plaintiffs to recertify the DFA subclass for litigation and appoint DFA subclass counsel and representatives, [Doc. 1787] is GRANTED. The Court will recertify the subclass of DFA dairy farmer members with respect to all of the plaintiffs' claims except for the breach of contract claim by DFA against DFA by its dairy farmer members, as set forth in the Court's prior order. [Doc. 934]. Furthermore, the Court appoints Gary E. Brewer, Esq. as DFA subclass counsel and appoints Payne Dairy, Messrs. Fraizer and McCain d/b/a McCain Dairy and Mr. Holmes as representatives for the DFA subclass.

Within five (5) days from the entry of this order, DFA plaintiffs' counsel shall submit to the Court a proposed order, with accompanying memorandum, for complying with Rule 23(c)(2) and (d) to the extent applicable. Defendants may file a response within five (5) days of the filing by plaintiffs of the proposed order. No reply will be permitted.

At any time before final judgment, the Court shall modify this recertification order or decertifiy the subclass should subsequent circumstances warrant such action.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
