IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| IN RE: SOUTHEASTERN MILK ) | |
| ANTITRUST LITIGATION ) | |
| ) | Master File No. 2:08-MD-1000 |
| ) | |
| THIS DOCUMENT RELATES TO: ) | Judge J. Ronnie Greer |
| *Sweetwater Valley Farm, Inc., et al. v.* ) | |
| *Dean Foods Co., et al., No. 2:07-CV 208.* ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is currently before the Court on the plaintiffs' Motion For Award Of Attorneys' Fees, Reimbursement Of Expenses, And Incentive Awards For Class Representatives. [Doc. 1808]. No party has filed a response to the motion and no class member has objected to the requested fees, expenses, and incentive awards. The Court held a fairness hearing on May 15, 2012, and heard brief argument on the motion. The matter is now ripe for disposition. For the reasons set forth herein, the motion will be GRANTED.

**I.      Background**

This is a multi-district antitrust case involving allegations by the plaintiffs that defendants violated §§ 1 and 2 of the Sherman Act. After nearly five years of contentious litigation, the plaintiffs have entered into settlement agreements with certain of the defendants, [*See* Doc. 1856]. In short, plaintiffs have negotiated a cash settlement in the amount of $140 million with defendant Dean Foods and a $5 million cash settlement and substantial structural changes with defendants SMA and Baird (collectively referred to as "Settling Defendants"). The Court has now given final

approval to the settlements, [Docs. 1889, 1890] and the trial of the matter against the non-settling defendants is currently scheduled to commence in November, 2012. Plaintiffs request an award of $48,333,333.00 in attorney's fees (one-third of the recovery from Settling Defendants), $7,408,920.00 as reimbursement for class counsel's out of pocket expenses and incentive awards for the 15 class representatives in the amount of $10,000.00 each, or $150,000.00 total.

## II. Analysis

### A. Applicable Law

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court must ensure "that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Courts have broad discretion in determining an award of attorney's fees in class actions. *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996); *Rawlings*, 9 F.3d at 516.

One of two methods for calculation of attorney's fees is generally employed in the Sixth Circuit: The lodestar [1] and the percentage-of-the-fund. [2] The district court may "select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Van Horn v. Nationwide Prop. and Cas. Ins. Co.*, 436 Fed. App'x 496, 2011 WL 3792362, at *1 (6th Cir. Aug. 26, 2011) (quoting *Rawlings*, 9 F.3d at 516). The district court, however, generally must explain

---

[1] With the lodestar method, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

[2] When using the percentage-of-the-fund method, the Court simply determines a percentage of the settlement to award to class counsel. *Rawlings*, 9 F.3d at 516.

2

its "reasons for adopting a particular methodology and the factors considered in arriving at the fee." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (internal quotation marks omitted).

This is a common fund case and plaintiffs urge the Court to apply the percentage of the fund method. As a general matter, "[t]he lodestar method better accounts for the amount of work done, while the percentageof the fund method more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516. It appears that the trend in the Sixth Circuit is "toward adoption of a percentage of the fund method" in common fund cases. *Stanley v. United States Steel Company*, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) (quoting *Rawlings*, 9 F.3d at 515). "[T]he vast majority of courts of appeal now permit or direct district courts to use the percentage-fee in common-fund cases." *Manual For Complex Litigation Fourth* ("MCL") § 14.121. "In practice, the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation." *Id*. At least one circuit court of appeals has recognized that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

1.      **Selecting the Method**

In the Sixth Circuit, it is within the discretion of the district court to decide which method to use in a given case. *Bowling*, 102 F.3d at 779; *Rawlings*, 9 F.3d at 516. The percentage-of-the-fund method, however, clearly appears to have become the preferred method in common fund cases. *Stanley*, *supra*; *see* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7; J. Empirical Legal Stud. 811, 832 (December, 2010).

As noted above, plaintiffs urge the Court to award a percentage of the common fund

3

in this case. Although the Court acknowledges its discretion to use the lodestar method, the Court finds that the percentage-of-the-fund method is the more appropriate method in this case, especially when employed with a lodestar cross-check. Here, a substantial common fund has been established for the benefit of class members through the efforts of class counsel. Given the commitment of time and resources committed by class counsel and the complexity of this litigation, it simply would not have been practicable for individual members of this class to pursue litigation challenging the alleged illegal conduct in this case. Given the clear trend in the Sixth Circuit and the Court's belief that the percentage-of-the-fund method, when employed in connection with a lodestar cross-check, accounts for both the amount of the work done and reflects the results achieved by class counsel, this Court will use the percentage-of-the funds method and a lodestar cross-check. [3] In addition, given the number of hours expended by counsel in this case (approximately 113,000) use of a percentage-of-the-fund method here is much more efficient and less time consuming for the Court to administer.

### 2. The Reasonableness of the Requested Fee

As noted above, the attorneys' fees requested represent 33.33 percent of the settlement fund. Although the total fee requested is a very large amount, the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit. *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at *4 (W.D. Mich. Oct.

---

[3] Counsel have provided to the Court summary schedules indicating the number of hours spent by the attorneys involved in this litigation and the lodestar calculation based on historical billing rates. Those schedules were prepared from contemporaneous time records not produced by counsel. Unlike the situation when the Court employs the lodestar method in full, "the hours documented by counsel need not be exhaustively scrutinized by the district court" where a lodestar cross-check is used. *In re WorldCom Sec. Litig.*, 388 F. Supp.2d 319, 355 (S.D.N.Y. 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

4

26, 2007) (approving an award of 33 percent and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of recovery") (quoting *Shaw v. Toshiba America Inf. Sys., Inc*. 91 F.Supp.2d 942, 972 (E.D. Tex. 2000)); *Worthington v. CDW Corp*. 2006 U.S. Dist. LEXIS 23100, at *22 (S.D. Ohio May 22, 2006); MCL § 14.121 ("[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund."); *see also* Brian T. Fitzpatrick, *Do Class Action Lawyers Make Too Little?* 158 U. Pa. L. Rev. 2043, 2063 (2010) ("although the mean and median fee awards in federal court are 25%, there are many awards at the 33% level, ...").

In the Sixth Circuit, several factors have been identified for consideration in determining the reasonableness of the requested fee. These include:

> (1) the value of the benefit rendered to the plaintiff class . . . ; (2) the value of services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Bowling,* 102 F.3d at 780. *See also Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

All of the relevant factors here support the requested fee. First, the result obtained by counsel for the plaintiff class is extraordinary and will result in an average cash payment to each class member of approximately $13,000.00. The total settlement fund is approximately one-third of the total damages calculated by plaintiffs' damages expert.[4] In addition, the settlement with Baird and SMA will result in significant structural changes in the way milk is marketed in the future in the Southeast. One part of that relief alone has been estimated by SMA to generate value of

---

[4] Plaintiffs claim the settlement is likely the largest settlement of any antitrust case litigated in this district. Although the Court has not attempted to confirm the accuracy of that claim, the Court is not aware of any settlement for a larger amount.

5

Case 2:08-md-01000-JRG   Document 1897   Filed 07/11/12   Page 5 of 11   PageID #: 85489

approximately $0.10 to $0.12/cwt to Southeast dairy farmers, totaling millions of dollars over the next several years. The value of the settlement to the class is further illustrated by the lack of objection from any class member to the requested fees. Of the roughly 7000 members of the class, only one objected to the settlement, and that objector voiced no objection to the requested fees.

Second, there is absolutely no question that counsel has spent a remarkable amount of time preparing and litigating this case–over 113,000 hours of legal work. Counsel spent a year investigating the antitrust allegations, consulting experts and mapping strategy before filing suit. The case has been extensively and vigorously litigated for four years and the settling defendants have aggressively defended the suit. Counsel has reviewed and organized over 5,000,000 pages of documents and multiple motions to compel discovery have been litigated. Over 100 depositions have been conducted, including those of numerous plaintiff and defense experts. The Court's docket entries for the case are approaching 2,000, fully illustrating the extensive nature of the legal work done, from the initial motions to dismiss through the summary judgment stage and extensive litigation of a host of other pretrial motions. Counsel have participated in extensive and lengthy court ordered mediation sessions, as well as settlement discussions with defendants. The quality of the work done by class counsel has been exceptional, not only with respect to the pleadings filed but also the oral advocacy during oral argument on various motions.

Using the lodestar method as a cross-check on the reasonableness of the requested fee likewise supports the award of fees requested. As noted above, counsel spent over 113,000 hours on this case, which, when multiplied by a reasonable hourly rate, results in a lodestar of $46,702,830. The requested fee-- $48,333,333-- represents a lodestar multiplier of only 1.03, minimal when compared to typical lodestar multipliers. *See In re Cardinal Health, Inc. Sec. Litig.*,

6

528 F. Supp.2d 752, 767 (S.D. Ohio 2007) (typical lodestar in large securities class actions ranges from 1.3 to 4.5); *Newberg on Class Action* § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").

The complexity of the litigation also supports the requested fees. This Court has observed several times the complexity of the case. Almost every aspect of this case has been hotly contested and litigated extensively and the case presents several somewhat novel issues. The complexity of the case is further illustrated by the number of pages of documents produced, as noted above, a list of potential trial exhibits that numbers in the thousands and literally hundreds of potential witnesses who have been interviewed and/or deposed in preparation for trial. Class counsel, who have extensive experience in complex class action litigation, have efficiently and competently managed their enormous task and have vigorously and effectively prosecuted the case on behalf of the class. They have also been opposed by equally experienced and highly competent counsel for defendants and have achieved an excellent result for their clients.

Furthermore, counsel undertook this case on a contingency-fee basis and accepted a substantial risk of non-payment for legal work and reimbursement of out-of-pocket expenses advanced. This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee. Not only did counsel risk not being paid for more than $46 million in legal work, they also ran the risk of losing nearly $7.5 million in out-of-pocket expenses. If counsel are not rewarded for this risk, few attorneys will undertake "the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Behrens v. Wometco Enter., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988).

Finally, failing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in the private litigation of antitrust cases. Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors. *See Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws.").

Simply put, anti-competitive conduct such as that alleged in this case would likely go unchallenged absent the willingness of attorneys to undertake the risks associated with such expensive and complex litigation. No single class member could have undertaken the litigation prosecuted here on his own. The sheer size of the outlay for out-of-pocket expenses by class counsel illustrates the reason why. Awards of substantial attorney's fees in cases like this are necessary to incentivize attorneys to shoulder the risk of nonpayment to expose violations of the law and to achieve compensation for injured parties.

One final issue should be addressed. Some studies have identified the size of the underlying class action settlement as the factor with the most influence on the fee and have found an inverse relationship between fee percentage and size of the settlement fund. *See* Fitzpatrick, *Do Class Action Lawyers Make too Little?*, at 2055 (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees In Class Action Settlements: An Empirical Study, 1* J. Empirical Legal Stud. 27, 35-36 (2004)). Indeed, it is fairly widely recognized that lower percentages are appropriate in cases in which large settlements serve as the basis for calculating a percentage. MCL, § 14.121 (citing *In re Prudential Ins. Co. of Amer. Sales Practices Litig.* 148 F.3d 283, 339-40 (3d Cir. 1998)

8

(remanding award of 6.7% of common fund for further consideration "in light of the magnitude of the recovery")). In cases involving settlements exceeding 100,000,000, fee percentages have ranged from 4.1% to 17.92%. *Id.*

This Court finds, however, that such an inverse approach would not be appropriate in this case for several reasons. First, the Court has not found any Sixth Circuit case endorsing such an approach. Second, a declining percentage-of-the fund based on the size of the settlement "can create an incentive to settle quickly and cheaply when the returns to effort are highest" and discourage counsel from "investing additional time and maximizing plaintiffs' recovery." *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 80 (S.D. N.Y. 2000). In addition, the Court sees no good reason why class action lawyers who represent clients on a contingency-fee basis in a case such as this should receive lower fees on a percentage basis than due contingency-fee lawyers in litigation representing individual clients, which typically amount to 33% or more of the recovery. Lastly, such an approach would penalize these class action attorneys given the actual number of hours spent on the case, rather than compensate them fairly. In other words, the requested fees do not result in a windfall for class counsel.

After consideration of all these factors and the entire and lengthy record of this complex litigation, the Court concludes that, although the requested fee is a very, very substantial amount, it is fair and reasonable under the circumstances. Accordingly, the Court will approve the requested fees in the amount of thirty-three and one-third percent (33 1/3%) of the common fund, i.e. $48,333,333.00[5] and will authorize lead counsel to allocate fees to specific firms.[6]

---

[5] The Dean settlement is to be paid over four years. Plaintiffs do not propose to take all of their fees up front but rather the fees will be paid proportionally as Dean's payments are made to the settlement fund.

[6] The Court, of course, retains jurisdiction to resolve any fee disputes which may arise.

9

**B.     Reimbursement of Expenses**

In addition to their petition for attorney's fees, class counsel seek reimbursement of out-of-pocket expenses incurred during the representation of the class in the amount of $7,408,920.39. "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *See In re F & M Distributors*, *Inc.,* 19 U.S. Dist. LEXIS 11090, at *19 (E.D. Mich. June 29, 1999). Based upon the Court's review of the various affidavits submitted by class counsel, it appears that the requested expenses are the type typically billed by attorneys to paying clients in similar cases, *see In re Synthroid Marketing Litig.*, 264 F.3d 712, 722 (7th Cir. 2001), and are fair and reasonable under the circumstances of this case. A large percentage of the expenses consist of fees paid to experts who were crucial to the prosecution of the case, travel to depositions, hearings, and meetings with witnesses, experts and class representatives, and payments to court reporters for depositions, computerized research, copying costs, and delivery charges. Although the affidavits submitted by class counsel are not itemizations of all of the expenses incurred but rather an aggregate listing of the expenses for each category, the Court finds the affidavits submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $7,408,920.39 as reimbursement for their out-of-pocket expenses.

**C.     Incentive Awards to Class Representatives**

Plaintiffs request that the Court approve incentive awards for the fifteen (15) class representatives in the amount of $10,000 each. "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness

to act as a private attorney general." *Rodriguez v. West Publ'g. Corp.,* 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted). Based on this Court's knowledge of these lengthy proceedings, it appears that the class representatives have had extensive involvement in this litigation and deserve compensation above and beyond the amounts they will be entitled to by virtue of class membership alone.[7] They have been crucial in the preparation of the case and the requested incentive awards are reasonable in light of other incentive awards approved by courts in this circuit. *See Hainey v. Parrott*, 2007 WL 3308027 at * 5 (S.D. Ohio Nov. 6, 2007) (approving $50,000 incentive awards); *Worthington*, 2006 U.S. Dist. LEXIS 32100, at *24 (approving $10,000 incentive awards); *In re F&M Distributors*, 1999 U.S. Dist. LEXIS 11090, at * 20-21 (approving $2,500 incentive awards).

### III. Conclusion

For all the foregoing reasons, plaintiffs' motion for award of attorneys' fees, reimbursement of expenses, and incentive awards for class representatives, [Doc. 1808], will be GRANTED and the Court will award $48,333,333 in attorneys' fees, reimbursement for out-of-pocket expenses in the amount of $7,408,920.39, and $10,000.00 as an incentive award to each of the class representatives.

So ordered.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE

---

[7] No affidavits or other documentation have been submitted in support of the incentive award request. Class representatives, however, have clearly been extensively involved in the litigation, settlement discussions and court proceedings and have committed substantial time to the case as confirmed by the Court's own observations. *See also* Declaration of Robert G. Abrams, [Doc. 1809]. ("Class representatives have communicated with class counsel regarding case issues, produced documents and information, been deposed, and prepared for trial.")