IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

|  |  |  |
|---|---|---|
| IN RE SOUTHEASTERN MILK ANTITRUST LITIGATION | ) ) ) ) | Master File No. 2:08-MD-1000 |
|  | ) | Judge J. Ronnie Greer |
| THIS DOCUMENT RELATES TO: | ) ) |  |
| *Sweetwater Valley Farm, Inc., et al. v. Dean Foods, et al.*, No. 2:07-CV-208 | ) ) ) |  |

**MEMORANDUM IN SUPPORT OF DAIRY FARMER PLAINTIFFS'
EXPEDITED MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED SETTLEMENT WITH DEFENDANTS DAIRY FARMERS
OF AMERICA, INC., DAIRY MARKETING SERVICES, LLC, MID-AM
CAPITAL LLC, NATIONAL DAIRY HOLDINGS, LP,
<u>AND GARY HAMAN</u>**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

I. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT BECAUSE IT IS SUFFICIENTLY FAIR AND REASONABLE FOR THE CLASS TO BE NOTIFIED OF THE AGREEMENT ............................................ 8

    A. The Proposed Settlement Resulted from Vigorous, Arm's Length Negotiations Between Experienced and Capable Counsel ........................................ 9

    B. The Proposed Settlement Is Within the Range of Possible Approval By the Court as Fair, Reasonable and Adequate ................................................................ 10

    C. The Proposed Settlement Has No Obvious Deficiencies and Grants No Preferential Treatment ........................................................................................... 12

II. THE COURT SHOULD APPROVE THE PROPOSED NOTICES AND NOTICE PLAN ...... 14

III. PROPOSED DATES FOR NOTICES, SETTLEMENT ADMINISTRATION AND FAIRNESS HEARING ............................................................................................... 16

CONCLUSION ...................................................................................................................... 16

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Sweetwater Valley Farm, Inc., Barbara Arwood and Victor Arwood d/b/a VBA Dairy, Jeffrey P. Bender, Randel E. Davis, Farrar & Farrar Dairy, Inc., Fred Jaques, John M. Moore, D.L. Robey Farms, Robert D. Stoots, Virgil C. Willie, Thomas R. Watson, James D. Baisley and Eva C. Baisley d/b/a Baisley Farms, Stephen J. Cornett, Payne Dairy, and Jerry L. Holmes (collectively "Plaintiffs"), respectfully request that the Court grant preliminary approval of the proposed January 17, 2013 settlement agreement ("Settlement Agreement" or "Settlement") between Plaintiffs and Defendants Dairy Farmers of America, Inc. ("DFA"), Dairy Marketing Services, LLC, Mid-Am Capital LLC, National Dairy Holdings, LP, and Gary Haman (collectively "Settling Defendants").

## INTRODUCTION

After five and a half years of vigorously-contested litigation, years of mediation and arm's-length negotiations over many months, Plaintiffs have reached a proposed Settlement to resolve the class members' claims against all remaining Defendants. In exchange for release of those claims, Settling Defendants will make settlement payments totaling $158,600,000, as explained below, consistent with the schedule and terms previously approved for the Dean Foods settlement.

In addition, Settling Defendants have agreed to implement changes to how they conduct their business in the Southeast, including: Taking steps to increase Class I utilization and uniform milk prices; removing cancellation penalties on certain full-supply agreements with bottling plants and not entering any such new agreements during the Settlement's term; modifying membership agreements to improve farmer ability to change cooperatives; enhancing price-related information on milk checks; boosting transparency through auditing and disclosure commitments; and facilitating delegate votes on additional meaningful changes to conduct.

The proposed Settlement's monetary relief and conduct terms will provide significant benefits to all class members and warrants the Court's preliminary approval so that it may be presented to the class members. *See Manual for Complex Litig*. (4th), at § 21.633 (2004). Plaintiffs thus request that the Court preliminarily approve the proposed Settlement. Plaintiffs also request that the Court approve the proposed Notice of Proposed Settlement ("Notice") for mailing and the proposed Summary Notice of Proposed Settlement ("Summary Notice") for publication, attached as Exhibits C and Exhibit D, as well as the proposed plan for dissemination of the notices, all of which are consistent with the notices and plan previously approved for the Dean and SMA/Baird settlements. Accordingly, Plaintiffs move for entry of the proposed Order, attached as Exhibit A, providing, *inter alia*:

1. The Settlement is preliminarily approved and is sufficiently fair, reasonable and adequate to authorize dissemination of notice of the Settlement to the class;

2. the form of the Notice and Summary Notice are approved to notify the class of the Settlement;

3. the proposed plan for dissemination of the Notice and Summary Notice constitutes the best notice practicable under the circumstances, is due and sufficient notice and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States;

4. no additional opt-out period is warranted or required by Rule 23(e)(4) of the Federal Rules of Civil Procedure;

5. the Court will hold a hearing concerning final approval of the Settlement on April 3, 2013 ("Fairness Hearing");

6. any person who timely requested exclusion from the class may apply to the Court to be

reinstated to the class by setting forth the reasons for seeking reinstatement in a document filed with the Claims Administrator at least fourteen (14) days prior to the Fairness Hearing;

7. any class member who objects to the Settlement must do so in writing no less than fourteen (14) days prior to the fairness hearing;

8. any class member who wishes to be eligible for a payment as a result of the Settlement shall file a complete claim form provided with the Notice no less than fourteen (14) days prior to the Fairness Hearing;

9. class counsel shall file with the Court, and serve upon counsel of record, the necessary papers to show notice was disseminated in compliance with the Court's Orders, as well as any other materials class counsel wishes the Court to consider, at least seven (7) business days prior to the Fairness Hearing;

10. any class member who seeks to appear and be heard at the Fairness Hearing shall provide notice to the Clerk of the Court and to counsel of record at least fourteen (14) business days prior to the Fairness Hearing;

11. the monetary consideration by Settling Defendants ("Settlement Fund"), as set forth in Section 7 of the Settlement Agreement, is a "Qualified Settlement Fund" pursuant to Treas. Reg. §1.468B-1, and class counsel and their designees are authorized to use up to $100,000 of the Settlement Fund to give notice of the Settlement to class members and for administration costs, up to $10,000 of the Settlement Fund for escrow agent costs, and such amount of the Settlement Fund as is required to pay taxes on income earned on the Settlement Fund, with prior notice to Settling Defendants;

12. Rust Consulting, Inc. is appointed as Claims Administrator for purposes of notice and administration of the Settlement, and JPMorgan Chase Bank, National Association, shall serve as the

3
Case 2:08-md-01000 Document 1922-1 Filed 01/21/13 Page 5 of 20 PageID #: 86676

escrow agent in connection with the Settlement Fund as set forth in the Settlement Agreement;

13. all proceedings against Settling Defendants, except those proceedings provided for or required by the Settlement Agreement, are stayed; and

14. Plaintiffs and members of the class are preliminarily enjoined from the initiation, commencement or prosecution of any Released Claim against any of the Settling Defendants or Gerald Bos ("Bos") (collectively "Released Parties").

## BACKGROUND

*Plaintiffs' Claims*. Plaintiffs brought a class action alleging Defendants unlawfully conspired to refuse to compete for the purchase of raw Grade A milk produced, marketed and processed in the Southeast; restricted farmers' access to raw Grade A milk bottling plants in the Southeast; eliminated and stifled competition from cooperatives and Grade A milk bottlers; monopsonized and monopolized raw Grade A milk and milk marketing services in the Southeast; and engaged in other unlawful activities designed to fix, stabilize and depress the prices received by Southeast dairy farmers for their raw Grade A milk. Plaintiffs contend Defendants' actions violate Sections 1 and 2 of the Sherman Act. *See* 15 U.S.C. §§ 1 and 2. Defendants deny they violated the Sherman Act as alleged by Plaintiffs.

*Description of the Litigation and Mediation*. The initial complaints in this matter were filed on July 5, 2007. Since then, the parties engaged in over five and a half years of intensive litigation. Voluminous written discovery requests were served on the parties and third parties. Millions of pages of documents were produced and reviewed. More than 150 depositions were taken by the parties. Dozens of motions to compel and other similar discovery disputes were litigated before Magistrate Judge Inman and this Court.

Class certification was equally hard fought. Plaintiffs moved for class certification on May 1,

2009, supported by a fact-intensive memorandum and the opinions of three experts. Defendants opposed class certification with exhaustive briefing and expert opinion. The Court certified the class, with two subclasses, on September 7, 2010, and re-certified the DFA Subclass on June 1, 2012. During that time, Defendants twice moved to decertify the class, and twice petitioned the Sixth Circuit for interlocutory appeal of class certification.

The intensity of litigation increased as the trial dates approached. Defendants filed six summary judgment motions supported by extensive statements of fact. Plaintiffs opposed each motion with equally extensive briefs and statements of fact. The Court dismissed Bos on summary judgment. (*See* 7/14/11 Order, Dkt. 1639.) The parties also filed eight wide-ranging *Daubert* motions, and four additional objections to the Magistrate's rulings on those motions. In preparation for trial, the parties twice prepared and exchanged trial exhibits lists (totaling more than 5,000 exhibits) and deposition designations (covering more than 100 depositions). Nearly 70 motions *in limine* were submitted to the Court and days of oral arguments were heard. In short, the parties vigorously contested every aspect of this litigation for more than five years as reflected by the 1,900-plus entries on the Court's docket.

The parties also engaged in mediation throughout the litigation. The Court appointed M.J. Michael Cody as mediator in July 2008. Since then, the parties diligently participated in mediation activities with Attorney General Cody, including multiple meetings in Washington, D.C. and many telephone calls and email exchanges, as reflected in the 17 mediation reports submitted to the Court during the past four years. These efforts, plus numerous additional meetings between the parties and their counsel, continued before, during, and after, the Court's recent order for the parties to mediate. (*See* 9/20/12 Order, Dkt. No. 1906.)

***The Proposed Settlement Terms***. Plaintiffs and Settling Defendants agree that Settling

Defendants will make settlement payments totaling $158,600,000, consisting of two payment forms. First, Settling Defendants will pay $140,000,000 into a settlement fund within 15 days of the Court's preliminary approval of the proposed Settlement. (*See* Ex. B, Agreement at ¶ 7.1.) Second, Settling Defendants will pay $9,300,000 into the settlement fund escrow account in 2014 and 2015, which will guarantee Settling Defendants' promise to increase uniform prices payable to farmers in Orders 5 and 7 by at least $9,300,000 per each of those years. (*See id.* at ¶ 7.2.) If uniform prices do not increase by at least $9,300,000 per each year, funds will be disbursed for payment to the class members in proportion to the shortfall. (*See id.* at ¶ 7.2(d).)

Plaintiffs and Settling Defendants also agree to implement changes to how they conduct their business in the Southeast. Pursuant to the Settlement Agreement:

- DFA will increase Class I utilization by reducing or eliminating milk shipped to one or more facilities in Orders 5 and 7 where milk is currently processed for Class III usage, pursuant to Settling Defendants' guarantee to increase uniform prices in those Orders by $9.3 million per year. (*See id.* at ¶ 7.2(a)-(c).)

- DFA will remove monetary penalties for cancellation of full-supply agreements for Country Delite in Nashville and Ryan Foods in Murray.[1] (*See id.* at ¶ 7.4(a).) Also, DFA will not, during the term of the Agreement, enter into any other full-supply agreements with bottling plants in Orders 5 or 7. (*See id.*)

- In addition to all discovery materials previously made public, Settling Defendants agree to release the materials previously agreed in filings at Docket Nos. 1829 and 1848. (*See id.* at ¶ 7.4(b).)

- DFA will insert the following language in membership agreements for Orders 5 and 7 members: "However, this Agreement may be terminated by either party during the ninety (90) day period immediately prior to the Anniversary Date by giving at least thirty (30) days written notice to the other party. The termination will be effective on the Anniversary Date unless otherwise modified, at the request of the member, for a period not to exceed fifteen days after the

---

[1] DFA retains the right to renew its existing full-supply agreements with bottling plants, which DFA estimates to cover approximately 30% of the bottling plant capacity in Orders 5 and 7. (*See* Ex. B, Agreement at ¶ 7.4(a).)

6

Anniversary Date to accommodate members' particular milk marketing needs." (*See id.* at ¶ 7.4(c).)

- DFA will reconfigure checks for Orders 5 and 7 members to reflect revenues received/proceeds available to pay, agency and cooperative deductions, each shown as an average per hundredweight of milk, and the individual member's applicable premiums, incentive payments, and mailbox price. Also, the checks will show the average Federal Order blend price for each member's pay zone. (*See id.* at ¶ 7.4(d).)

- DFA financial reports will be prepared in accordance with generally accepted accounting principles (*see id.* at ¶ 7.4(e)), and DFA will be audited by a nationally-recognized accounting firm (*see id.* at ¶ 7.4(e)(vi)).

- DFA senior management and Audit Committee members will affirmatively represent they are responsible for the preparation, integrity and accuracy of DFA's annual financial report. (*See id.* at ¶ 7.4(e)(vii).)

- DFA will post on its member-only website an annual disclosure of all material related-party transactions, specifically broken out and identified by transaction. (*See id.* at ¶ 7.4(e)(iii).)

- At its annual meeting, DFA will disclose to its delegates all material related-party transactions (*see* above) as well as DFA's financial results from its participation in joint ventures and off-balance sheet transactions, specifically broken out and identified by transaction. (*See id.* at ¶¶ 7.4(e)(iii) and (v).)

- DFA will disclose the identity of the members of its board of directors and its committees and their generally applicable *per diem* payment rate compensation. (*See id.* at ¶ 7.4(e)(ii).)

- DFA senior executive management and board members will execute annual conflict of interest certifications, which will be subject to review by DFA's Audit Committee and a report by the Committee at DFA's annual meeting. (*See id.* at ¶ 7.4(e)(iv).)

- DFA will facilitate a vote by its delegates on resolutions considering whether: (1) DFA should annually disclose its top five senior executives' compensation and incentives; (2) DFA members should be allowed to opt out of DFA's block vote; and (3) delegates and candidates to be delegates may obtain a list of DFA members in their districts. For each resolution, DFA's CEO will provide a neutral presentation as to the pros and cons as part of DFA's communications to delegates regarding its annual meeting. In addition, DFA's Southeast Area Council will provide to its members the text of the CEO's pros and cons as well as the names and contact information for the council member and delegate from each member's district who will be attending the annual meeting at which the resolutions will be considered. (*See id.* at ¶¶ 7.4(e)(i), 7.4(f), and 7.4(g).)

- Compliance with the Agreement will be monitored by DFA's Audit Committee, and the

Committee will report its views to the delegates at DFA's annual meeting. (*See id.* at ¶ 7.4(h).)

In exchange for the monetary relief and conduct terms, class members will release the Settling Defendants and Bos of any claims that have been asserted, or could have been asserted, arising out of or relating in any way to any conduct alleged in the Complaint. (*See id.* ¶¶ at 6.1-6.2.) The Agreement, however, does not release claims of class members who timely and validly requested exclusion from the class, unless they are allowed to opt back in by order of the Court. (*See id.* ¶ at 9.1.)[2]

## I. THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT BECAUSE IT IS SUFFICIENTLY FAIR AND REASONABLE FOR THE CLASS TO BE NOTIFIED OF THE AGREEMENT

Preliminary approval "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Directors,* 616 F.2d 305, 314 (7th Cir. 1980) (footnote omitted). Accordingly, on preliminary approval, the Court's role is to "evaluate whether the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Hyland v. HomeServs. of Am., Inc*., 2012 U.S. Dist. LEXIS 4818, at *1, **9-10 (W.D. Ky. Jan. 17, 2012) (quoting *In re Nasdaq Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). In deciding whether to approve a settlement, courts have recognized a strong public interest in favor of settling class action suits. *See Williams v. Vukovich,* 720 F.2d 909, 923 (6th Cir. 1983).

---

[2] In order to resolve the greatest number of potential claims, the Settlement Agreement permits class members who previously opted out of the class to apply to the Court for reinstatement to the class. (*See* Ex. B, Agreement at ¶ 4.3.)

### A. The Proposed Settlement Resulted from Vigorous, Arm's Length Negotiations Between Experienced and Capable Counsel

Vigorous arm's-length negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e), and the recommendation to settlement resulting from such negotiations are entitled to deference from the Court. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 375 (S.D. Ohio 2006) ("The Court gives significant weight to the belief of experienced counsel that the settlement is in the best interest of the class … [where] the settlement was non-collusive and [was] reached through arms-length negotiation"). Such deference is especially appropriate after the parties have engaged in thorough fact-finding and discovery. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 73 (D. Mass. 2005).

The proposed Settlement was reached after the completion of extended discovery conducted by able counsel for both parties. The class was represented by counsel with extensive experience both prosecuting and defending complex antitrust class actions, who had gained a deep understanding of the facts and legal issues of the case during five years of litigation. Settling Defendants were similarly represented by talented and knowledgeable counsel with significant experience defending complex cases. These facts weigh in favor of preliminary approval. *See In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 526 (E.D. Mich. 2003) (finding that extensive discovery conducted by counsel weighed in favor of approving settlement).

The proposed Settlement also resulted from intensive, arm's-length negotiations. The Agreement arose only after extended negotiations involving counsel representing Plaintiffs and Defendants. The proposed Settlement also was achieved within a Court-ordered mediation process that has been ongoing for several years. The parties' mediation was aided and closely monitored by

Attorney General Cody. Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt its fairness. This also weighs in favor of preliminary approval. *See id*. at 530 (fact that settlement arose after the "Plaintiff … and Defendants [engaged] in a mediation process that consumed almost one year" supported approval).

In addition, experienced counsel and class representatives recommend the proposed Settlement. *See Vukovich,* 720 F.2d at 922-23 ("The court should defer to the judgment of experience counsel who has competently evaluated the strength of his proofs.") Here, counsel for the subclasses, who are well qualified with extensive experience litigating and settling antitrust actions, and 14 of the 15 class representatives,[3] who are experienced Southeast dairy farmers, collectively determined that the proposed Settlement is in the best interest of subclass members because the Settlement would provide immediate and substantial cash benefits along with structural relief, and avoid the inherent risks of trial and subsequent appeals. This endorsement of the proposed Settlement weighs heavily in favor of the Court's preliminary approval. *See id.*

### B. The Proposed Settlement Is Within the Range of Possible Approval By the Court as Fair, Reasonable and Adequate

In deciding whether to grant preliminary approval, the Court considers whether the settlement falls into the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final settlement

---

[3] Plaintiffs William C. Frazier and Branson C. McCain d/b/a McCain Dairy have not consented to the proposed Settlement. This is not an impediment to preliminary approval because "class representative assent is neither a sufficient nor a necessary condition to judicial approval of a class settlement." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 931-32 (E.D. Mich. 2007). Rather, class settlements are judged on whether they are in the best interests of the class as a whole. *See id.* Accordingly, the objection to a settlement by named representatives is not a ground to reject it. *See Laskey v. UAW*, 638 F.2d 954, 957 (6th Cir. 1981).

approval. *See Manual for Complex Litig*. at § 13.14 ("First, the [court] reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing"). "The determination of what constitutes a 'reasonable' settlement is not susceptible of a mathematical equation yielding a particularized sum. Rather, in any case, there is a range of reasonableness with respect to a settlement." *Broadwing*, 252 F.R.D. at 373.[4]

A recovery of $158,600,000 from Settling Defendants is an excellent result for the class under any metric. This recovery is a substantial amount in absolute terms, even for an antitrust litigation. *See, e.g., Relafen*, 231 F.R.D. at 64 (approving $75 million settlement as a significant recovery). This recovery also is a significant percentage of the total damages Plaintiffs can claim. Dr. Gordon Rausser's most recent opinion estimated the class has sustained approximately $415,000,000 in damages. (*See* 12/5/12 Rausser Supp. Damages Rpt. at 12.) The proposed Settlement allows class members to recover nearly 40% of the total amount of damages claimed on behalf of the class[5] – and over 70% of the damages when combined with the prior settlements with Dean ($140,000,000) and SMA/Baird ($5,000,000). Such a recovery is well within the range approved by courts. *See Relafen*, 231 F.R.D. at 64 (noting settlements obtaining 26% recovery are reasonable); *Menkes v. Stolt-Nielsen S.A.*, 2010 U.S. Dist. LEXIS 94184, at *1, **63-66 (D. Conn. Sept. 10, 2010) (preliminarily approving representing approximately eight percent of the maximum recoverable class damages).

---

[4] Factors considered when determining, on final approval, whether the settlement is fair, reasonable and adequate include: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW v. Gen. Motors Corp.*, 497 F.3d, 615, 631 (6th Cir. 2007).

Also, the proposed Settlement Agreement's conduct terms provide significant benefits to class members. Pursuant to the Agreement, Settling Defendants: Increase Class I utilization and uniform milk prices payable to Southeast farmers; restore farmer access to bottling plants by removing cancellation penalties on certain DFA full-supply agreements and by DFA not entering any such new agreements in the Southeast during the Agreement's term; improve Southeast farmer ability to change markets by extending the notice period in DFA's membership agreements; enhance price disclosure by adding several milk price and marketing expense fields to DFA's Southeast member milk checks; boost transparency through wide-ranging audit and disclosure commitments by DFA; and facilitate DFA delegate votes on additional meaningful changes to conduct. (*See* Ex. B, Agreement at ¶ 7.4.) These conduct terms, combined with the significant monetary payment, heavily weigh in favor of preliminarily approving the proposed Settlement. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 511 (E.D.N.Y. 2003) (approving settlement, in part, based on injunctive relief regarding credit card issuers' practices); *White v. NFL*, 836 F. Supp. 1458, 1479 (D. Minn. 1993) (approving antitrust settlement with changes to NFL rules which benefitted players).

C.  **The Proposed Settlement Has No Obvious Deficiencies and Grants No Preferential Treatment**

The proposed Settlement should be preliminarily approved because it has no obvious deficiencies. *See Hyland*, 2012 U.S. Dist. LEXIS 4818, at **9-10. To the contrary, it is particularly favorable to the class members given the risks of taking antitrust cases to trial. Antitrust cases are notoriously difficult to prosecute: "Suffice it to say, courts have found that antitrust actions generally

---

[5] In evaluating the settlement in terms of the overall claimed damages in an antitrust suit, it is not necessary for the Court to consider the possibility of treble damages. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009).

present complex, novel issues, and that plaintiffs can rarely guarantee recovery at trial." *Columbus Drywall and Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007). This case would be no less complex or risky to try.[6] And, even if Plaintiffs were to prevail against Settling Defendants at trial, it is possible Plaintiffs would not be able to collect more than the $158,600,000 obtained through the proposed Settlement, and it is likely the class would not be able to obtain the important conduct terms made available in the proposed Settlement. Given these risks, balanced against the valuable benefits, the proposed Settlement is not obviously deficient. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("Based on this risk and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient…").

The proposed Settlement also should be preliminarily approved because it grants no preferential treatment to class representatives or segments of the class. *See Hyland*, 2012 U.S. Dist. LEXIS 4818, at \*\*9-10. The proposed Settlement's compensatory damages would be distributed to all class members according to each class member's volume of milk production and sales. This *pro rata* treatment of class members is "fundamentally fair." *In re Airline Ticket Com'n Antitrust Litig.*, 953 F. Supp. 280, 284-85 (D. Minn. 1997) (approving *pro rata* distribution of settlement fund based on number of alleged fixed-price product as "cost-effective, simple and fundamentally fair").

Likewise, the proposed Settlement grants no preferential treatment to the DFA or Independent Farmer Subclasses. The proposed Settlement's compensatory damages would be distributed to members of the DFA and Independent Farmer Subclasses according to the same *pro rata* formula. This

---

[6] The Court, for example, previously expressed concern with Plaintiffs' ability to prove the relevant geographic market (*see* 7/14/11 Order at 21, Dkt. 1639), and the Court's determination that Defendants' alleged acts are not *per se* unlawful may put Plaintiffs to the increased burden of proving a rule of reason case (*see id.* at 16).

distribution of funds on the same basis to members of both Subclasses is consistent with Dr. Rausser's opinion that members of both Subclasses were equally harmed (*see* 6/1/12 Order at 4-5, Dkt. 1878) (reviewing Dr. Rausser's opinion), which further confirms there is no preferential treatment, *see, e.g., Cardizem CD*, 218 F.R.D. at 531 (approving allocation of settlement funds consistent with expert damages calculation).

## II. THE COURT SHOULD APPROVE THE PROPOSED NOTICES AND NOTICE PLAN

The Court should approve Plaintiffs' proposed Notice and Summary Notice. (*See* Exs. C and D.) Plaintiffs propose to disseminate notices in the same fashion as previously approved for the Dean and SMA/Baird settlements (*see* 2/14/12 Order at 3-4, Dkt. 1782), modified to reflect the specific terms of the proposed Settlement and to permit class members to rely on their claim forms submitted to Rust for the Dean and SMA/Baird settlements.[7] The previously-approved proposed notices, with minor modifications, continue to satisfy Rule 23 because they inform class members (1) of the nature of the pending litigation, (2) of the settlement's general terms and effects upon class members, (3) that complete information is available from the court files and information is available on the class website, and (4) that any class member may appear and be heard at the Fairness Hearing.[8] *See In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984) (upholding notice that "described the terms

---

[7] Settling Defendants reviewed and approved the proposed Notices.

[8] Plaintiffs' proposed Notice gives class members the option of relying on claim forms previously submitted for the Dean and SMA/Baird settlements, instead of requiring class members to re-compile and re-submit largely duplicative information, which will minimize settlement administration time and expense. The proposed Notice allows class members to submit new claim forms if they so choose (and some may do so to include milk production since submitting prior claim). Other courts have approved such a process. (*See, e.g.,* 4/13/09 Settlement Notice, *In re HealthSouth Corp. Sec. Litig.*, No. cv-03-BE-1500 (S.D. Ala.) (giving claimants option of relying on previously-submitted claim forms or providing updated claim forms).)

14
Case 2:08-md-01000   Document 1922-1   Filed 01/21/13   Page 16 of 20   PageID #: 86687

of the settlement, the reasons for [class representatives' decision to settle], the legal effect of the settlement and the rights of the [class members] to voice their objections"); *see also* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* at § 11.53 (explaining requirements of class settlement notices, and collecting authorities).

The Court also should approve Plaintiffs' notice plan. Plaintiffs propose to disseminate notice of the proposed Settlement according to the same plan approved by the Court for the Dean and SMA/Baird settlements. (*See* 2/14/12 Order at 4, Dkt. 1782.) Specifically, Plaintiffs propose to (1) send the Notice by U.S. Mail to the 7,452 addresses of class members compiled by Plaintiffs and refined by Rust; (2) publish the Summary Notice in next available issue of *Hoard's Dairyman*, a dairy farm trade magazine with a circulation of more than 68,000; and (3) post the notices on *www.SoutheastDairyClass.com*, the website maintained by Rust and referenced in the notices. This distribution plan, previously approved for Dean and SMA/Baird settlements, continues to satisfy Rule 23 and due process requirements. (*See, e.g.,* 1/19/11 Order at 20, Dkt. 1255 (explaining "notice to class members whose addresses are known by United States mail is the "best notice practicable").) With the Court's permission, the Notice and Summary Notice – as well as this motion – would also be posted on the website maintained by Rust and referenced in the notices.

## III. PROPOSED DATES FOR NOTICES, SETTLEMENT ADMINISTRATION AND FAIRNESS HEARING

Plaintiffs propose that the Court set deadlines for dissemination of Notice, settlement administration and the Fairness Hearing according to the same timeline used for the Dean and SMA/Baird settlements:

| | |
|---|---|
| Notice to class by U.S. Mail | 10 days after entry of the Order granting preliminary approval |
| Summary Notice published | As soon as practicable given publication deadlines |
| Last day for potential class members to request permission to opt back in to the class | 14 days before Fairness Hearing |
| Last day for class members to object to the Settlement | 14 days before Fairness Hearing |
| Last day for class members to return claims forms (including those potential members seeking permission to opt back in) | 14 days before Fairness Hearing |
| Class counsel file motion for final approval and response to any objections filed | 7 business days before Fairness Hearing |
| Fairness Hearing | April 3, 2013 |

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the proposed Settlement be preliminarily approved as provided herein.

Dated: January 21, 2013

16
Case 2:08-md-01000   Document 1922-1   Filed 01/21/13   Page 18 of 20   PageID #: 86689

Respectfully submitted,

| | |
|---|---|
| /s/ Gary E. Brewer | /s/ Robert G. Abrams |

Gary E. Brewer, Esq.
BREWER & TERRY, P.C.
1702 W. Andrew Johnson Hwy.
Morristown, TN 37816
(423) 587-2730
robin@brewerandterry.com

*Counsel for DFA Subclass*

Thomas C. Jessee, Esq.
JESSEE & JESSEE
412 E. Unaka Ave.
Johnson City, TN 37601
Tel: (423) 928-7175
jjlaw@jesseeandjessee.com

*Liaison Counsel for Dairy Farmer Class*

Robert G. Abrams, Esq.
Robert J. Brookhiser, Esq.
Gregory J. Commins, Jr., Esq.
Terry L. Sullivan, Esq.
Danyll W. Foix, Esq.
BAKER HOSTETLER LLP
1050 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
rabrams@bakerlaw.com
rbrookhiser@bakerlaw.com
gcommins@bakerlaw.com
tsullivan@bakerlaw.com
dfoix@bakerlaw.com

*Counsel for Independent Farmer Subclass*

## CERTIFICATE OF SERVICE

      I certify that on the 21st day of January 2013, a true and correct copy of ***Dairy Farmer Plaintiffs' Memorandum in Support of Motion for Expedited Preliminary Approval of Proposed Settlement with Defendants Dairy Farmers of America, Inc., Dairy Marketing Services, LLC, Mid-Am Capital LLC, National Dairy Holdings, LP, and Gary Haman*** was served by operation of the electronic filing system of the U.S. District Court for the Eastern District of Tennessee upon all counsel who have consented to receive notice of filings in the matters styled *In re Southeastern Milk Antitrust Litigation*, MDL No. 1899.

                                                 /s/ Robert G. Abrams
                                                  Robert G. Abrams