# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

| | |
|---|---|
| **IN RE SOUTHEASTERN MILK ANTITRUST LITIGATION** ) ) ) ) ) | **CASE NO. 2:08-MD-01000** <br><br> **JUDGE GREER** |
| **THIS DOCUMENT RELATES TO:** ) ) | |
| *Sweetwater Valley Farm, Inc., et al. v. Dean Foods Company, et al.*, **Case No. 2:07-CV-208** ) ) ) ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into as of this 17th day of January, 2013 by and between Defendants Dairy Farmers of America, Inc. ("DFA"), National Dairy Holdings, LP, ("NDH"), Dairy Marketing Services, LLC, Mid-Am Capital LLC, and Gary Hanman (collectively, as defined in Paragraph 1.22, "Settling Defendants") and Plaintiffs Sweetwater Valley Farm, Inc., Barbara Arwood and Victor Arwood d/b/a VBA Dairy, Jeffrey P. Bender, Randel E. Davis, Farrar & Farrar Dairy, Inc., Fred Jaques, John M. Moore, D.L. Robey Farms, Robert D. Stoots, Virgil C. Willie, Thomas R. Watson, James D. Baisley and Eva C. Baisley d/b/a Baisley Farms, Stephen J. Cornett, Payne Dairy, and Jerry L. Holmes (collectively, as defined in Paragraph 1.15, "Plaintiffs"), on behalf of themselves and all members of the Class (defined below).

WHEREAS, Plaintiffs are prosecuting the above-captioned action on their own behalf and on behalf of the Class against the Settling Defendants;

WHEREAS, Plaintiffs have alleged in their complaints and amended complaints (collectively, and with any other pleading filed in this matter or any consolidated matter, the

1

"Complaint") that the Settling Defendants during the Class Period (defined below) engaged in certain conduct in violation of, among other things, the Sherman Act, 15 U.S.C. §§ 1 and 2, which caused the Plaintiffs and members of the Class to incur damages as a result of such conduct, for which Plaintiffs and the Class seek an award of money damages and injunctive relief;

WHEREAS, the Settling Defendants deny each and every one of Plaintiffs' allegations of unlawful conduct, have not conceded or admitted any liability, and have asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Complaint and have concluded, after carefully considering the facts and circumstances of the Complaint, the risks associated with continued litigation, and the applicable law, that a settlement with the Settling Defendants according to the terms and conditions set forth below (the "Settlement") is in the best interest of Plaintiffs and the Class;

WHEREAS, the Settling Defendants, despite their belief that they are not liable for the claims asserted and that they have meritorious defenses to the claims alleged, have nevertheless concluded that they will enter into this Agreement solely to avoid the further expense, inconvenience, and burden of protracted litigation, and the distraction and diversion of its personnel and resources, and thereby to put to rest this controversy, and to avoid the risks inherent in uncertain, complex litigation;

WHEREAS, Plaintiffs and the Settling Defendants agree that this Agreement shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Settling Defendants or of the truth of any of the claims or allegations in the Complaint;

2

WHEREAS, arms-length settlement negotiations have taken place between counsel for the Plaintiffs, on behalf of Plaintiffs and the Class, and counsel for the Settling Defendants;

WHEREAS, Settling Defendants and the Plaintiffs have each had the full opportunity to examine the facts and circumstances surrounding their respective decisions to accept the terms of this Agreement and have not relied upon any representations (or the lack thereof) not set forth in this Agreement itself concerning the circumstances leading to this Agreement; and

WHEREAS, this Agreement, which is subject to the preliminary and final approval of the Court, sets forth all of the terms and conditions of the agreement between the Settling Defendants and the Plaintiffs, on behalf of themselves and the Class;

NOW, THEREFORE, in consideration of the covenants, agreements and releases set forth herein and for other good and valuable consideration, it is agreed by and among the undersigned, on behalf of the Settling Defendants and on behalf of the Plaintiffs and the Class, that the Action (defined below) and all claims of the Plaintiffs and the Class against the Settling Defendants be settled, compromised and dismissed on the merits and with prejudice, without costs as to Plaintiffs, the Class, or the Settling Defendants, subject to the approval of the Court, on the following terms and conditions.

1. **Definitions**

    1.1. "Actions" means the consolidated class action captioned as *Sweetwater Valley Farm, Inc., et al. v. Dean Foods Company, et al.*, 2:07-CV-208 (E.D. Tenn.), as well as all prior class actions consolidated therewith, including *Aker v. Dean Foods Company, et al.*, 2:07-CV-248 (E.D. Tenn.), *Farrar et al. v. Dean Foods Company, et al.*, 2:07-CV-00272 (E.D. Tenn.), *Baisley et al. v. Dean Foods Company et al.*, 2:08-CV-00014 (E.D. Tenn.), *Scott Dairy Farm, Inc., et al. v.*

3

*Dean Foods Company, et al.*, Case No. 2:07-CV-208, and *Ernest Groseclose & Sons, Inc. et al. v. Dean Foods Company et al.*, 2:08-CV-00053 (E.D. Tenn.).

1.2. "Claims Administrator" means the entity selected by Class Counsel to administer the Settlement and, in particular, the claims process in this matter.

1.3. "Class" means the two subclasses certified by the Court in its Memorandum Opinion and Order dated September 7, 2010 (Doc. 934), which included the Independent Dairy Farmer and Independent Cooperative Member Subclass and the DFA Member Dairy Farmer Subclass, which subclass was recertified in the Court's Memorandum and Opinion dated June 1, 2012 (Doc. 1878).

1.4. "Class Counsel" means the law firms of Baker Hostetler LLP, 1050 Connecticut Avenue, NW, Suite 1100, Washington, D.C. 20036 and Brewer & Terry, P.C., 1702 West Andrew Jackson Highway, Morristown, TN 37806.

1.5. "Class Member" means a Person who falls within the Class definition and has not exercised his right to be excluded from the Independent Dairy Farmer and Independent Cooperative Member Subclass as of June 17, 2011 or the DFA Member Dairy Farmer Subclass as of July 8, 2012 and been identified in Plaintiffs' July 20, 2012 report to the Court (Doc. 1919) (the "Exclusion Dates"). "Class Member" also means a Person who falls within the Class definition and exercised his right to be excluded from the Class as of the Exclusion Dates but is permitted by order of the Court to opt back into the Class.

1.6. "Class Period" means the period from January 1, 2001 through the present.

1.7. "Court" means the United States District Court for the Eastern District of Tennessee.

4

$\mathbb{D} \, \mathcal{E} \mathcal{E}$

1.8. "Distribution Plan" shall have the meaning set forth in Paragraph 8.4 hereto.

1.9. "Effective Date" means the earliest date on which all of the events and conditions specified in Paragraph 5.1 herein have occurred or have been met.

1.10. "Fairness Hearing" shall have the meaning set forth in Paragraph 2.1 hereto.

1.11. "FSA" refers to a full-supply agreement and means an agreement to assume the responsibility for supplying all of a buyer's requirements for Grade A milk at a buyer's processing plant.

1.12. "Judgment" means final order of judgment, dismissal, and approval of the Settlement.

1.13. "Parties" means Plaintiffs, the Class, and the Settling Defendants.

1.14. "Person" means an individual or an entity.

1.15. "Plaintiffs" means the named plaintiffs Sweetwater Valley Farm, Inc., Barbara Arwood and Victor Arwood d/b/a VBA Dairy, Jeffrey P. Bender, Randel E. Davis, Farrar & Farrar Dairy, Inc., Fred Jaques, John M. Moore, D.L. Robey Farms, Robert D. Stoots, Virgil C. Willie, Thomas R. Watson, James D. Baisley and Eva C. Baisley d/b/a Baisley Farms, Stephen J. Cornett, Payne Dairy, and Jerry L. Holmes, and any other plaintiffs designated by the Court as class representatives, individually and on behalf of the Class.

1.16. "Preliminary Approval Order" means an order to be entered by the Court preliminarily approving the Settlement.

1.17. "Released Claims" means all claims that were asserted or that could have been asserted in the Complaint as to the Released Parties, as defined in Paragraph 1.18 below. Released Claims includes any and all claims regardless of their nature

5

from January 1, 1994 through and including the Effective Date arising out of, associated with, or related to the facts or circumstances alleged in the Complaint, including but not limited to Settling Defendants' sale, transportation and marketing of raw Grade A milk, or their purchase of, or failure or refusal to purchase, raw Grade A milk that was produced in and pooled on Federal Milk Marketing Order 5 ("Order 5") and/or Federal Milk Marketing Order 7 ("Order 7"), and any other person's sale, transportation and marketing of, or its purchase of, or failure or refusal to purchase, raw Grade A milk that was produced in and pooled on Orders 5 and/or 7. Released Claims includes all claims that were asserted or that could have been asserted arising out of or relating in any way to any conduct alleged in the Complaint, regardless of whether those claims arise from common law theories of tort or contract, including without limitation breach of contract and breach of fiduciary duty, or theories under federal, state, or other statute, law, rule, or regulation.

1.18. "Released Parties" means the Settling Defendants, their predecessors, successors, parents, subsidiaries and affiliates, representatives of any kind, all entities in which they have an ownership interest, shareholders, partners, members, owners of any kind, attorneys, and any and all past and present officers, directors, employees, managing agents, and controlling persons of such entities, including any past or present officers of these Parties originally named as a Defendant, and National Dairy LLC and its successors, but not any other Defendant.

1.19. "Releasing Parties" means, individually and collectively, Plaintiffs and all Class Members on behalf of themselves and any Person claiming by or through them as

6

an heir, administrator, devisee, predecessor, successor, parent, subsidiary, representative of any kind, all entities in which they have an ownership interest, shareholder, partner, director, member, owner of any kind, affiliate, assignee, agent, employee, contractor, attorney, or insurer.

1.20. "Settlement Amount" shall have the meaning set forth in Paragraph 7.1 hereto.

1.21. "Settlement Fund" shall have the meaning set forth in Paragraph 7.1 hereto.

1.22. "Settling Defendants" means Dairy Farmers of America, Inc., National Dairy Holdings, LP, Dairy Marketing Services, LLC, Mid-Am Capital LLC, and Gary Hanman, or their predecessors, successors, parents, subsidiaries and affiliates, representatives of any kind, heirs, administrators and devisees, all entities in which they have an ownership interest, shareholders, partners, members, owners of any kind, attorneys, and any and all past and present officers, directors, employees, managing agents, and controlling persons of such entities, but not any other Defendant.

1.23. "Term of the Agreement" shall mean the period from the Effective Date, as defined in Paragraph 1.9 above, through and including December 31, 2015.

2. **Motion for Preliminary Approval**

2.1. Within one week after the complete execution of this Agreement, Plaintiffs shall file with the Court a motion, which shall not be opposed by the Settling Defendants, requesting entry of a Preliminary Approval Order, providing for, *inter alia*:

(a). Preliminary approval of this Agreement as fair, reasonable and adequate and in the best interests of the Class, considering all relevant risks and

7

SRK R9A
N SS KYB

factors of litigation;

(b).     Approval of the form and manner of notice described in Section 3 hereto;

(c).     Appointment of a Claims Administrator;

(d).     A determination that no additional opt-out period is warranted or required by Rule 23(e)(4) of the Federal Rules of Civil Procedure;

(e).     The scheduling of a hearing (the "Fairness Hearing") to consider (i) whether this Agreement should be approved as fair, reasonable, and adequate to, and in the best interests of, the Class, and whether Judgment should be entered dismissing the Released Claims on the merits and with prejudice; (ii) whether to approve any application by Class Counsel for an award of attorneys' fees and payment of costs and expenses; and (iii) whether to approve any application for payment of incentive awards to Plaintiffs;

(f).     The date by which any Class Member may serve written objections to this Agreement or to any application by Class Counsel for attorneys' fees and expenses, which date shall, subject to the Court's approval, be fourteen (14) days prior to the Fairness Hearing;

(g).     A stay of all further pretrial and trial proceedings against the Settling Defendants; and

(h).     An injunction against the initiation, commencement, or prosecution of any Released Claim by any of the Releasing Parties.

2.2.     Upon the filing of the motion requesting entry of a Preliminary Approval Order, the Settling Defendants will not participate in further briefing in connection with

8

the approval of this Agreement or as otherwise specified herein.

**3. Notice to Class Members**

    3.1.    Plaintiffs shall develop, after consultation with the Settling Defendants and the Claims Administrator, a proposed plan by which to notify the Class of the Settlement. The proposed notice program shall include a proposed form of notice, which shall be agreed upon by the Parties, and which shall be subject to Court approval. Plaintiffs shall submit their proposed notice program to the Court for approval at the same time Plaintiffs file their motion requesting entry of a Preliminary Approval Order as described above in Paragraph 2.1.

    3.2.    In accordance with the requirements of Rule 23 of the Federal Rules of Civil Procedure and Due Process, the notice program shall identify and individually notify, to the extent practicable, each member of the Class reasonably ascertainable from records produced by the Settling Defendants or otherwise reasonably available.

In order to provide notice of the Settlement to those individuals who may not be capable of being identified for purposes of providing individual notice, publication notice, to the extent recommended by the Claims Administrator and ordered by the Court shall also be provided.

**4. Fairness Hearing**

    4.1.    At the Fairness Hearing, Plaintiffs shall seek entry of a Judgment, which shall not be opposed by the Settling Defendants, *inter alia*:

        (a).    Finally approving this Agreement and its terms as being fair, reasonable, and adequate, and in the best interest of the Class, within the meaning of

9

Rule 23 of the Federal rules of Civil Procedure, and directing its consummation according to its terms;

(b). Determining that the notices to the Class constituted, under the circumstances, the most effective and practicable notice of this Agreement and the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all Persons entitled to receive notice;

(c). Ordering dismissal of the Action with prejudice and without payment of fees or costs by the Settling Defendants;

(d). Permanently barring and enjoining institution, commencement, or prosecution, by any of the Releasing Parties, of any action asserting any Released Claim against the Released Parties, in any local, state, federal, or other court or tribunal of any nation, or in any agency or other authority or arbitral or other forum wherever located;

(e). Providing that any Class Member who fails to object in the manner prescribed in this Agreement shall be deemed to have waived any objections to the Settlement or this Agreement and will forever be barred from making any such objections to this Agreement;

(f). Retaining exclusive jurisdiction over this Agreement, including the administration and consummation of this Agreement; and

(g). Determining pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing that the judgment of dismissal shall be final and entered forthwith.

4.2. Any Class Member who objects to the Settlement may appear at the Fairness

10

Hearing in person or through counsel, at its own expense, to present any evidence or argument with respect to the Settlement, to the extent permitted by the Court. However, no such Class Member shall be heard, and no papers, briefs, pleadings, or other documents shall be received and considered by the Court, unless such Class Member properly submits a written objection that includes (a) notice of intention to appear, (b) proof of membership in the Class, and (c) the specific grounds for the objection. The parties will request that the Court order that any written objection must be filed with the Court no later than fourteen (14) days prior to the date set for the Fairness Hearing, and mailed to Class Counsel and counsel for the Settling Defendants, received no later than fourteen (14) days prior to the date of the Fairness Hearing. Any Class Member who fails to object in the manner prescribed herein shall be deemed to have waived any objections to the Settlement and this Agreement and will forever be barred from making any such objections to the Settlement or this Agreement.

4.3. Any Person who timely requested exclusion from the Class, and who has not in his individual capacity sued in a separate lawsuit one or more of the Settling Defendants for the same conduct alleged in the Actions, may apply to the Court to be reinstated to the Class provided such application sets forth the reasons for seeking reinstatement and is received by the Claims Administrator at least fourteen (14) days prior to the date of the Fairness Hearing.

4.4. If this Agreement is finally approved by the Court in its current form, or in a form not materially different therefrom, the Parties agree not to take any appeal from entry of judgment. Final approval of this Agreement shall not be contingent upon

11

the Court making any particular award of attorney's fees, costs or expenses or any incentive award to Plaintiffs, and any order of the Court making or relating to such award shall not affect the approval or finality of this Agreement or the validity, effectiveness or enforceability of the releases set forth herein.

**5. Effective Date of Agreement**

    5.1. This Agreement shall become final and effective on the earliest date on which all of the following events and conditions have occurred or have been met:

        (a). No party has timely availed itself of any right to terminate this Agreement pursuant to Paragraph 11.1 herein;

        (b). The Court has entered the Judgment, following notice to the Class and the Fairness Hearing, finally approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and dismissing the Actions with prejudice as to all Class Members, and without costs; and

        (c). The time for appeal or to seek permission to appeal from the Judgment has expired or, if appealed, approval of this Agreement and the Judgment has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

**6. Release and Covenant Not To Sue**

    6.1. Upon the Effective Date, and in consideration of the Settlement Consideration

specified in Section 7 herein and for other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, each of the Releasing Parties shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, shall have covenanted not to sue any of the Released Parties with respect to all Released Claims, and shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claims against any of the Released Parties.

6.2.    Upon the Effective Date, each Plaintiff shall have expressly waived, and each of the Releasing Parties shall be deemed to have waived, and by operation of the Judgment shall have waived, any and all provisions, rights, and operation of the Judgment shall have waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any principle of common law or foreign law, that is similar, comparable, or equivalent in effect to California Civil Code § 1542 and § 20-7-11 of the South Dakota Codified Laws or that would otherwise act to limit the effectiveness or scope of the releases. Plaintiffs and the Releasing Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those that any of them or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or otherwise, but upon the Effective Date each Plaintiff shall expressly have, and, upon the Effective Date, each Releasing Party shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown,

13

suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, that could have been asserted with respect to the subject matter of the Released Claims. Plaintiffs acknowledge, and the Releasing Parties shall be deemed to have acknowledged, and by operation of the Judgment shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

## 7. Settlement Consideration

### Monetary Payment

7.1.    Defendants will pay an aggregate sum of one hundred forty million United States dollars ($140,000,000) (the "Settlement Amount") into an escrow account (the "Settlement Fund") within 15 days after the entry of the Preliminary Approval Order, with seventy million United States dollars ($70,000,000) allocated to Defendant DFA, fifty million United States dollars ($50,000,000) allocated to Defendant NDH, and twenty million United States dollars ($20,000,000) allocated to Defendant Mid-Am Capital. JPMorgan Chase Bank, National Association shall serve as the escrow agent (unless the parties agree upon another escrow agent), and the escrow account shall be established and administered in accordance with Section 8 hereof.

14

7.2. In addition to the Settlement Amount set forth in Paragraph 7.1, Settling Defendants agree to guarantee and/or pay an aggregate sum of eighteen million and six hundred thousand United States dollars ($18,600,000), which represents the benefit to Class Members of a 3.3 percent increase in the annual weighted average percentage of Class I utilization for Federal Milk Marketing Orders 5 and 7 (the "Class I Utilization Rate"), and thus the uniform prices for Federal Milk Marketing Orders 5 and 7, as follows:

(a). The Guarantee Period shall be two full calendar years, commencing on January 1, 2014, to allow for the necessary time to give notice to customers and make other arrangements to redirect significant volumes of raw milk. On or before the commencement of the Guarantee Period, Settling Defendants shall deposit nine million and three hundred thousand United States dollars ($9,300,000) into the Settlement Fund;

(b). Settling Defendants have unilaterally determined that the one practical way to increase the Class I Utilization Rate is by reducing or eliminating the milk shipped to one or more manufacturing facilities located in Federal Orders 5 and 7, which raw milk is currently processed for Class III usage;

(c). Settling Defendants represent that by, for example, reducing the volume of milk shipped to manufacturing facilities and processed for Class III use by approximately 340 million pounds of raw Grade A milk per year, the Class I Utilization Rate in Order 7 would have increased by approximately 3.3 percent, and that such an increase in utilization rates in both Federal Orders 5 and 7 would in turn have increased uniform prices to Class

15

SRK-RAT
DEE VOU

Members by $9.3 million per year;

(d).  To guarantee Settling Defendants' predicted 3.3% increase in the Class I
Utilization Rate and the associated $9.3 million per year increase of
uniform prices in Federal Milk Marketing Orders 5 and 7 is realized by the
Class, Settling Defendants agree, as noted above, to deposit $9.3 million
into the Settlement Fund. For purposes of evaluating whether the increase
in the Class I Utilization Rate meets the guaranteed increase, the following
methodology shall be used:

(i).  Sixty-seven point one percent (67.1%) shall be the Benchmark
Class I utilization rate, which is the weighted average percentage
of Class I utilization for Federal Milk Marketing Orders 5 and 7 for
calendar year 2012 (the "Benchmark") according to milk
utilizations reported by the USDA administrator offices for Orders
5 and 7 (the "Administrators");

(ii).  Following the Administrators' release of the milk utilizations for
calendar year 2014 and then again for calendar year 2015,
Plaintiffs shall calculate, in the same fashion as the Benchmark, the
Class I Utilization Rate for each of the twelve month periods
during the Guarantee Period. Plaintiffs shall further calculate, as
provided below, the amount, if any, of the $9.3 million in the
Settlement Fund to be disbursed to the Class if the Class I
Utilization Rates for those periods that do not exceed the
Benchmark by at least the guaranteed 3.3 percent;

16

(iii).    If the Class I Utilization Rate for calendar year 2014 exceeds the Benchmark by 3.3 percent or more, the $9.3 million in the Settlement Fund shall remain in the Settlement Fund and shall be credited to Settling Defendants for calendar year 2015. If the Class I Utilization Rate for calendar year 2015 exceeds the Benchmark by 3.3 percent or more, the $9.3 million in escrow shall be returned to Settling Defendants, and Settling Defendants shall have no further obligations pursuant to this section;

(iv).    If the Class I Utilization Rate for calendar year 2014 is less than the Benchmark, the full $9.3 million in the Settlement Fund shall be disbursed to the Class; in that case, Settling Defendants shall deposit, within five (5) business days, an additional $9.3 million into the Settlement Fund for the calendar year 2015 period. If the Class I Utilization Rate for calendar year 2015 is less than the Benchmark, the full $9.3 million in the Settlement Fund shall be disbursed to the Class. In no case, however, shall Settling Defendants' obligations under this section exceed $9.3 million per year for the two specified years of the Guarantee Period;

(v).    If the Class I Utilization Rate for calendar year 2014 is more than the Benchmark but does not exceed the Benchmark by at least 3.3 percent, Plaintiffs shall calculate the amount of the $9.3 million the Settlement Fund to be disbursed to the Class by calculating the percentage shortfall in the change in Class I Utilization Rates (1

17

minus actual increase in utilization/guaranteed increase), and multiplying that percentage shortfall by $9.3 million. For purposes of illustration, if the Class I Utilization Rate for a period were 69.3% - that is the actual increase was 2.2 percent, and not the guaranteed 3.3 per cent, then the amount disbursed from the Settlement Fund would be $3.1 million (percentage shortfall of 1 - 2.2/3.3 = .33;  .33 x $9,300,000 = $3,100,000).  Any amount disbursed from the Settlement Fund as a result of calendar year 2014 shall be replaced by Settling Defendants within five (5) business days so as to maintain $9.3 million in the Settlement Fund for calendar year 2015.  The same calculation shall be used for calendar year 2015, except any of the $9.3 million in the Settlement Fund amount not disbursed shall be returned to Settling Defendants;

(vi).   Any disbursements from the $9.3 million in the Settlement Fund shall be distributed to the Class in accordance with the Distribution Plan;

(vii).  Settling Defendants shall have 10 days, after Plaintiffs present their calculations under Paragraph 7.2(d)(v) above, to raise any objections to the calculations. Settling Defendants and Class Counsel shall seek to resolve any differences and to reach agreement concerning any calculations herein. If Plaintiffs and Settling Defendants are unable to agree to a calculation, then

18

Settling Defendants may apply to the Court pursuant to Paragraph 13.2 hereto for a determination of the calculation by the Court. Any such application to the Court must be made within 30 days of the presentation of the calculation by Plaintiffs to Settling Defendants. Plaintiffs' calculation shall become final and binding if no application to the Court has been made within 30 days of the presentation of the calculation by Plaintiffs to Settling Defendants. Any application to the Court concerning the calculations herein shall be strictly limited to a single brief on behalf of Settling Defendants of no more than 20 pages including exhibits and a single response brief by Plaintiffs of no more than 20 pages including exhibits.

7.3. The monetary relief described in paragraphs 7.1 through 7.2 shall be the sole monetary relief afforded to Plaintiffs and the Class. Settling Defendants will have no responsibility to make any payment other than the payments described in paragraphs 7.1 through 7.2.

7.4. Conduct elements.

(a). DFA agrees to remove the application of monetary penalties for the cancellation of the FSA for the Country Delite plant in Nashville, TN and the Ryan Foods plant in Murray, KY. DFA retains the right to renew its existing FSAs with Class I customers (which are enumerated on Schedule 1 attached, and which currently cover approximately 30% of the Class I volume in Orders 5 and 7), but DFA will not, during the Term of this

19

Agreement, enter into any other FSAs with Class I customers for the sale of milk in Orders 5 and 7.

(b).  In addition to all discovery materials previously made public in this litigation, Settling Defendants agree to release of the materials previously agreed in DFA Plaintiffs' Response to Court's April 17, 2012 Order to Submit a List of Documents (Dkt. 1829) and Response and Objections of Dairy Farmers of America, Inc., Dairy Marketing Services LLC and Mid-Am Capital LLC to Release of Certain Documents Currently Subject to Protection Order (Dkt. 1848).

(c).  DFA will insert into the DFA Membership and Marketing Agreement for members located in Orders 5 and 7 the following modified language: However, this Agreement may be terminated by either party during the ninety (90) day period immediately prior to the Anniversary Date by giving at least thirty (30) days written notice to the other party. The termination will be effective on the Anniversary Date unless otherwise modified, at the request of the member, for a period not to exceed fifteen days after the Anniversary Date to accommodate members' particular milk marketing needs.

(d).  DFA will reconfigure milk checks for members located in Orders 5 and 7 to reflect revenues received/proceeds available to pay, agency and cooperative deductions, each shown as an average per hundred weight (cwt) of milk, and the individual member's applicable premiums, incentive payments, and mailbox price. The check will show the average

20

Federal Order blend price for each member's pay zone.

(e). DFA financial reports are and will be prepared in accordance with generally accepted accounting principles as promulgated by the Financial Accounting Standards Board.

    (i). At the next annual membership meeting, a resolution for consideration will be presented to the delegates regarding whether DFA should disclose to its membership on an annual basis the top five senior executives' compensation and incentives. The DFA CEO shall be responsible for providing a neutral presentation as to the pros and cons of the resolution as part of DFA's communications to delegates regarding the annual meeting. In addition, DFA's Southeast Area Council ("SEAC") will provide to its members the text of the CEO's pros and cons of the resolutions that relate to this settlement, as well as the names and contact information for the Council member and delegate from each member's district who will be attending the annual meeting at which these resolutions will be considered.

    (ii). DFA will disclose the identity of members of the Board of Directors and of the Committees of the Board and the generally applicable per diem payment rate compensation for Board members.

    (iii). DFA will post on its secure, members-only website, myDFA, an annual disclosure of all material related-party transactions, other

21



than the sales or purchases of raw milk to or from affiliates, specifically broken out and identified per transaction (not aggregated), with the definition of "material" to be consistent with the SEC's Item 404 promulgated at 17 C.F.R. 229.404 (defining materiality as involving an amount of $120,000 or more).

(iv).    DFA Board members and senior executive management will continue to execute annual conflict of interest certifications, which shall be subject to review by the Audit Committee, with a report by the Audit Committee of any issues to the delegates at the Annual Meeting.

(v).    DFA will disclose to delegates at DFA's annual meeting financial information which shall include material related-party transactions as defined in Paragraph 7.4(e)(iii), and DFA's financial results from its participation in joint ventures and off-balance sheet transactions, specifically broken out and identified per transaction (not aggregated), with the definition of "material" to include any transaction involving more than $5 million, excluding the sales or purchases of raw milk to or from affiliates.

(vi).    DFA auditors shall be selected from one of the nationally recognized accounting firms.

(vii).    DFA senior management and the Audit Committee of the DFA Board will affirmatively represent that they are responsible for the preparation, integrity and accuracy of DFA's Annual Financial

22

Report.

(f).     At the next annual membership meeting, a resolution for consideration
will be presented to the delegates regarding whether DFA members should
be permitted to opt out of DFA's block vote, consistent with Senate Bill
457 (112th Congress) (Democracy for Dairy Producers Act of 2011). The
DFA CEO shall be responsible for providing a neutral presentation as to
the pros and cons of the resolution as part of DFA's communications to
delegates regarding the annual meeting. In addition, the SEAC will
provide to its members the text of the CEO's pros and cons of the
resolutions that relate to this settlement, as well as the names and contact
information for the Council member and delegate from each member's
district who will be attending the annual meeting at which these
resolutions will be considered.

(g).     At the next annual membership meeting, a resolution for consideration
will be presented to the delegates regarding whether candidates for
delegate to the annual meeting, may upon request, in advance of the
district meeting at which elections will be held, obtain a list of all current
members in their district. The DFA CEO shall be responsible for
providing a neutral presentation as to the pros and cons of the resolution as
part of DFA's communications to delegates regarding the annual meeting.
In addition, the SEAC will provide to its members the text of the CEO's
pros and cons of the resolutions that relate to this settlement, as well as the
names and contact information for the Council member and delegate from

23

each member's district who will be attending the annual meeting at which these resolutions will be considered.

(h). Compliance with the Terms of this Settlement Agreement will be monitored by the Audit Committee of the DFA Board, whose membership has a total of 7 members plus two (2) independent advisors with expertise in accounting, financial reporting and auditing matters. Other than serving as advisors to the Audit Committee, the two (2) advisors are currently free of any other relationship with DFA. The Audit Committee shall report its views to the delegates at DFA's annual meeting.

## 8. The Settlement Fund

8.1. The Parties to this Agreement, their counsel, and the Court shall treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 for all periods after the date of initial funding of the Settlement Fund. The Parties, their counsel, and the Court agree to take no action inconsistent with the treatment of the Settlement Fund in such manner, and all provisions of this Agreement shall be interpreted in a manner, that is consistent with such treatment. As required, the parties shall timely make such elections as are necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

8.2. For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, the regulations promulgated thereunder, the "administrators" of the Settlement Fund

24

shall be the Claims Administrator designated by Class Counsel and approved by the Court. The Class Counsel's designee shall timely and properly file or cause to be filed on a timely basis all tax returns necessary or advisable with respect to the Settlement Fund (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

8.3.   The Settlement Fund shall be invested, at the sole discretion of Class Counsel, and in accordance with the escrow agreement described in Paragraph 7.1 hereof, in a United States treasury money market fund subject to the regulations of the United States Securities Exchange Commission or United States Government Treasury Bills or Notes of no more than six (6) months' duration, provided however that when disbursement of some or all of the Settlement Fund is approved by the Court, the necessary funds may be transferred into and paid out of a federally insured bank account. All interest earned on the Settlement Fund shall become and remain part of the Settlement Fund.

8.4.   After the Effective Date, the Settlement Fund shall be distributed in accordance with a plan that Class Counsel shall submit at the appropriate time for approval by the Court ("Distribution Plan"). In no event shall the Settling Defendants bear any risk or have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such distribution and administration or any losses associated therewith.

8.5.   Plaintiffs and Class Counsel shall be reimbursed, indemnified, and paid solely out of the Settlement Fund for all expenses, including, but not limited to, attorneys'

25

fees, costs, and expenses. The Settling Defendants shall not be liable for any costs, fees, or expenses of any of Plaintiffs' respective attorneys, experts, advisors, agents, or representatives, and all such costs, fees, and expenses as approved by the Court shall be paid out of the Settlement Fund. In no event shall Settling Defendants be obligated to pay anything in addition to the Settlement Amount described in Paragraphs 7.1 and 7.2 hereto, including without limitation class notice costs, attorneys' fees, payments to named Plaintiffs for their efforts on behalf of the Class, settlement administration costs, escrow costs, taxes, or any other cost or expense arising from or to be paid as part of this Agreement.

8.6. Prior to the Effective Date, (i) up to $100,000 of the Settlement Fund may be used to give notice of the Settlement to Class members and for settlement administration costs, (ii) up to $10,000 of the Settlement Fund may be used for escrow agent costs, and (iii) any amount of the Settlement Fund may be used to pay required taxes on income earned on the Settlement Fund. Except as otherwise provided in this Paragraph, any disbursement from the Settlement Fund, including disbursements for attorneys' fees, costs and expenses, and incentive fees to named Plaintiffs, shall be made only upon approval and order of the Court, and only after the Effective Date.

9. **Opt Outs**

9.1. Class Members who timely and validly requested exclusion from the Class as of the applicable Exclusion Dates or such other deadline as the Court may set for opting out, and who have not opted back in as permitted by Court order (collectively "Opt Outs"), shall have no rights with respect to this Agreement and

26

shall receive no payments as provided in this Agreement.

**10.    Attorneys' Fees**

10.1.   Settling Defendants will have no responsibility to pay Class Counsel's attorneys' fees, costs, or expenses. Class Counsel may apply to the Court for payment of attorneys' fees, costs, and expenses from the Settlement Fund. Under no condition will Class Counsel seek an amount of attorneys' fees in excess of 33 1/3% of the Settlement Consideration in Paragraphs 7.1 through 7.4 plus reimbursement for reasonable litigation and administrative expenses.

10.2.   Settling Defendants will not oppose an application for attorneys' fees or expenses submitted by Class Counsel consistent with the limitation described in Paragraph 10.1 hereto.

10.3.   In the event the Court disapproves of, or reduces the amount sought in, any such application, such disapproval or reduction shall have no effect on the terms of the Agreement.

**11.    Withdrawal From or Modification of the Settlement**

11.1.   If the Court declines to approve this Agreement or any material part hereof, or if such approval is materially modified or set aside on appeal, or if the Court does not enter the Judgment, or if the Court enters the Judgment and appellate review is sought and, on such review, such Judgment is not affirmed or is materially modified, then the Settling Defendants and Plaintiffs shall each, in their respective sole discretion, have the option to rescind this Agreement in its entirety. Any Party wishing to rescind pursuant to this Paragraph 11.1 must provide written notice of rescission within thirty (30) calendar days of the event giving rise to the

27

SRK-29A
WB DSS

option to rescind.

11.2. A modification or reversal on appeal of any amount of Class Counsel's fees and expenses awarded by the Court from the Settlement Fund or any Distribution Plan shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

11.3. If the Agreement is not approved by the Court in all material parts or is otherwise rescinded, the Settling Defendants shall promptly be reimbursed the Settlement Fund, including interest thereon, if any, less any funds actually disbursed pursuant to Paragraph 8.6 hereto; in addition, Class Counsel shall promptly reimburse Settling Defendants for any funds actually disbursed pursuant to Paragraph 8.6(i) and 8.6 (ii).

11.4. In the event that this Agreement is rescinded pursuant to Paragraph 11.1, or for any reason the Effective Date does not occur in accordance with the terms of Paragraph 5.1 herein, then:

(a). The terms and provisions of this Agreement, with the exception of this Paragraph 11.4 (which shall continue in full force and effect), shall be null and void and shall have no force or effect;

(b). Neither the existence nor the terms of this Agreement, nor any negotiations preceding this Agreement, nor any acts performed pursuant to, or in furtherance of, this Agreement, shall be used or offered in evidence in the Actions or in any other action or proceeding for any purpose (other than to enforce the terms remaining in effect); and

(c). The Settling Defendants may oppose and assert all objections to the

28

SBK PSR D 42

continued certification of the Class or such other class as the Court may certify.

## 12. Taxes

12.1. Class Counsel shall be solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid, when due, from the Settlement Fund; Class Counsel shall direct the escrow agent to do so in writing. The Settling Defendants shall have no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or pay any taxes on the Settlement Fund, unless the settlement is not consummated and the Settlement Fund is returned to the Settling Defendants. In the event the settlement is not consummated, the Settling Defendants shall be responsible for the payment of any taxes (including any interest or penalties) on said income.

## 13. Miscellaneous

13.1. Plaintiffs and the Settling Defendants shall use their best efforts to effectuate this Agreement, including cooperating in promptly seeking the Court's approval of procedures (including the giving of class notice under Rule 23(e) of the Federal

29

Rules of Civil Procedure) to secure the prompt, complete, and final dismissal with prejudice of the Actions as to the Settling Defendants.

13.2. The United States District Court for the Eastern District of Tennessee shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Settling Defendants.

13.3. This Agreement constitutes the entire agreement among Plaintiffs and the Settling Defendants pertaining to the settlement of the Actions against the Settling Defendants only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and the Settling Defendants in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and Settling Defendants.

13.4. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties. Without limiting the generality of the foregoing and subject to the Effective Date occurring: (a) each and every covenant and agreement made herein by Plaintiffs or Class Counsel shall be binding upon all Class Members and Releasing Parties, and (b) each and every covenant and agreement made herein by the Settling Defendants shall be binding upon all Released Parties.

13.5. This Agreement may be executed in counterparts by Plaintiffs (or their counsel) and the Settling Defendants (or their counsel), and an emailed signature shall be

30

$SRK$ $RS$ $D$ $SS$

deemed an original signature for purposes of executing this Agreement.

13.6. Neither the Settling Defendants nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

13.7. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasing Parties, and Released Parties any right or remedy under or by reason of this Agreement.

13.8. Other than in a proceeding to enforce its terms, this Agreement shall not be used or admitted in any other action or proceeding for any purpose and shall not be deemed an admission of any fact in any proceeding.

13.9. Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by electronic mail, or letter by overnight delivery, to counsel for that party, and in the case of notice to members of the Class, notice to Class Counsel shall be sufficient.

13.10. Each of the undersigned attorneys represents that he or she is fully authorized by their respective clients, the Court's April 1, 2008 Case Management & Scheduling Order appointing interim Class Counsel, the Court's September 7, 2010 Order certifying the Class and appointing Class Counsel, and the Court's June 1, 2012 Memorandum and Opinion recertifying DFA Sub-Class and

31

appointing counsel for the DFA Sub-Class to enter into the terms and conditions

of, and to execute, this Agreement on behalf of their respective clients and the

Class, subject to Court approval.

13.11. Tennessee law shall apply to any dispute arising from or relating to this

Agreement.

Dated: January 17, 2013

Steven R. Kuney, Esq.
WILLIAMS & CONNOLLY LLP
725 Twelfth Street N.W.
Washington, DC 20005
Tel: (202) 434-5000
skuney@wc.com

W. Todd Miller, Esq.
BAKER & MILLER PLLC
2401 Pennsylvania Avenue N.W.
Suite 300
Washington, DC 20037
Tel: (202) 663-7820
tmiller@bakerandmiller.com

G.P. Gaby, Esq.
MILLIGAN & COLEMAN
230 West Depot Street
P.O. Box 1060
Greeneville, TN 37743
Tel: (423) 639-6811

*Counsel for Defendants Dairy Farmers
of America, Dairy Marketing Services,
and Mid-Am Capital*

Robert G. Abrams, Esq.*
Gregory J. Commins, Jr., Esq.
Danyll W. Foix, Esq.
BAKER & HOSTETLER LLP
1050 Connecticut Avenue N.W.
Suite 1100
Washington, DC 20036
Tel: (202) 861-1500
rabrams@bakerlaw.com
gcommins@bakerlaw.com
dfoix@bakerlaw.com

*Lead Counsel for Independent Dairy
Farmer Subclass*

32

_Jerry L. Beane_

Jerry L. Beane, Esq.  _KB KB_
ANDREWS KURTH LLP
1717 Main Street, Suite 3700
Dallas, TX 75201
Tel: (214) 649-4400
jerrybeane@andrewskurth.com


Thomas M. Hale, Esq.
Steven E. Kramer, Esq.
KRAMER RAYSON LLP
P.O. Box 629
Knoxville, TN 37901-0629
Tel: (865) 525-5134
thale@kramer-rayson.com
skramer@kramer-rayson.com

*Attorneys for Defendant National Dairy
Holdings, LP*

_David E Everson_

Daniel D. Crabtree, Esq.
David E. Everson, Esq.
STINSON MORRISON HECKLER LLP
1201 Walnut, Suite 2900
Kansas City, MO 64106
Tel: (816) 842-8600
dcrabtree@stinson.com
deverson@stinson.com


Richard W. Pectol, Esq.
PECTOL & MILES
202 East Unaka Avenue
Johnson City, TN 37601
Tel: (423) 928-6106
rwpectol@earthlink.com

*Attorneys for Defendant Gary Hanman*

_Gary E. Brewer  / KqA_

Gary E. Brewer, Esq.
BREWER & TERRY, P.C.
1702 West Andrew Johnson Highway
Morristown, TN 37816
Tel: (423) 587-2730
robin@brewerandterry.com

*Counsel for DFA Subclass*

*Robert Abrams, counsel for the
Independent Dairy Farmer Subclass, is
expressly authorized to execute this
agreement for Gary Brewer on behalf of
the DFA Subclass

33

Schedule 1

Dean Foods [not including Country DeLite and Murray, KY, which are otherwise dealt with]
Brown's Velvet – New Orleans
Dairy Fresh – Winston Salem
Foremost – Shreveport
Valley of Virginia – Mt. Crawford

Hiland/Turner:

Hiland – Fayetteville
Hiland – Fort Smith
Hiland – Springfield
Coleman – Little Rock
Forest Hills – Memphis
Turner – Fulton
Memory Lane – Fordland, MO

Kroger
Centennial Farms – Atlanta
Westover Dairy – Lynchburg

Borden/LaLa
Flav-O-Rich – London, KY (serviced by Mideast Area Council)

Other
Luvel Dairy – Kosciusko
Superbrands – Hammond
Broadacre – Powell, TN